**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BENJAMIN J. KOZIK, individually and on behalf of all others similarly situated, | Civil Action No. _6:12-CV-1_870 (LEK/TWD) |
| Plaintiff, | **ECF CASE** |
| vs. | **COLLECTIVE AND** |
| HAMILTON COLLEGE, | **CLASS ACTION COMPLAINT** |
| Defendant. | **AND JURY TRIAL DEMAND** |

Plaintiff Benjamin J. Kozik ("Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, The Ottinger Firm, P.C., alleges, upon personal knowledge and upon information and belief as to other matters, as follows:

**PRELIMINARY STATEMENT**

1.      This is a case about a college with a $650-750 million endowment that fails to pay Interns in its Athletics Department and/or Intercollegiate Athletics ("Athletics Department"), including Plaintiff and other similarly situated individuals, the wages to which they are entitled to by law.

2.      Defendant is Hamilton College ("Hamilton" or "Defendant"), which traces its origins to 1793, and it is one of the oldest colleges in New York State.  Based on Hamilton's own description, "The Human Resources Staff aligns its activities with the mission and strategic plan of Hamilton College and is focused on facilitating an employment lifecycle for all College employees which is positive, enriching and fair."  Defendant, however, failed to adhere to these principles with respect to Plaintiff and the members of the proposed classes.

3.      Plaintiff and the members of the proposed classes were employed by Defendant in its Athletics Department and regularly worked for a flat monthly or annual sum, regardless of the

number of hours worked, which resulted in an hourly rate below the minimum wage set by law. In addition, Plaintiff and the members of the proposed classes often worked in excess of forty (40) hours per week, but were not paid time-and one-half overtime compensation. They also worked more than ten (10) hours per day and/or a split shift, but were not paid spread-of-hours pay.  Plaintiff and the members of the proposed classes were not students at Hamilton, met the definition of employee under federal and state law, and were not subject to any applicable exemptions or exclusions under applicable law, including, but not limited to, those for students, apprentices, learners, teachers, executives, administrators, or professionals.

4.      By the conduct described in this Collective and Class Action Complaint ("Complaint"), Defendant willfully violated federal and state wage and hour laws.  Plaintiff seeks to recover unpaid minimum and overtime wages, spread-of-hours pay, attorneys' fees and costs, interest, and liquidated damages.

5.      Plaintiff brings this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), on behalf of himself and all similarly situated current and former employees of Hamilton who elect to opt into this action pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b). Plaintiff also brings this action on behalf of himself and a class of similarly situated current and former employees of Hamilton, pursuant to Rule 23 of the Federal Rules of Civil Procedure under the New York Labor Law ("NYLL") Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12, Parts 142 and/or 143.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337

and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA

pursuant to 29 U.S.C. § 216(b).

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

§§ 2201 and 2202.

9.      Venue is proper in the Northern District of New York pursuant to 28 U.S.C. §

1391(b).

10.      Hamilton is located in New York State and is subject to personal jurisdiction in

New York.

11.      A substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in this District.

## THE PARTIES

**Plaintiff**

12.      Plaintiff Benjamin J. Kozik resides in New Hartford, New York.

13.      Plaintiff was an employee of Hamilton from August 1, 2010 until his resignation

on October 19, 2012.

14.      During his employment with Hamilton, Plaintiff worked as an "Intern in

Intercollegiate/Assistant Football Coach" in Hamilton's Athletics Department as an Assistant

Football Coach located at Hamilton's campus, 198 College Hill Road, Clinton, New York.  In

addition, for one athletic season of four months, Hamilton also employed Plaintiff as an Intern in

its Athletics Department as an Assistant Women's Basketball Coach.

15.     Plaintiff was not a student at Hamilton, he met the definition of employee under applicable law, and he was not subject to any applicable exemptions or exclusions under applicable law, including, but not limited to, those for students, apprentices, learners, teachers, executives, administrators, or professionals.

16.     Plaintiff received a flat monthly rate of pay regardless of the number of hours he worked.  Each of the appointment letters Plaintiff received from Hamilton establishing the terms and pay for his position, identified his status as part-time.

17.     Defendant failed to pay Plaintiff at the hourly minimum wage rate set by law.

18.     Plaintiff worked more than forty (40) hours during most workweeks and, for certain periods of time, worked close to or over 100 hours per workweek.

19.     Defendant failed to pay Plaintiff at the premium overtime rate of time and one-half for all hours he worked over forty (40) in a given workweek.

20.     At times, Plaintiff received no compensation during a workweek despite engaging in mandatory work responsibilities.

