**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BENJAMIN J. KOZIK, individually and on behalf
of all others similarly situated,

        Plaintiff,

    vs.

HAMILTON COLLEGE,

        Defendant.

Civil Action No. 6:12-CV-870 (LEK/TWD)

ECF CASE

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION, COURT-**
**AUTHORIZED NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA, AND**
**DISCOVERY OF NAMES OF OTHER POTENTIAL PLAINTIFFS**

**THE OTTINGER FIRM, P.C.**
Robert W. Ottinger
20 W. 55th Street, 6th Floor
New York, New York 10019
Telephone: (212) 571-2000
Facsimile: (212) 571-0505
robert@ottingerlaw.com

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES............................................................................................. iii

I. PRELIMINARY STATEMENT ..............................................................................1

II. FACTS.......................................................................................................................2

    A.   Plaintiff Worked As An Intern In Hamilton's Athletics Department..................2

        1.  Plaintiff Worked Long Hours Despite "Part-Time" Status ..........................2

        2.  Plaintiff's Duties Varied Depending On Whether Sports Were "In Season,"
            "Off Season," Or Whether It Was Summer .................................................4

    B.   Interns In the Athletics Department Work In Similar Capacities .......................5

        1.  Interns Were Similarly Situated To Plaintiff...............................................5

        2.  The Intern Position Was Subject To High Turnover ....................................7

        3.  Documents Support Uniform Policies For Interns........................................7

    C.   Interns Routinely Received Less Than Minimum Wage and Worked More Than Forty
        (40) Hours A Week And Received No Overtime Pay.........................................8

    D.   Hamilton Was Aware Of the Long Hours And Low Salaries Of Interns But Consistently
        Failed To Increase Their Pay Or Reduce Their Hours .......................................9

III. LEGAL ARGUMENT ............................................................................................10

    A.   Plaintiff Meets The Lenient Standard For Conditional Certification Of FLSA Collective
        Action ...............................................................................................................10

        1.  The Plaintiff's Burden Is Minimal For Conditional Certification ............10

        2.  Plaintiff Need Only Make A Modest Factual Showing For The Court to Conclude
            Plaintiff And The Potential Plaintiffs Were Similarly Situated..................13

        3.  Plaintiff And Other Interns Are Similarly Situated, And Entitled to Conditional
            Certification Because They Did Not Receive Overtime Pay Or Even The Minimum
            Wage, They Engaged In Similar Activities, and They Were Subject To Common
            Policies and Procedure...............................................................................14

            a.  Plaintiff And All Other Interns Did Not Receive Overtime Pay .....................14

   b. Plaintiff And Other Interns Engaged In Similar Activities And Had Similar Responsibilities ........................................................................................15

   c. Plaintiff And Other Interns Are Subject To Common Compensation Policies.................................................................................................16

  B. Plaintiffs Are Subject To A Three-Year Statute of Limitations Under The FLSA ........17

  C. Upon Granting of Conditional Certification, The Court May Authorize An FLSA Plaintiff To Provide Notice To Other Potential Plaintiffs.............................................17

  D. Plaintiff Is Entitled To Discovery Of The Names And Contact Information Of Potential Plaintiffs .......................................................................................................................19

IV. CONCLUSION ............................................................................................................20

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                   <u>Pages</u>

<u>Bifulco v. Mortgage Zone, Inc.,</u>
   262 F.R.D. 209 (E.D.N.Y. 2009).................................................................10, 11, 12, 13, 20

<u>Cano v. Four M Food Corp.,</u>
   No. 08-CV-3005 (JFB)(AKT), 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) ........................12

<u>Fengler v. Crouse Health Found., Inc.,</u>
   595 F.Supp.2d 189  (N.D.N.Y. 2009)...................................................................................10

<u>Francis v. A & E Stores, Inc.,</u>
   No. 06 Civ. 1638 (CLB)(GAY), 2008 WL 2588851 (S.D.N.Y. June 26, 2008) .....................10

<u>Gayle v. Harry's Nurses Registry, Inc.,</u>
   No. 07 Civ. 4672 (CPS)(MDG), 2009 WL 605790 (E.D.N.Y. Mar. 9, 2009)..........................12

<u>Gjurovich v. Emmanuel's Marketplace, Inc.,</u>
   282 F.Supp.2d 101 (S.D.N.Y. 2003) .............................................................................18, 19

<u>Gortat v. Capala Brothers, Inc.,</u>
   No. 07 Civ. 3629 (ILG), 2009 WL 3347091 (E.D.N.Y. October 16, 2009)......................17, 18

<u>Hoffmann v. Sbarro, Inc.,</u>
   982 F.Supp.249 (S.D.N.Y. 1997) .............................................................................13, 18, 19

<u>Hoffmann-La Roche, Inc. v. Sperling,</u>
   493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).......................................................18, 19

<u>Iglesias-Mendoza v. LaBelle Farm, Inc.,</u>
   239 F.R.D. 363 (S.D.N.Y. 2007) .......................................................................... 11-14, 16

<u>Lynch v United Services Auto. Ass'n,</u>
   491 F Supp. 2d 357, 367 (S.D.N.Y. 2007) .....................................................11, 12, 13, 14, 17

<u>Malloy v. Richard Fleischman & Assoc., Inc.,</u>
   No. 09 Civ. 322 (CM), 2009 WL 1585979 (S.D.N.Y. June 3, 2009)..........................11, 13, 14

<u>McBeth v. Gabrielli Truck Sales, Ltd.,</u>
   768 F.Supp.2d 396 (E.D.N.Y. 2011) ...................................................................................17

<u>McLaughlin v. Richland Shoe Co.</u>
   486 U.S. 128 (1988)..........................................................................................................17

iii

Morales v. Plantworks, Inc.,
    No. 05 Civ 2349 (DC), 2006 WL 278154 (S.D.N.Y. February 2, 2006) ................................18

Realite v. Ark Restaurants Corp.
    7 F.Supp.2d 303 (S.D.N.Y. 1998) ...................................................................................11

Roach v T.L. Cannon Corp.,
    10 Civ. 0591 (TJM)(DEP), 2013 WL 1316397 (N.D.N.Y. Mar. 5, 2013) report and
    recommendation adopted as mod'd, 10 Civ. 0591 (TJM)(DEP), 2013 WL 1316452
    (N.D.N.Y. Mar. 29, 2013) .............................................................................................11