21.     Defendant did not keep accurate records of hours worked by Plaintiff.

22.     Defendant did not pay Plaintiff spread-of-hours pay for shifts in excess of ten (10) hours and or when he had a split shift.

**<u>Defendant</u>**

23.     Upon information and belief, Hamilton is a domestic not-for-profit New York corporation.

24.     Hamilton maintains its principal place of business at 198 College Hill Road, Clinton, New York 13323.

25.     Upon information and belief, Hamilton had the power to hire and fire employees, including Plaintiff and the members of the proposed classes, direct their work, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment. Upon information and belief, at all times relevant, Hamilton had the power to stop the illegal pay practices described herein.

26.     Hamilton is a covered employer and/or enterprise engaged in commerce or in the production of goods for commerce as applicable within the meaning of the FLSA and the NYLL and at all times relevant, employed Plaintiff and similarly situated employees and failed to pay them for all compensable hours worked.

## COLLECTIVE ACTION ALLEGATIONS

27.     Plaintiff brings FLSA claims on behalf of himself and other employees similarly situated, as authorized under 29 U.S.C. § 216(b).  The employees similarly situated are:

FLSA Class:     All similarly situated persons who are or have been employed by Defendant as Interns in its Athletics Department at any point during the three year period prior to the filing of the Complaint through the final disposition of this action.

28.     The FLSA Class Period runs from no less than the three years prior to this action's filing date through the date of the final disposition of this action (the "FLSA Class Period").

29.     The members of the FLSA Class were not students at Hamilton, met the definition of employee under applicable law, and were not subject to any applicable exemptions or exclusions under applicable law including, but not limited to, those for students, apprentices, learners, teachers, executives, administrators, or professionals.

30.     Upon information and belief, at all times during the FLSA Class Period, Defendant authorized a misclassification of all Interns in its Athletics Department, including

Plaintiff, as FLSA exempt and have, as a matter of policy, denied them the lawful minimum wage for all hours worked and overtime premiums for hours worked in excess of forty (40) hours in a work week.

31.     Defendant is liable under the FLSA for, *inter alia,* failing to properly compensate Plaintiff.  There are many similarly situated current and former Interns employed by Defendant who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.  Notice should be sent to the FLSA Class pursuant to 29 U.S.C. § 216(b).

32.     Plaintiff and similarly situated current and former employees were not provided with notice of their rights to the minimum wage payable for all hours worked or to overtime premiums for hours worked in excess of forty (40) in a work week as is required by the FLSA, 29 C.F.R.§ 516.4, due to the Defendant's failure to post such notice.  As a result, the three year statute of limitations should be equitably tolled because of Defendant's failure to post such notice.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff also brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class:

> NYLL Class:          All similarly situated individuals who are or have been employed by Defendant as Interns in its Athletics Department at any point during the six years prior to the filing of the Complaint through the final disposition of this action.

34.      The NYLL Class Period is defined as the six years prior to the filing date of this lawsuit through the date of judgment in this action.

35.     The relevant Interns were not students at Hamilton, met the definition of employee under applicable law, and were not subject to any applicable exemptions or exclusions under applicable law including, but not limited to, those for students, apprentices, learners, teachers, executives, administrators, or professionals.

36.     At all times during the NYLL Class Period, Defendant as a matter of common practice or policy authorized a misclassification of all of its Interns in its Athletics Department, including Plaintiff, as exempt from the FLSA and the NYLL and have, as a matter of policy, denied them the lawful minimum wage for all hours worked, overtime premiums for hours worked in excess of forty (40) hours in a work week, and spread-of-hours pay for days on which they worked more than ten (10) hours and/or when there was a split shift.

37.     Numerosity: The members of the NYLL Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is not known to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendant.  Plaintiff does know that at the time of his resignation, there were twenty-nine (29) varsity sports within Hamilton's Athletics Department, and many, if not most, of the twenty-nine (29) varsity sports were assigned at least one (1) Intern.  In addition, the Intern positions were subject to a high rate of turnover since individuals often left these positions after working just one to two years.  Thus, upon information and belief, Defendant employed over 40 people who satisfy the definition of the NYLL Class within the NYLL Class Period.

38.     Defendant has acted or refused to act on grounds generally applicable to the NYLL Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the NYLL Class as a whole.