Rodriguez v. Almighty Cleaning, Inc.,
    784 F.Supp.2d 114 (E.D.N.Y. 2011) ..........................................................................11, 12

Roebuck v Hudson Valley Farms, Inc.,
    239 F. Supp.2d 234 (N.D.N.Y. 2002) ....................................................................11, 13, 15

Rubery v. Buth-Na-Bodhaige, Inc.,
    569 F.Supp.2d 334 (W.D.N.Y. 2008) ...........................................................................11

Ruggles v. WellPoint, Inc.,
    591 F.Supp.2d 150 (N.D.N.Y. 2008) .................................................................10, 13, 15, 17

Schwed v. General Elec. Co.,
    159 F.R.D. 373 (N.D.N.Y. 1995) ..................................................................................11

Sexton v. Franklin First Fin'l, Ltd.,
    No. 08 Civ. 4950 (JFB)(ARL), 2009 WL 1706535 (E.D.N.Y. June 16, 2009)......................13

Summa v. Hofstra Univ.,
    715 F.Supp.2d 378 (E.D.N.Y. 2010) ................................................. 8, 10-13, 17, 18

**STATUTES**

29 U.S.C. § 206 et seq. ...................................................................................................1

29 U.S.C. § 216(b) ................................................................................1, 2, 10, 20

**OTHER**

Opinion Letter FLSA2008-11 ...........................................................................................15

I.     **PRELIMINARY STATEMENT**

Through this motion, the named Plaintiff, Benjamin J. Kozik ("Plaintiff"), seeks

conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) for the failure of

Defendant, Hamilton College ("Defendant" or "Hamilton") to pay Plaintiff and other similarly

situated individuals in the position of Intern in Defendant's Athletics Department ("Interns")

minimum wage and overtime compensation in violation of, among other things, the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 206 et seq.[1]

Plaintiff and other Interns are similarly situated because they:

- Were not students at Hamilton;[2]
- Engaged in coaching duties across Hamilton's twenty-nine (29) varsity sports;[3]
- Received a monthly or annual flat rate of pay, regardless of the number of hours worked;[4]
- Were not subject to any requirement or method of tracking their hours worked;[5]
- Were not paid overtime compensation;[6]
- Were classified as FLSA exempt;[7]
- Also received a meal plan[8] and had the option of accepting either a meal plan or commensurate monetary compensation;[9]

---

[1]    Plaintiff seeks to certify the following collective class:

   All similarly situated persons who are or have been employed by Defendant as Interns in its Athletics Department at any point during the three year period prior to the filing of the Complaint through the final disposition of this action.

[2]    Ex. A at ¶¶ 3, 15, 29, 35; Ex. P at ¶ 23; Ex. R at ¶ 18.  All exhibits cited, unless otherwise noted, are attached to the accompanying Declaration of Robert Ottinger ("Ottinger Decl."), dated June 17, 2013.

[3]    Ex. A at ¶¶ 45-49; Ex. P at ¶¶ 12-13.

[4]    Ex. A at ¶¶ 3, 16, 46; Ex. P at ¶¶ 13,15; Ex. Q at ¶ 13; Ex. R at ¶ 12.

[5]    Ex. A at ¶¶ 21,76, 101; Ex. P at ¶¶ 15,38; Ex. Q at ¶ 14; Ex. R at ¶ 16.

[6]    Ex. A at ¶¶ 3, 19, 30, 36, 40, 47, 57, 65; Ex. P at ¶¶ 24, 25, 30, 37; Ex. R at ¶ 19.

[7]    Ex. A at ¶ 30; Ex. P at  ¶ 25.

- Were scheduled for "off season" Game Management responsibilities by the Athletics Department based on a centrally-managed schedule;[10]
- Were subject to a common policy pursuant to which Defendant was aware of the long hours and low pay received by Interns yet consistently failed to increase their rate of pay or reduce their hours.[11]

Upon conditional certification of this collective action, Plaintiff seeks to protect the rights of other similarly situated individuals by sending them Court-approved notice of this action pursuant to 29 U.S.C. § 216(b) to let them decide whether to join this action and attempt to recover unpaid overtime wages.[12]  Finally, in order to facilitate the transmission of such notice, Plaintiff seeks discovery from Defendant of the names and contact information of other Interns during the relevant timeframe.

The burden to conditionally certify a collective action is minimal, and Plaintiff clearly meets this low threshold.  Specifically, through the Collective and Class Action Complaint and Jury Trial Demand, dated December 20, 2012 (the "Complaint"), the declarations of Plaintiff and two other witnesses (including another Intern as well as a former coach in Hamilton's Athletics Department) and documents reflecting Defendant's own uniform policies towards Interns, Plaintiff demonstrates that Interns employed by Defendant were similarly situated.

---

[8]   Exs. C, E, G; Ex. P at ¶ 17; Ex. Q at ¶¶ 8, 13; Ex. R at ¶ 14.

[9]   Ex. N and Ex. P at ¶ 17.

[10]   Ex. A at ¶¶ 52, 53, 67; Ex. P at ¶¶ 10, 15, 25, 40; Ex. Q at ¶¶ 11-12; Ex. R at ¶ 13; Ex. T.

[11]   Ex. A at ¶¶ 72-89; Ex. P at ¶¶ 43-58; Ex. Q at ¶ 15 (regarding awareness).

[12]   See Ex S.

## II.     FACTS

### A. Plaintiff Worked As An Intern In Hamilton's Athletics Department

Hamilton traces its origins to 1793 and is one of the oldest colleges in New York State. Hamilton has twenty-nine (29) varsity sports in its Athletics Department, the bulk of which employ at least one (1) Intern each academic year.  See Ex. O (http://www.hamilton.edu/athletics/varsity) and Ex. A at ¶¶ 37, 45-49; Ex. P at ¶¶ 12-13. Plaintiff was not a student at Hamilton, and he worked as an Intern for the Men's Football and Women's Basketball programs in Hamilton's Athletics Department.  Ex. A at ¶¶ 3, 14, 15, 29, 35 and Ex. P at ¶¶ 7, 8, 18, 27, 28.  Each of Plaintiff's appointment letters from 2010 - 2012 (the "Appointment Letters") identified his position as a part-time one[13] and provided a flat, monthly salary of $1,000 - $1,100, payable at the end of each month.[14]  In addition, Appointment Letters throughout the period of his employment referenced the inclusion of a meal card to permit him to eat meals with student athletes.[15]  Furthermore, when newly hired, Hamilton appeared to have internally prepared a form for Plaintiff with the heading, "Athletic New Hires – Under 50% Work Schedule."  Ex. I.