39.     Commonality: There are questions of law and fact common to the NYLL Class that predominate over any questions solely affecting individual members of the NYLL Class, including but not limited to:

a.     whether Defendant has failed and/or refused to pay Plaintiff and the NYLL Class the basic minimum hourly wage rate for all hours worked within the meaning the New York Labor Law Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 and/or 143;

b.     whether Defendant has failed and/or refused to pay Plaintiff and the NYLL Class overtime pay for hours worked in excess of forty (40) hours per work week within the meaning the New York Labor Law Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

c.     whether Defendant failed to provide Plaintiff and the NYLL Class spread-of-hours compensation as required by NYLL Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. § 142-3.4.

d.     whether Defendant failed to keep true and accurate time and pay records for all hours worked by their employees, and other records required by NYLL Article 19, §§ 650 *et seq.,* and supporting regulations, including 12 N.Y.C.R.R. § 142-3.6(a)(4) and/or § 143.6(b)(3);

e.     whether Defendant failed to furnish Plaintiff and the NYLL Class with an accurate statement of wages, hours worked, rates paid, and gross wages, as required by NYLL Article 19, §§ 650 *et seq.,* and supporting regulations, including 12 N.Y.C.R.R. § 142-2.6(a)(4) and/or § 143.6(b)(3);

f.      the nature and extent of NYLL Class-wide injury and the appropriate

measure of damages for the class; and

g.      whether Defendant's policy of failing to pay workers lawful compensation

was done willfully or with reckless disregard of the statute.

40.     Typicality:  The claims of the Plaintiff are typical of the claims of the NYLL

Class he seeks to represent.  Plaintiff and the NYLL Class work or have worked for Defendant as

Interns within Hamilton's Athletics Department and have not been paid the basic minimum

hourly wage rate, have not been paid premium overtime wages for the hours that they have

worked in excess of forty (40) hours per week, and have not been paid spread-of-hours pay for

days in which Plaintiff and the NYLL Class worked more than ten (10) hours per day and/or

when there was a split shift. Defendant has acted and has refused to act on grounds generally

applicable to the NYLL Class, thereby making declaratory relief with respect to the NYLL Class

appropriate.

41.     Adequacy:  Plaintiff will fairly and adequately represent and protect the interests

of the NYLL Class.

42.     Plaintiff has retained counsel competent and experienced in complex class action

and in labor and employment litigation.

43.     The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because

prosecution of actions by or against individual members of the class would result in inconsistent

or varying adjudications and create the risk of incompatible standards of conduct for Defendant.

Further, adjudication of each individual member's claim as a separate action would be

dispositive of the interest of other individuals not party to this action, impeding their ability to

protect their interests.

44.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the NYLL Class predominate over any questions affecting only individual members of the NYLL Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's common and uniform policies and practices denied the NYLL Class the wages to which they are entitled. The damages suffered by the individual NYLL Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

## FACTUAL ALLEGATIONS

### Interns In Hamilton's Athletics Department Work Long Hours With Pay Below Minimum Wage, No Overtime Compensation, And No Spread-Of-Hours Pay

45.     Hamilton currently has twenty-nine (29) varsity sports, the bulk of which have at least one Intern.  In addition, there is a Sports Information Intern.

46.     Upon information and belief, Interns in the Athletics Department are subject to a common practice or policy in which they are classified as part-time, work hours equal to or in excess of forty (40) hours per week, and as a matter of common practice or policy receive flat pay at monthly or other intervals well below a rate compensating them for all hours worked at the lawful minimum wage.

47.     Upon information and belief, Interns in the Athletics Department work hours in excess of forty (40) per week, but as a matter of common practice or policy have never received overtime compensation.

48.     Upon information and belief, Interns in the Athletics Department often work more than ten (10) hours a day and/or have a split shift, but as a matter of common practice or policy have never received spread-of-hours pay.

49.     Hamilton also employs full-time assistant coaches in the Athletics Department who often work for higher pay and shorter hours than Interns.  Interns often perform many of the same tasks as full-time assistant coaches, yet as a matter of common practice or policy receive much lower pay and are classified as part-time.  Interns work these long hours with the hope of receiving a full-time position.  Upon information and belief, Hamilton is aware of the efforts and ambitions of Interns to secure full-time coaching positions at Hamilton or another educational institution and knowingly and, as a matter of common practice or policy, willfully misclassified Interns as exempt from the FLSA and NYLL, classified them as part-time and permitted them to work long hours with the expectation that the Interns would not challenge such policies to avoid jeopardizing their future as athletic coaches.

**Interns Work The Longest Hours When Their Assigned Sport Is "In Season"**

50.     Interns in the Athletics Department tend to work the longest hours when the sport to which each is assigned is active or "in season."  For example, Interns for the football team are busiest in the Fall when football games are played.  When a sport is "in season," Interns work no less than forty (40) hours per week and many times double that sum to eighty (80) or more hours per week.