### 1.     Plaintiff Worked Long Hours Despite "Part-Time" Status

Despite the reference in his Appointment Letters to a part-time position and on the "New Hire" form to an "Under 50% Work Schedule," Plaintiff regularly worked more than forty (40)

---

[13]     According to page 2 of Hamilton's "Staff Handbook," "part-time employees" are "those who are scheduled to work less than 910 hours during the year.  Part-time work is normally on a regular schedule, arranged to fit the needs of particular jobs.  It can be spread over twelve months or it can be seasonal, limited to the school year or to summers. Part-time employees are eligible for limited benefits as outlined in the Benefit section of this Handbook."  Ex. V.

[14]     See Exs. C-G.

[15]     The Appointment Letters Plaintiff received varied slightly, with some omitting the reference to the meal card.  Nonetheless, for each year of his employment at Hamilton, at least one of the Appointment Letters for the relevant term referenced the meal card.  See Exs. C, E, G.

hours per week when the sports for which he served as Intern were "in season," "off season," and during the summer. Ex. A at ¶¶ 4, 18, 40, 46, 50, 58; Ex. I; Ex. P at ¶¶ 9, 11, 26, 30-40. When football was "in season," Plaintiff often worked as many as ninety (90) to one hundred and five (105) hours per week, and when basketball was "in season", Plaintiff worked no less than seventy (70) hours and as much as one hundred (100) hours per week. Ex. A at ¶ 68; Ex. P at ¶¶ 30-36; Ex. Q at ¶¶ 6-7. In fact, on its face, a "Staff Weekly Schedule" prepared by one of the football coaches required Plaintiff and other football Interns to work no less than twelve (12) to sixteen (16) hour days. Ex. L at D000219-221; Ex. A at ¶ 75. When football was not in season, Plaintiff had "off season" football responsibilities accounting for fifty (50) to seventy five (75) hours per week. Ex. A at ¶¶ 66-67; Ex. P at ¶¶ 39-40. Over the summer, Plaintiff continued to work no less than forty (40) to fifty (50) hours per week, and, at times, he even worked without compensation. Ex. A at ¶ 70; Ex. P at ¶¶ 11,41. Accordingly, Plaintiff's effective hourly rate while employed by Defendant was almost always below the $7.25 hourly federal minimum wage. Ex. A at ¶¶ 56-57, 65. Plaintiff also never received any overtime pay for hours above forty (40) worked in a single workweek. Ex. A at ¶¶ 3, 19, 30, 36, 40, 47, 57, 65; Ex. P at ¶¶ 24, 25, 30, 37. Despite the extensive hours worked by Plaintiff, Hamilton did not require or have a system in place for him to track the hours he worked. Ex. A at ¶¶ 21, 25, 101; Ex. P at ¶¶ 15, 38; Ex. Q at ¶ 14.

### 2. Plaintiff's Duties Varied Depending On Whether Sports Were "In Season," "Off Season," Or Whether It Was Summer

Plaintiff's duties changed throughout the course of the year. Ex. A at ¶¶ 49-55. A portion of his duties were similar to those of full-time assistant coaches, but without pay commensurate to those individuals. When football was "in season," Plaintiff's duties consisted, among other things, of coaching wide receivers and kickers, as well as serving as Special Teams Coordinator

in the Fall of 2012. Ex. A at ¶ 58; Ex. P at ¶ 27 . In addition, Plaintiff also assisted with offensive game planning, preparing film for staff and team review, preparing game itineraries and practice schedules, monitoring students' academic progress, serving as "Locker Room Police," and handling extensive recruiting responsibilities. Ex. A at ¶¶ 58-60; Ex. L at D000217; Ex. M; Ex. P at ¶ 28. Plaintiff also traveled to away games, which inevitably resulted in lengthy workdays. Ex. A at ¶ 51; Ex. P at ¶ 33.

When football was "off season," Plaintiff's responsibilities consisted of engaging in ongoing recruiting and scouting efforts, opponent film breakdown, self-scouting film breakdown, individual player meetings, designing of a playbook, designing of a summer camp brochure, assisting with Hamilton College Football's Golf Outing, and coaching at Hamilton College Football's Prospect Camp. Ex. A at ¶ 66; Ex. M; Ex. P at ¶ 39. In addition, Plaintiff had "Game Management" responsibilities for athletic events that were "in season," so after a "9-to-5" day of "off season" football responsibilities, Defendant required Plaintiff to attend various evening athletic events at Hamilton for which his responsibilities often did not end until 9:15 p.m. Ex. A at ¶ 67; Ex. P at ¶¶ 10,15,39; Ex. Q at ¶¶ 11-12; Ex. T.

In the summer, Plaintiff's time was filled with recruiting students and attending football camps as well as making phone calls and traveling to potential recruits in many states across the country. Ex. A ¶¶ 70-71; Ex. L at D000217; Ex. P at ¶¶ 41-42.

**B.     Interns In the Athletics Department Work In Similar Capacities**

**1.     Interns Were Similarly Situated To Plaintiff**

In addition to Plaintiff, Hamilton employs Interns in its Athletics Department who are similarly situated to Plaintiff since they were not students at Hamilton and engaged in coaching duties across the twenty-nine (29) varsity sports at Hamilton. Ex. A at ¶¶ 3, 15, 29, 35; Ex. P at ¶¶ 12,13,23; Ex. R at ¶ 18. Like Plaintiff, other Interns received a flat monthly or annual salary

and may have even received the same form of appointment letter classifying all Interns as part-time employees and appointing them for a fixed term.[16]  See Ex. A at ¶¶ 3, 16, 46; Ex. P at ¶¶ 13-15; Ex. R at ¶¶ 12. 15; Exs. C-G.[17]  Interns also received a meal card.  See Ex. Q at ¶ 13; Ex. P at ¶ 17; Ex. R at ¶ 14; Exs. C, E, G, N.  Other Interns also worked hours in excess of forty (40) hours per workweek when their assigned sport was "in season," including lengthy days necessitated by travel with their teams to games.  Ex. A at ¶ 51; Ex. P at ¶¶ 9, 25, 33; Ex. Q at ¶ 7; Ex. R at ¶ 7.