51.     Interns must travel "in season" to games with their assigned team.  Such travel requires many hours of work and days that often extend for ten (10) hours or longer.

**During The "Off Season" Of Their Assigned Sport, Interns Are Assigned Additional Responsibilities In Other Sports To Save Hamilton Money**

52.     When the assigned sport of an Intern is not "in season," Interns still had responsibilities for their assigned sport.  In addition, they were, as a matter of common practice or policy, required to work "Game Management" for the Athletic Department at Hamilton, permitting the Athletic Department to avoid incurring the costs of hiring workers for games.

53.     In the "Game Management" role, after working a 9-to-5 workday, Interns from a variety of sports including, but not limited to, football, basketball, hockey, lacrosse, and swimming, as a matter of common practice or policy, would be required to arrive 15-30 minutes before a scheduled evening home (or sometimes weekend) athletic game, contest, or track meet and stay no less than the length of the athletic event. Interns often were not done with the Game Management responsibilities until 9:15 p.m.  As a result, Interns often worked long days in the "off season."  During the course of the game, Interns would, among other things, keep the scoreboard, make game introductions and announcements, bring equipment (balls, pucks) out to venue, keep track of penalties and penalty time in the penalty boxes, play music, and play the national anthem. Consequently, football Interns and other Interns from fall sports also worked at basketball and hockey games in the winter and lacrosse, baseball, and softball games in the spring.  Similarly, Interns who worked for winter and spring sports would work football and other games in the fall.

54.     In the summer, Interns engaged in recruiting activities at showcases and camps.

55.     Given the low pay and high number of hours demanded, there was a lot of turnover among the staff in Intern positions within the twenty-nine (29) varsity sports at Hamilton.  Upon information and belief, many sports, including football, baseball, women's basketball, men's basketball, field hockey, men's hockey, women's hockey, men's lacrosse,

women's lacrosse, swimming, women's softball, and women's soccer experienced some turnover from year to year during the two-plus years Plaintiff was an intern at Hamilton.

**Plaintiff Worked Long Hours For Low Pay Throughout His Employment**

56.     Plaintiff held the position of Intern in the Athletics Department as Assistant Football Coach from August 1, 2010 through October 19, 2012 when he resigned from this position.  During most of his employment, Plaintiff received a monthly salary ranging from $1,000.00 to $1,100.00 – which worked out to a salary of about $250.00 to $275.00 per week.

57.     Plaintiff's work life during his employment at Hamilton could be divided into three categories – the football season, the "off-season", and the summer.  During each of these periods, Plaintiff received effective compensation well below New York's $7.25 per hour minimum wage, and he never received overtime or spread-of-hours pay.  At times, in the summer, Plaintiff received no compensation, yet he was saddled with numerous mandatory responsibilities.

**Plaintiff Worked No Less Than 90 to 105 Hours A Week During Four-Month Football Season**

58.     For the first two years of his employment, during the four-month football season, Plaintiff and other football Interns typically worked at least ninety (90) or more hours per week. Plaintiff coached wide receivers, kickers, and punters.  In his final season (2012), Plaintiff was given additional responsibilities as Special Teams Coordinator without an increase in pay.

59.     Plaintiff also assisted in Offensive Game Planning, preparing film for staff and team review, and preparing game itineraries and practice schedules.  Plaintiff also monitored students' academic progress, served as "Locker Room Police," and handled extensive recruiting responsibilities.

60.     Plaintiff's day usually began at 8:00 a.m. and often did not end until sometime between 11:00 p.m. – 1:00 a.m. In addition, Plaintiff also recruited student-athletes from across the country which further extended his workday.  If Plaintiff completed his other work responsibilities by 11:30 p.m., he was instructed by his superiors to make phone calls to West Coast recruits.

61.     On game days, Plaintiff and other football Interns often worked seventeen (17) hours, including travel time.

62.     On Sundays, Plaintiff and other football Interns typically worked no less than twelve (12) and as many as sixteen (16) hours.

63.     During the course of the week, Plaintiff and other football Interns typically worked 11-15 hours per day.

64.     In July 2012, Hamilton hired a new Head Football Coach, Andrew Cohen.  Under Cohen, all football Interns' hours immediately increased to hours in excess of 105 hours per week – even before the football season started.  The additional hours were the result of more intense recruiting efforts and meetings with the players nearly every weekday morning during the season.  Plaintiff's day usually began as early as 6:15 a.m. – 7:00 a.m. and did not end until 11:30 p.m. or later.

65.     Given Plaintiff's then-current salary of $1,100.00 per month or $275.00 per week, his effective hourly wage was as little as $2.60 per hour in a 105-hour week – a rate almost one-third of New York's $7.25 per hour minimum wage.  Plaintiff never received overtime pay or spread-of-hours pay.