Moreover, in the "off season," all Interns in the Athletics Department were scheduled for "off season" Game Management responsibilities by the Athletics Department based on a centrally-managed schedule.  Ex. A at ¶¶ 52, 53, 67; Ex. P at ¶¶ 10, 15, 25, 40; Ex. Q at ¶¶ 11-12; Ex. R at ¶ 13; Ex. T.  Game Management responsibilities for all Interns were scheduled by Athletics Department administrators who directed the Interns' Game Management responsibilities.  Ex. Q at ¶¶ 11-12; Ex. R at ¶ 13; Ex. T.  Specifically, the Associate Athletic Director, Karri Fagan, was in charge of the Game Management program and would set the

---

[16]    Although Plaintiff served discovery requests that would support disclosure of such documents, Defendant objected and has not yet produced relevant documents.

[17]    Although Discovery is not advanced, certain documents and notations on documents produced by Defendant further support common treatment and classification of Interns.  For example, the "Special Pay Authorization Form" specifying payment of an additional $500.00 per month when Plaintiff also served as an Intern for Women's Basketball, includes the entry: "Budget Line: 10-1-361001-4006."  This same number was also handwritten on each of Plaintiff's appointment letters for football.  See Exs. C-G (only Bates No. D000157, a duplicate copy of D000125, with different handwritten notes, does not include a handwritten notation of 10-1-361001-4006).  In addition, though Defendant has not yet produced documents providing detail about the application of the meal plan to Interns, Defendant produced over 120 pages marked "Highly Confidential" concerning the meal plan terms and pricing.  Among other documents, Defendant produced extensive invoices directed to Defendant for the cost of meals for Interns.  See Ottinger Decl. at ¶ 4 and Ex. W.

6

schedule for when Interns had to fulfill their Game Management responsibilities during the "off season." Ex. P at ¶ 15; Ex. Q at ¶¶ 11-12; Ex. R at ¶ 13.

Despite the often high number of hours worked by Interns, they were not subject to any requirement that they track the number of hours they worked. Ex. A at ¶¶ 21, 76, 101; Ex. P at ¶¶ 15,38; Ex. Q at ¶ 14;  and Ex. R at  ¶ 16.  Moreover, a portion of Interns' responsibilities often included certain responsibilities similar to those of full-time assistant coaches who worked shorter hours and received higher pay.  See Ex. A at ¶ 49; Ex. P at ¶ 25. For example, Interns had recruiting responsibilities at all times.  See Ex. P at ¶¶ 7, 11, 28, 32, 36, 39, 41.

### 2.   The Intern Position Was Subject To High Turnover

Due to the low pay and high number of hours demanded, there was a lot of turnover among Intern positions within the twenty-nine (29) varsity sports at Hamilton, including football, baseball, women's basketball, men's basketball, field hockey, men's hockey, women's hockey, men's lacrosse, women's lacrosse, swimming, women's softball, and women's soccer. Ex. A at ¶¶ 37,55; Ex. P at ¶¶ 12-13; Ex. R at ¶ 10.  Plaintiff can identify by name at least thirty-five (35) different Interns working in a variety of sports during the term of his employment, who worked in a similar capacity to him and received a flat rate of monthly or annual pay despite working long hours in excess of forty (40) hours per workweek and never receiving overtime pay.  Ex. P at ¶ 13.

### 3.   Documents Support Uniform Policies For Interns

In addition to the above-referenced uniform policies, certain documents further support common policies applied to Interns.  For example, an e-mail sent to all Interns

confirmed for the following academic year[18] from "Kim,"[19] opened with the greeting, "To all" and provided, "I wanted to clarify some details regarding the choice of meal plan vs. monetary compensation," and proceeded to explain the relevant policy. Also, with regard to Game Management, on a relevant schedule produced by Defendant, a notation at the bottom stated, "Intern will need to announce as SID staff will be at lacrosse games. Script provided by them. One Intern each for M/W lacrosse, baseball/softball (2 people split games for DH) to run clock/scoreboard. Arrive 30 minutes prior to start of all." Ex. T at D000002. Moreover, a Payroll Master form summarizing Plaintiff's compensation throughout his employment included the reference, "Primary Position: Intern Phys Ed," suggesting a standard internal code for all Interns in the Athletics Department. Ex. U. In addition, Plaintiff's appointment letters dated July 30, 2010 and July 27, 2012 include handwritten notations of "30 Intern PhysEd," further supporting a standard internal code for all Interns in the Athletics Department. Exs. C at D000157 and G at D000170.

### C. Interns Routinely Received Less Than Minimum Wage and Worked More Than Forty (40) Hours A Week And Received No Overtime Pay

In addition to the foregoing similarities, Interns received a flat monthly or annual salary despite frequently working hours well in excess of forty (40) hours per workweek both when their assigned sport was "in season" and "off season," due to their coaching responsibilities as well as the common, centrally-scheduled Game Management responsibilities to which all Interns were subject. Ex. A at ¶¶ 3, 16, 46; Ex. P at ¶¶ 13, 15; Ex. Q at ¶ 13; Ex. R

---

[18]   The e-mail was sent on July 30, 2012 at 4:20 p.m. to the eight Interns confirmed at that time for the 2012-2013 academic year. As explained in the Plaintiff's Declaration, due to a computer malfunction, he is unable to print out the relevant e-mail in its original form, so the substance of the e-mail, without certain identifying information, is not apparent from the face of the document. Ex. P at ¶ 17, n.1; Ex. N.

[19]   "Kim" is Kim Hutchins, Senior Assistant, Athletic Office, Department of Athletics, Hamilton College. Ex. P at ¶ 17.

at ¶¶ 7, 9, 12.  Due to the long hours worked by Interns and the flat rate of pay, the effective

hourly wage for Interns was often below the $7.25 federal rate.  Ex. A at ¶ 65.  In addition to

receiving wages effectively below the minimum wage, Interns never received overtime pay.

Ex. A at ¶¶ 3, 19, 30, 36, 40, 47, 57, 65; Ex. P at ¶¶ 24, 25, 30, 37; Ex. R at ¶¶ 19, 20.