**During the "Off" Season, Plaintiff Continued To Work 50-75 Hour Weeks**

66.     Once the football season ended, Plaintiff's football responsibilities consisted, among other things, of continued recruiting and scouting efforts, as well as opponent film breakdown, self-scouting film breakdown, individual player meetings, designing of playbook, designing of a summer camp brochure, assisting with Hamilton College Football's Golf Outing, and coaching at Hamilton College Football's Prospect Camp Days.

67.     As referenced above, despite the diminished football responsibilities during the "off season," football Interns were required to work "Game Management" for the Athletic Department at Hamilton, permitting the Athletic Department to avoid incurring the costs of hiring workers for games.  Consequently, after working a 9-to-5 day, Plaintiff would be required to then attend various evening athletic events at Hamilton and would often not complete his responsibilities until 9:15p.m.

68.     Following completion of the football season in November 2011, Plaintiff also began coaching women's basketball, and a typical day began at 7:00 a.m. and ran until 12:00 a.m.  Plaintiff typically worked 16 to 17 hours per day between coaching women's basketball, traveling with the women's basketball team, and fulfilling his off season football responsibilities. On average, Plaintiff worked 100-hour weeks from November 2011 through February 2012 and slept just five (5) hours a night.

69.     For four months, from November 2011 through February 2012, Plaintiff's monthly salary of $1,050.00 was supplemented with an additional $500.00 payment for his work with the women's basketball team.  Accordingly, Plaintiff received about $387.50 per week or $3.87 per hour (based on a 100-hour week) for these weeks – well below New York's minimum wage of $7.25 per hour.

**Plaintiff's Summer Responsibilities**

70.     During the summer, Plaintiff's time was filled with recruiting students and attending football camps.  There was at least one month (June 2011), when Plaintiff was not paid despite engaging in recruiting activities. As part of Plaintiff's job responsibilities, he was required to travel to and attend several football camps, including camps at Boston College, Cornell, Colgate, Holy Cross, New England Elite, and Hamilton.

71.     In connection with his recruiting responsibilities, Plaintiff made phone calls and traveled to see potential recruits in many states, including, Maine, New Hampshire, New York, Vermont, Massachusetts, Connecticut, Rhode Island, Wisconsin, Tennessee, Nebraska, South Dakota, Montana, Colorado, New Jersey, Kentucky, Mississippi, New Mexico, Iowa, Texas, and California.  At times, football Interns spent more time recruiting than full-time coaches.

**Hamilton Is Aware Of The Long Hours And Low Pay For Interns In The Athletics Department**

72.     After the 2010 football season, Plaintiff had a meeting with then-head coach, Steve Stetson, stating that he needed to make more money and requested Stetson assist him with identifying other opportunities.  Stetson admitted that Hamilton did not pay Interns fairly, but he took no steps to help change Intern compensation.

73.      In July 2012, soon after the new football coach, Cohen, secured his position, Plaintiff expressed his concerns to Cohen about the disparity and discrepancy in pay for Interns given the amount of work each performed and the number of hours demanded of each in comparison with more highly compensated staff members who received full-time pay and worked shorter hours.  Cohen responded that Plaintiff should not worry about how much he was making since his hard work would pay off "someday."

74.     Just a few weeks later, on July 21, 2012, when returning from a football camp at Cornell University in Ithaca, New York, Plaintiff again expressed to Cohen his concerns about the low rate of pay he was receiving.  Cohen simply stated he knew more individuals receiving full-time pay were needed, but Plaintiff should not worry about what he was making.

75.     Despite Cohen's knowledge of the low pay Interns such as Plaintiff received, Cohen prepared a "Staff Weekly Schedule" that on its face required Plaintiff and other football Interns work no less than 12 to 16 hour days. In fact, Cohen promoted Plaintiff to the position of Special Teams Coordinator in August 2012.  Plaintiff was one of four Coordinators on the football staff, the other three were full-time coaches.  Plaintiff, however, continued to be classified and compensated as a part-time Intern.

76.     In early September 2012, Plaintiff again met one-on-one with Cohen in his office and told Cohen he could no longer make ends meet.  Plaintiff further stated that, as an Intern, he should be making at least minimum wage.  Cohen smirked and said, "You know we can't pay you that."  In response to Plaintiff's statement that Interns at another college in Hamilton's athletic league received higher pay and recorded their hours so that they did not go over forty (40) hours per week, Cohen responded that interns at the other college in fact worked higher hours, but just failed to have accurate time records – a practice in which "everybody" engaged. Cohen added, "Listen, we all know you and [a fellow intern] are basically full-time staff members with part-time pay, but there's nothing I can do about it."  When Plaintiff suggested that he reduce his hours so he could get a part-time job during the football season, Cohen responded that the hours worked during the football season made such a proposal "impossible".