### D.  Hamilton Was Aware Of the Long Hours And Low Salaries Of Interns But Consistently Failed To Increase Their Pay Or Reduce Their Hours

Based on conversations with multiple individuals at Hamilton, including the Director of

Athletics, Jon Hind, and the Director and Associate Directors of Human Resources, Steve

Stemkoski and Mike Thayer, respectively, Plaintiff learned Hamilton was and is aware of the

long hours and low pay to which Interns are subject in the Athletics Department.  Ex. A at ¶¶ 72-

89; Ex. P at ¶¶ 43-58.  Moreover, coaches in individual sports were also aware of the long hours

and low pay of Interns in the Athletics Department.  See Ex. A at ¶¶ 72-76; Ex. P at ¶¶ 43-58; Ex.

Q at ¶ 15.  Significantly, Hind told Plaintiff he was aware of the pay issue with Interns, but that

throughout his tenure as Athletic Director at Hamilton, his efforts to change pay practices for

Interns were "pushed down" by the "higher-ups" and things remained the same.  Ex. A at ¶ 84;

Ex. P at ¶¶ 54,57.  Coach Andrew Cohen also told Plaintiff, "Listen, we all know you and [a

fellow intern] are basically full-time staff members with part-time pay, but there's nothing I can

do about it."  Ex. A at ¶ 76; Ex. P at ¶ 47.  In fact, Plaintiff's income level potentially qualified

him as a "low income individual" eligible for "temporary assistance," and Defendant secured

information for Plaintiff and prepared a letter to the Oneida County Department of Social

Services confirming his income.  Exs. J-K.

Despite Hamilton's awareness of the low pay and long hours common to Interns,

including Hind's requests to increase pay for Interns, no changes were made to the common flat

monthly and/or annual salary pay practices that led Interns' effective hourly wages to dip below

the minimum wage and to the absence of overtime pay regardless of the number of hours Interns

worked.  Ex. A at ¶¶ 72-89.

## III.   LEGAL ARGUMENT

### A.  Plaintiff Meets The Lenient Standard For Conditional Certification Of FLSA Collective Action

Section 216(b) of the FLSA provides that an employee may bring a collective action on

behalf of himself and other "similarly situated" employees when an employer fails to pay

overtime wages.  29 U.S.C. § 216(b); See Summa v. Hofstra Univ., 715 F.Supp.2d 378, 384-385

(E.D.N.Y. 2010).  "Although the FLSA does not contain a class certification requirement, such

orders are often referred to in terms of certifying a class."  Id.  (quoting Bifulco v. Mortgage

Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y.2009)).  When certifying a collective action under the

FLSA, courts "[b]oth in this circuit and elsewhere generally employ a two-tiered analysis to

determine whether an FLSA suit may proceed as a collective action."  Fengler v. Crouse Health

Found., Inc., 595 F.Supp.2d 189, 194 (N.D.N.Y. 2009) (citing Ruggles v. WellPoint, Inc., 591

F.Supp.2d 150, 157 (N.D.N.Y. 2008)).

#### 1.      The Plaintiff's Burden Is Minimal For Conditional Certification

During the first step of the FLSA collective action inquiry, "the court examines pleadings

and affidavits, and if the court finds that proposed class members are similarly situated, the class

is conditionally certified; potential class members are then notified and given an opportunity to

opt-in to the action."  Summa, 715 F.Supp.2d 378, 384 (E.D.N.Y. 2010); (quoting Francis v. A &

E Stores, Inc. No. 06 Civ. 1638 (CLB)(GAY), 2008 WL 2588851, at *1-2 (S.D.N.Y. June 26,

2008)).  <u>See also</u> <u>Malloy v. Richard Fleischman & Assoc., Inc.</u>, 09 Civ. 322 (CM), 2009 WL

1585979, at *2 (S.D.N.Y. June 3, 2009) (granting conditional certification).[20]

At the conditional certification stage, Plaintiff's burden is minimal.  Plaintiffs must

"mak[e] a modest factual showing sufficient to demonstrate that they and potential plaintiffs

together were victims of a common policy or plan that violated the law."  <u>Roebuck v Hudson</u>

<u>Valley Farms, Inc.</u>, 239 F. Supp.2d 234, 238 (N.D.N.Y. 2002) (quoting <u>Realite v. Ark Restaurants</u>

<u>Corp.</u>, 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998)); "Plaintiffs need only describe the potential class

within reasonable limits and provide some factual basis from which the court can determine if

similarly situated potential plaintiffs exist."  <u>Schwed v. General Elec. Co.</u>, 159 F.R.D. 373, 375-

76 (N.D.N.Y. 1995); <u>see also</u> <u>Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 367

(S.D.N.Y. 2007).  In other words, "the court applies 'a fairly lenient standard' and (when it does

so) typically grants 'conditional certification.'"  <u>Malloy</u>, 2009 WL 1585979, at *2 (citations

omitted); <u>see also</u> <u>Rodriguez v. Almighty Cleaning, Inc.</u>, 784 F.Supp.2d 114, 130 (E.D.N.Y.

2011) (citing <u>Rubery v. Buth-Na Bodhaige, Inc.</u>, 569 F.Supp.2d 334, 336 (W.D.N.Y. 2008) and

noting that at the first-step certification, "the evidentiary standard is lenient").

---

[20]    The second step of the FLSA inquiry usually occurs after the completion of discovery
when "the court makes a factual finding based on the developed record as to whether or not the
class members are actually similarly situated."  <u>Summa</u>, 715 F.Supp.2d at 385 (citing <u>Bifulco</u>,
262 F.R.D. at 212).  "During the second stage, the court undertakes a more stringent factual
determination as to whether members of a class are, in fact, similarly situated."  <u>Roach v T.L.</u>
<u>Cannon Corp.</u>, 10 Civ. 0591 (TJM)(DEP), 2013 WL 1316397, at *5 (N.D.N.Y. Mar. 5, 2013)
<u>report and recommendation adopted as mod'd</u>, 10 Civ. 0591 (TJM)(DEP), 2013 WL 1316452
(N.D.N.Y. Mar. 29, 2013) (citing <u>Lynch v United Services Auto. Ass'n</u>, 491 F Supp. 2d 357, 367
(S.D.N.Y. 2007)).  At this later stage, if, based on the discovery, the plaintiffs are not similarly
situated, "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed
without prejudice, and the class representatives may proceed to trial on their individual claims."
<u>Summa</u>, 715 F.Supp.2d at 385 (citing <u>Rubery v. Buth-Na-Bodhaige, Inc.</u>, 569 F.Supp.2d 334,
336 (W.D.N.Y 2008).