77.     When Plaintiff suggested he should speak to John Hind, the Director of Athletics at Hamilton, Cohen stated he would speak to Hind and get back to Plaintiff.

78.     About a week or two later, Plaintiff followed up with Cohen, who stated he had spoken to Hind, and nothing could be done about Plaintiff's pay for the current year.  Cohen added that "another full-time position may open up in a year or two" and that Plaintiff and one of the other football Interns would be at the top of the list and could "duke it out for the position."

79.     Dissatisfied that his concerns were not being addressed, Plaintiff scheduled an appointment for September 10, 2012 with Human Resources.  At that time, he met with Director of Human Resources, Steve Stemkoski, and also met with Mike Thayer, Associate Director of Human Resources, about the long hours Interns in the Athletics Department worked and expressed his concern that Interns were being "used" to work what was essentially "slave labor".

80.     During the course of the meeting with Human Resources, Stemkoski implied that Hind was aware that Interns in the Athletics Department were working over ninety (90) hours a week.  Stemkoski added that Hind always pushed in budget meetings for more pay for employees in the Athletics Department, including Interns, but it was constantly turned down.

81.     In response to Stemkoski's query as to what Plaintiff wanted, Plaintiff responded that he wanted at least minimum wage going forward, retroactive compensation for past hours worked, and proper compensation for all Interns.

82.     Later that night, Plaintiff told Cohen about his conversation with Human Resources, and Cohen stated he wished Plaintiff had come to see Cohen first, that Cohen felt he could not trust Plaintiff, and Cohen felt as if Plaintiff went behind Cohen's back.  Plaintiff replied he had come to Cohen first, but nothing had been done about the situation.

83.     The next day, September 11, 2012, Plaintiff followed up with Stemkoski. Stemkoski indicated he had spoken with Hind.  Plaintiff sent an e-mail to Hind regarding Stemkoski's contact with Hind and expressing Plaintiff's availability to speak with Hind.

84.     About a week later, Plaintiff met with Hind, and Plaintiff recounted to Hind his conversation with Stemkoski.  Hind stated he was aware of the pay issue with the Interns, and ever since he took over as Athletic Director in 2007, he tried to get the term "Intern" changed because he knew individuals in the Intern positions were not "interns," but assistant coaches who should be treated and paid as such.  Hind indicated his request was "pushed down every year" by the "higher-ups" and things just remained the same.

85.     At this same meeting, Hind added that he was aware Interns were "full-time" employees making little pay and he was looking into the matter with the Deans of the College.

86.     Hind concluded the conversation by noting that Plaintiff was not the first person in the United States to come forward about athletic "interns" receiving insufficient pay.  Hind noted that four athletic interns had come forward years ago at another college, it became national news, and those interns probably never coached again.  Hind suggested to Plaintiff that he should be careful.

87.     Soon after Plaintiff's meeting with Hind, Cohen requested that Plaintiff refrain from copying Cohen on any e-mails involving the Intern hours and compensation issue pursued by Plaintiff.  In addition, Cohen acted hostilely toward Plaintiff and on Sunday, October 14, 2012, exploded in a fit of rage by yelling at Plaintiff and acting in a threatening manner.  Plaintiff reported this incident the following day to Stemkoski in Human Resources.

88.     The same day, October 15, 2012, Plaintiff also ran into Hind.  Hind informed Plaintiff that he had a conversation with the "higher ups," including Karen Leach, Hamilton's Vice President of Administration and Finance, and a meeting was scheduled for November 5, 2012 to address the Intern wage and hour issue.  In addition, after Plaintiff told him about the

prior day's incident with Cohen, Hind immediately granted Plaintiff a leave of absence and offered to re-assign Plaintiff.

89.     On October 17, 2012, Plaintiff e-mailed Stemkoski to ask if Plaintiff would be informed following a decision about the Intern wage and hour issue.  Stemkoski told Plaintiff he would only be contacted if the decision affected him.

90.     On October 18, 2012, Plaintiff e-mailed Stemkoski and Pat Reynolds (to whom Stemkoski reported) informing them of his resignation effective October 19, 2012.  Reynolds is Hamilton's Vice President for Academic Affairs and Dean of Faculty.