In addition, "Courts do not require a named plaintiff to show an actual FLSA violation, but rather that a factual nexus exists between the plaintiff's situation and the situation of other potential plaintiffs." Summa, 715 F.Supp.2d at 386 (citing Gayle v. Harry's Nurses Registry, Inc., No. 07 Civ. 4672 (CPS)(MDG), 2009 WL 605790, at *10 (E.D.N.Y. Mar. 9, 2009)); see also Bifulco, 262 F.R.D. at 212; Rodriguez, 784 F.Supp.2d at 130. A class may be conditionally certified upon a showing that "plaintiff and the potential plaintiffs held the same or similar positions, were subject to the same policies and were not paid the federal minimum wage and did not receive overtime compensation for hours worked in excess of 40 hours in any given week in violation of the FLSA." Summa, 715 F.Supp.2d at 386 n.6 (internal quotations omitted). "Courts regularly grant motions for approval of a collective action based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees." Summa, 715 F.Supp.2d at 386 (quoting Cano v. Four M Food Corp., No. 08 Civ. 3005 (JFB)(AKT), 2009 WL 5710143, at *5 (E.D.N.Y. Feb. 3, 2009) (internal quotations omitted)) see also Rodriguez, 784 F.Supp.2d at 130 (relying on plaintiffs' affidavits which, among other things, identified other similarly situated individuals by first name only). Specifically, in concluding that conditional certification was appropriate, a court explained, "Plaintiffs have easily made the modest showing that is required of them at this preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class." Summa, 715 F.Supp.2d at 391 (quoting Iglesias-Mendoza, 239 F.R.D. at 368).

Furthermore, "[a]t the initial assessment stage, before discovery is completed, the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make

credibility determinations." <u>Summa, 715 F.Supp.2d at 385</u> (citing, among others, <u>Bifulco</u>, 262 F.R.D. at 212). <u>See also</u> <u>Roebuck,</u> 239 F.Supp.2d at 238. Significantly, "the determination that potential plaintiffs are similarly situated is merely a preliminary one." <u>Id</u>. Accordingly, as long as Plaintiff "at this first step [meets his] initial burden," Defendant's efforts to challenge Plaintiff's showing will not be successful. <u>Ruggles v. WellPoint, Inc.,</u> 591 F.Supp.2d 150, 161 (N.D.N.Y. 2008); <u>See also</u> <u>Roebuck,</u> 239 F.Supp.2d at 239 (finding that the affidavits of three plaintiffs were sufficient for a preliminary showing that they were similarly situated, even when Defendant put forth a contradictory affidavit arguing otherwise).

### 2. Plaintiff Need Only Make A Modest Factual Showing For The Court To Conclude Plaintiff And The Potential Plaintiffs Were Similarly Situated

Though "neither the FLSA nor its implementing regulations define 'similarly situated,'" in the Second Circuit "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." <u>Summa,</u> 715 F.Supp.2d at 385 (citing, among others, <u>Hoffmann v. Sbarro, Inc.,</u> 982 F.Supp. 249, 261 (S.D.N.Y. 1997)); <u>see also</u> <u>Malloy,</u> 2009 WL 1585979, at *2. When seeking conditional certification of an action under the FLSA, "a named plaintiff in a collective action need not demonstrate other facts – numerosity, commonality, typicality, and adequacy of representation – which are required to bring a class action under Rule 23." <u>Summa,</u> 715 F.Supp.2d at 385 (citing <u>Sexton v. Franklin First Fin'l, Ltd.,</u> No. 08 Civ. 4950 (JFB)(ARL), 2009 WL 1706535, at *4 (E.D.N.Y. June 16, 2009)); <u>see also</u> <u>Malloy,</u> 2009 WL 1585979, at *2; <u>Iglesias-Mendoza,</u> 239 F.R.D. at 368.

In concluding that the plaintiff in <u>Malloy</u> met his burden, the Court noted that in the Plaintiff's affidavit he "identifies a common policy or practice that is applicable to all the IT support specialists employed by RFA: the refusal to pay them time and a half for hours worked

13

in excess of 40, and instead to compensate them with "comp time" that can be cashed in, but not

for one and one half times the employee's normal hourly rate of pay." Malloy, 2009 WL

1585979, at \*3. The Malloy Court further noted that if "the IT specialists have been improperly

classified as 'exempt,' then the named plaintiff has alleged a common wage, overtime and

payroll practices that violates the FLSA. Having done so, he is entitled to proceed in a

representative capacity, and all potential plaintiffs are entitled to notice and an opportunity to opt

into this action." Malloy, 2009 WL 1585979, at \*3. In Iglesias-Mendoza, the Court reached a

similar conclusion. Relying on the pleadings and the plaintiffs' declarations, "the Plaintiffs have

easily made the modest showing that is required of them at this preliminary stage: they were

subjected to certain wage and hour practices at the defendants' workplace and to the best of their

knowledge, and on the basis of their observations, their experience was shared by members of

the proposed class." Iglesias-Mendoza, 239 F.R.D. at 368.