91.     Plaintiff never learned the result of the scheduled November 5, 2012 meeting despite Plaintiff's November 12, 2012 inquiry with Stemkoski.

## FIRST CAUSE OF ACTION
### (Fair Labor Standards Act – Minimum Wage Violation)
### (Brought on Behalf of Plaintiff and all FLSA Class Members)

92.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

93.     Defendant has engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

94.     Plaintiff has consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), as evidenced by Exhibit A.

95.     At all relevant times, Plaintiff and other similarly situated current and former employees were engaged in commerce and/or the production of foods for commerce or where employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (r)-(s), 206(a) and 207(a).

96.     At all relevant times, Plaintiff and other similarly situated current and former employees were or have been employees within the meaning of 29 U.S.C. §§ 203(e), (r)-(s), 206(a), and 207(a) and were not subject to any applicable exemptions or exclusions.

97.     At all relevant times, Plaintiff and other similarly situated current and former employees met the definition of an employee within the meaning of 29 U.S.C. §§ 203(e) and 206(a) and were not subject to any applicable exemptions or exclusions.

98.     At all relevant times, Defendant has been an employer engaged in commerce and/or the production or sale of goods for commerce or in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(d), (r)-(s), 206(a) and 207(a).

99.     The federal minimum wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Hamilton.

100.    At all relevant times, Defendant knowingly failed to pay Plaintiff and other eligible similarly situated current and former employees the federal minimum wage payable for each hour worked.

101.    Defendant failed to keep accurate records of the hours that Plaintiff and similarly situated current and former employees worked.

102.    Defendant's violations of the FLSA, as described in this Complaint, have been willful and intentional. Defendant has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and other similarly situated current and former employees.

103.    Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

*104.*    As a result of Defendant's willful violations of the FLSA, Plaintiff and all others similarly situated have suffered damages by being denied the federal minimum wage for each hour worked in accordance with 29 U.S.C. §§ 201 *et seq.*

105.    As a result of the Defendant's unlawful acts, Plaintiff and other similarly situated current and former employees have been deprived of the federal minimum wage for each hour worked and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### (Fair Labor Standards Act – Overtime Pay Violation)
### (Brought on Behalf of all FLSA Class Members)

106.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

107.    The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Hamilton.

108.    Defendant failed to pay Plaintiff and other eligible similarly situated current and former employees the overtime wages to which they were entitled under the FLSA.

109.    Defendant failed to keep accurate records of the hours that Plaintiff and similarly situated current and former employees worked.

110.    Defendant's violations of the FLSA, as described in this Complaint, have been willful and intentional. Defendant has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and other similarly situated current and former employees.

111.    Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

112.    As a result of the Defendant's unlawful acts, Plaintiff and other similarly situated current and former employees have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §216(b).

### THIRD CAUSE OF ACTION
**(Fair Labor Standards Act – Recordkeeping Violations)**
**(Brought on Behalf of Plaintiff and all FLSA Class Members)**

113.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

114.    Defendant failed to make, keep, and preserve accurate records with respect to Plaintiff and other similarly situated current and former employees as required by the FLSA, including hours worked each workday and total hours worked each workweek, as required under 29 U.S.C. § 211(c) and supporting federal regulations.

115.    Defendant's failure to make, keep, and preserve accurate records was willful.

### FOURTH CAUSE OF ACTION
**(New York Labor Law – Minimum Wage Violation)**
**(Brought on Behalf of Plaintiff and all NYLL Class Members)**

116.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

117.    At all relevant times, Plaintiff and the NYLL Class Members were employees since they were not subject to any applicable exemptions or exclusions and Defendant has been an employer within the meaning of the New York Labor Law.

118.    The minimum wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendant under the NYLL Article 19, §§ 650 *et seq.,* and the supporting N.Y.C.R.R., including, but not limited to, tit. 12, Parts 142-3 *et seq.* and/or143 *et seq.*

119.    Defendant failed to pay Plaintiff and the NYLL Class Members the minimum wage payable for each hour worked to which they were eligible and entitled under the New York Labor Law.

120.    By Defendant's failure to pay Plaintiff and the NYLL Class Members the minimum wage payable for each hour worked to which they were entitled, Defendant has willfully violated the NYLL Article 19, §§ 650 *et seq.,* and the supporting N.Y.C.R.R, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 142-3 *et seq.* and/or Part 143 *et seq.*

121.    Due to Defendant's violations of the New York Labor Law, Plaintiff and the NYLL Class Members are entitled to recover from Defendant the minimum wage payable for each hour worked to which they are entitled, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
**(New York Labor Law – Unpaid Overtime Wages)**
**(Brought on Behalf of Plaintiff and all NYLL Class Members)**

122.    Plaintiff realleges and incorporated by reference all allegations in all preceding paragraphs.

123.    At all relevant times, Plaintiff and the NYLL Class Members were employees since they were not subject to any applicable exemptions or exclusions and Defendant has been an employer within the meaning of the New York Labor Law.