> **3.     Plaintiff And Other Interns Are Similarly Situated, And Entitled to Conditional Certification Because They Did Not Receive Overtime Pay Or Even The Minimum Wage, They Engaged In Similar Activities, And They Were Subject To Common Policies And Procedures**

>> **a.     Plaintiff And All Other Interns Did Not Receive Overtime Pay**

Plaintiff and other Interns are similarly situated because they were subject to Defendant's

policy of paying a flat rate of monthly or annual income regardless of the number of hours

Interns worked. Ex. A at ¶¶ 3, 16, 46; Ex. P at ¶¶ 13, 15; Ex. Q at ¶ 13; Ex. R at ¶ 12. Moreover,

Defendant applied this policy to all Interns since the named Plaintiff, as well as the other

declarants, are unaware of any Intern ever receiving overtime pay or any compensation other

than their flat rate of pay, based on their interactions with Interns employed by Defendant. Ex. A

at ¶¶ 3, 19, 30, 36, 40, 47, 57, 65; Ex. P at ¶¶ 24, 25, 30, 37; Ex. R at ¶¶ 19, 20. In fact, the flat

rate of pay and long hours worked by Interns often meant that their effective hourly rate was less

than the $7.25 hourly federal minimum wage. See Ex. A at ¶¶ 56-57, 65; Ex. P at ¶¶ 16, 37; Ex. R at ¶ 14. Despite the often high number of hours worked by Interns, they were not subject to any requirement that they track the number of hours they worked. Ex. A at ¶¶ 21, 76, 101; Ex. P at ¶¶ 15, 38; Ex. Q at ¶ 14; Ex. R at ¶ 16. Interns also received a meal card and had the option of accepting monetary compensation instead of a meal card. Exs. C, E, G, N; Ex. P at ¶ 17.

### b. Plaintiff And Other Interns Engaged In Similar Activities And Had Similar Responsibilities

In addition to Plaintiff, Hamilton employs Interns in its Athletics Department who are similarly situated to Plaintiff since they were not students at Hamilton and engaged in coaching duties across the twenty-nine (29) varsity sports at Hamilton. Ex. A at ¶¶ 45-49; Ex. P at ¶¶ 12, 13, 23; Ex. R at ¶ 18. Interns' responsibilities often included certain tasks performed by full-time assistant coaches[21] who worked shorter hours and received higher pay. See Ex. A at ¶ 49; Ex. P at ¶ 25. Like Plaintiff, other Interns received a flat monthly or annual salary and may have even received the same form of appointment letter classifying all Interns as part-time

---

[21]    Interns do not appear to fall under the professional exemption for teachers since they engage in instructing student-athletes for just a minority of their working hours, and their primary duties are not related to teaching. See Opinion Letter FLSA2008-11. For example, Plaintiff's "in season" duties and schedule for football reflect little time instructing student-athletes, a length of time that would only diminish in the "off season" and summer. Ex. L at D000217, 219-221; Ex. A at ¶¶ 52-55. Specifically, Plaintiff estimates that he spent twenty percent of his time "in season," five percent of his time "off season", and almost no time during the summer instructing student-athletes. Ex. P at ¶ 9-11. In addition, for the time that Plaintiff worked with Women's Basketball, the Women's Basketball head coach estimates that he spent just two hours during his twelve-hour work days – or less than 20% of his time – instructing student-athletes. Ex. Q at ¶ 7. Likewise, another Intern, Jimmy Sutton, estimates that he spent twenty-five (25) percent of his hours worked instructing student-athletes when Men's Basketball was "in season". Ex. R at ¶ 7. Like Plaintiff, during the "off season" and summer, Sutton's duties were different than when his sport was "in season". Ex. R at ¶¶ 8, 9. Moreover, should Defendant attempt to suggest the professional exemption applies, such efforts will not preclude conditional certification as long as Plaintiff meets – which he has – his burden at this preliminary certification stage. Ruggles v. WellPoint, Inc., 591 F. Supp. 2d 150, 160 (N.D.N.Y. 2008); See also Roebuck v. Hudson Val. Farms, Inc., 239 F. Supp. 2d 234, 239 (N.D.N.Y. 2002) (finding that the affidavits of three plaintiffs were sufficient for a preliminary showing that they were similarly situated, even when Defendant put forth a contradictory affidavit arguing otherwise).

employees and appointing them for a fixed term.[22]  Ex. A at ¶¶ 3, 16, 46; Ex. P at ¶¶ 12-13, 20;

Ex. Q at ¶ 13; Ex. R at ¶¶ 14, 15; See also Exs. C-G.  Other Interns also worked hours in excess

of forty (40) hours per workweek when their assigned sport was "in season," including lengthy

days necessitated by travel with their teams to games.  Ex. A at ¶ 51;  Ex. P at ¶¶ 9, 25, 33; Ex.

Q at ¶ 7; and Ex. R at ¶ 7 .

 Moreover, in the "off season," all Interns in the Athletics Department were scheduled

for "off season" Game Management responsibilities by the Athletics Department based on a

centrally-managed schedule.  Ex. A at ¶¶ 52, 53, 67; Ex. P at ¶¶ 10, 15, 25, 40; Ex. Q at ¶¶ 11-

12; Ex. R at ¶¶ 13; Ex. T.  Furthermore, a variety of documents support the conclusion that

Plaintiff and other Interns were similarly situated.  See Section II.B.3, supra, Exs. C-I, N, T, U.

  c. **Plaintiff And Other Interns Are Subject To Common**
    **Compensation Policies**

 Based on conversations with multiple individuals at Hamilton, including Hind,

Stemkoski, and Thayer, Plaintiff learned Hamilton was and is aware of the long hours and low

pay to which Interns in the Athletics Department are subject.  Ex. A at ¶¶ 72-89; Ex. P at ¶¶ 43-

58; Ex. Q at ¶ 15.  In fact, Hind told Plaintiff he was aware of the pay issue with Interns, but

throughout his tenure as Athletic Director at Hamilton his efforts to change pay practices for

Interns were "pushed down" by the "higher-ups" and things remained the same.  Ex. A at ¶ 84;

Ex. P at ¶¶ 54, 57.  Moreover, coaches in individual sports were also aware of the long hours and

low pay of Interns in the Athletics Department.  Ex. Q at ¶ 15.  For example, Coach Cohen

rejected Plaintiff's suggestion that his football responsibilities be reduced to permit him to get a

part-time job to earn additional money.  Ex. A at ¶ 76; Ex. P at ¶ 47.

---

[22] Although Plaintiff served discovery requests that would support disclosure of such
documents, Defendant objected and has not yet produced relevant documents.

Based on the foregoing, Plaintiff and other Interns are similarly situated and conditional certification of a collective action is warranted.

**B.  Plaintiffs Are Subject To A Three-Year Statute of Limitations Under The FLSA**

The FLSA "has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years." Iglesias-Mendoza, 239 F.R.D. at 369 (citing 29 U.S.C. § 255(a)); see also Summa, 715 F.Supp.2d at 387.  "A willful violation exists when an employer knew or recklessly disregarded that its conduct violated the FLSA." Ruggles, F.Supp.2d at 163 (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).  Should willfulness be in dispute, "the court applies the three-year statute of limitations for purposes of certifying a representative action." Iglesias-Mendoza, 239 F.R.D. at 369.