124.     The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendant under the NYLL Article 19, §§ 650 *et seq.,* and the supporting N.Y.C.R.R., including, but not limited to, tit. 12, Part 142-3 *et seq*.

125.     Defendant failed to pay Plaintiff and the NYLL Class Members the overtime wages to which they were eligible and entitled under the New York Labor Law.

126.     By Defendant's failure to pay Plaintiff and the NYLL Class Members premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 142-3 *et seq.*

127.     Due to Defendant's violations of the New York Labor Law, Plaintiff and the NYLL Class Members are entitled to recover from Defendant their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### SIXTH CAUSE OF ACTION
**(New York Labor Law – Spread-of-Hours Pay)**
**(Brought on Behalf of Plaintiff and all NYLL Class Members)**

128.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

129.     Consistent with their policy and pattern or practice, Defendant has willfully failed to pay Plaintiff and the NYLL Class Members additional compensation to which they were eligible and entitled of one hour's pay at the basic minimum hourly wage rate for each day during which they worked more than ten (10) hours and/or there was a split shift.

130.    By Defendant's failure to pay Plaintiff and the Class Members spread-of-hours pay, Defendant has willfully violated the NYLL Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. § 142-3.4.

131.    Due to Defendant's violations of the New York Labor Law, Plaintiff and the NYLL Class Members are entitled to recover from Defendant their unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**SEVENTH CAUSE OF ACTION**
**(New York Labor Law – Record Keeping Violations)**
**(Brought on Behalf of Plaintiff and all NYLL Class Members)**

132.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

133.    Defendant failed to make, keep, and preserve accurate records with respect to Plaintiff and NYLL Class Members, including hours worked each workday and total hours worked each workweek, as required by NYLL Article 19, §§ 650 *et seq.,* and supporting regulations, including, but not limited to, 12 N.Y.C.R.R § 142-3.6(a)(4) and/or § 143.6(b)(3).

134.    Defendant failed to furnish Plaintiff and the NYLL Class Members a statement with every payment of wages listing hours worked, rates paid and gross wages in violation of the NYLL and supporting New York State Department of Labor Regulations including, but not limited to, 12 N.Y.C.R.R. § 142-3.8.

135.    Defendant's failure to make, keep, and preserve accurate records was willful.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief:

A.     At the earliest possible time, Plaintiff should be allowed to give notice of the collective action alleged in the Complaint, or that the Court issue such notice, to all persons who are presently, or have at any time during no less than the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Defendant as Interns in its Athletics Department. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.     An award of unpaid overtime pay and minimum wages payable for each hour worked along with and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. §§ 201 *et seq.,* and the supporting United States Department of Labor regulations;

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     Designation of Plaintiff as a representative of the NYLL Class, and counsel of record as Class Counsel;

E.     Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL, Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations;

F.     An award of unpaid overtime pay and liquidated damages pursuant to NYLL Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations;

G.      An award of unpaid minimum wages payable for each hour worked and liquidated damages pursuant to NYLL Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations;

H.      An award of unpaid spread-of-hours pay and liquidated damages, pursuant to NYLL Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations;

I.      An award of pre-judgment interest;

J.      An injunction requiring Defendant to pay all statutorily-required wages pursuant to the New York Labor Law;

K.      Attorneys' fees and costs; and

L.      Such other and further relief as this Court deems necessary, just, and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  December 19, 2012
        New York, New York                          Respectfully submitted,

                                                    **THE OTTTINGER FIRM, P.C.**


                                                    By: /s/ *Robert W. Ottinger*
                                                    _____

                                                    Robert W. Ottinger (Bar Roll No. 514558)
                                                    20 West 55th Street, 6th Floor
                                                    New York, New York 10019
                                                    Telephone: (212) 571-2000
                                                    Facsimile: (212) 571-0505
                                                    robert@ottingerlaw.com

                                                    *Counsel for Plaintiff and the Classes*

Exhibit A

## CONSENT TO BE PARTY PLAINTIFF

I consent to be a party plaintiff in the foregoing lawsuit against Hamilton College in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).  I hereby designate The Ottinger Firm, P.C. to represent me in this suit.

_____
Signature

_Benjamin  J.  Kozik_
Print name

_12/20/12_
Date

_New Hartford, NY 13413_
City, State, and Zip Code