The Complaint alleges that Defendant's conduct was willful, and this is sufficient for a three-year statute of limitations to apply at this stage of the litigation.  McBeth v. Gabrielli Truck Sales, Ltd., 768 F.Supp.2d 396, 400 (E.D.N.Y. 2011).  Ex. A at ¶¶ 4, 39, 49, 102-104 et seq. Since discovery to date is limited and no depositions have been conducted, willfulness cannot be resolved at this early stage of the litigation and the three-year statute of limitations is warranted. Moreover, despite Hamilton's awareness of the low pay and long hours common to Interns, including Hind's requests to increase pay for Interns, no changes were made to the common treatment of Interns by Hamilton – facts which further support the willful nature of Defendant's conduct.  Ex. A at ¶¶ 72-89; Ex. P at ¶¶ 43-58.

**C.  Upon Granting of Conditional Certification, The Court May Authorize An FLSA Plaintiff To Provide Notice To Other Potential Plaintiffs**

With the granting of "conditional certification, the court may authorize an FLSA plaintiff to provide written notice to potential plaintiffs of their right to join the action." Summa, 715 F.Supp.2d at 385 (quoting Gortat v. Capala Brothers, Inc., 07 Civ. 3629 (ILG), 2009 WL

17

3347091, at *8 (E.D.N.Y. October 16, 2009). In "permitting the transmission of notice to other 'similarly situated' employees, a court furthers "the broad remedial purpose of the Act, which should be given a liberal construction, and also avoids a multiplicity of suits." Summa, 715 F.Supp.2d at 385.

Upon receipt of "the written notice, employees who seek to join the collective action "must 'opt in' and consent in writing." Gortat, 2009 WL 3347091, at *8 (quoting Morales v. Plantworks, Inc., 05 Civ. 2349 (DC), 2006 WL 278154, at *1 (S.D.N.Y. February 2, 2006)). In contrast to a Rule 23 class action, "only potential plaintiffs who 'opt-in' can be 'bound by the judgment' or 'benefit from it.'" Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 101, 104 (S.D.N.Y. 2003) (citing Hoffman v. Sbarro, Inc., 982 F.Supp. 249, 260 (S.D.N.Y. 1997); see also Gortat, 2009 WL 3347091, at *8. Moreover, "only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled." Gjurovich, 282 F. Supp.2d at 104; see also Hoffmann, 982 F.Supp. at 260.

As district courts have commented, "...it is well settled that district courts have the power to authorize an FLSA plaintiff to send such notice to other potential plaintiffs." Gjurovich, 282 F. Supp.2d at 104 (citing Hoffmann-La Roche, Inc. v. Sperling, 493 U.S.165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Notice may be authorized by a district court in an FLSA collective action if the plaintiff demonstrates that other potential plaintiffs are "similarly situated" to him or her – the very showing Plaintiff has made herein. Gjurovich, 282 F. Supp.2d at 104 (citing Hoffmann, 982 F.Supp. at 261).

Moreover, the court need not "wait for defendant to complete its discovery before authorizing class notice," since "courts have endorsed the sending of notice early in the

proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management." Hoffmann, 982 F.Supp. at 262.

Furthermore, the significant benefits of FLSA collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action" and the opt-in requirement. Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 486 L.Ed.2d 480 (1989).  Accordingly, the district court has broad discretion to facilitate early notice to potential collective action members to advise them of their right to join the action.  Hoffman-LaRoche, 493 U.S. at 171.  The notice procedure allows the "efficient resolution in one proceeding of common issues of law and fact," and provides plaintiffs with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." Id. at 170.

Given the disputed nature of whether the Defendant's violations were willful, the proposed Court Authorized Notice, Exhibit S, should be distributed to all Interns who worked for Defendant at any time during the relevant three-year time period as alleged in the Complaint – three years prior to the December 20, 2012 filing date of this action, through the date of the final disposition of this action.  Ex. A at ¶¶ 31-32.

### D. Plaintiff Is Entitled To Discovery Of The Names And Contact Information Of Potential Plaintiffs

Plaintiff is entitled to "discovery of the names and addresses of those current and former employees of the Defendant[] who are potential plaintiffs in this action, so that he may send them the Proposed Notice and Consent to Become Party Plaintiff form." Gjurovich, 282 F. Supp.2d at 108.  Since such "discovery is relevant to the subject matter of this action" it should be permitted. Id. (citing Hoffmann-La Roche, 493 U.S. at 170).  In ordering defendants therein to disclose the names of potential plaintiffs within twenty-one (21) days, the Gjurovich Court noted such disclosure was necessary, "to insure that employees receive accurate and timely

notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate," Id. (internal quotations omitted). The court reached a similar conclusion after authorizing a conditional certification and ordered the production of "a computer-readable data file containing the names, addresses and telephone numbers of [ ] potential opt-in members so that notice may be issued." Bifulco, 262 F.R.D. at 217.

Accordingly, the discovery of names should include all Interns who worked for Defendant at any time during the relevant three-year time period as alleged in the Complaint – three years prior to the December 20, 2012 filing date of this action, through the date of the final disposition of this action. Ex. A at ¶¶ 31-32.

## IV.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests this Court: (1) authorize conditional certification of this case to proceed as a collective action pursuant to 29 U.S.C. § 216(b); (2) authorize the mailing of Plaintiff's proposed Court Authorized Notice (Exhibit S) to all Interns employed in Defendant's Athletics Department during three years prior to the December 20, 2012 filing date of this action through the date of the final disposition of this action; (3) authorize Plaintiff to seek discovery from Defendant of the names and contact information of other Interns employed in Defendant's Athletics Department during the relevant

timeframe; and (4) order such other and further relief as the Court may deem necessary and

appropriate.

Dated: New York, New York
      June 17, 2013

                      **THE OTTINGER FIRM, P.C.**


                      _____/s/_____
                      Robert W. Ottinger

                      20 W. 55th Street, 6th Floor
                      New York, New York 10019
                      Telephone: (212) 571-2000
                      Facsimile: (212) 571-0505
                      robert@ottingerlaw.com

                      *Counsel for Plaintiff*

21