**Copies Of Decisions Exclusively Reported In
Computerized Databases**

(And Opinion Letter FLSA2008-11)

# TABLE OF CONTENTS

**Case**                                                                                          **Page**

<u>Cano v. Four M Food Corp.,</u>
No. 08 Civ. 3005 (JFB)(AKT), 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009)..........................1

<u>Francis v. A & E Stores, Inc.,</u>
No. 06 Civ. 1638 (CLB)(GAY), 2008 WL 2588851 (S.D.N.Y. June 26, 2008) ....................10

<u>Gayle v. Harry's Nurses Registry, Inc.,</u>
No. 07 Civ. 4672 (CPS)(MDG), 2009 WL 605790 (E.D.N.Y. Mar. 9, 2009).........................16

<u>Gortat v. Capala Brothers, Inc.,</u>
No. 07 Civ. 3629 (ILG), 2009 WL 3347091 (E.D.N.Y. October 16, 2009)...........................25

<u>Malloy v. Richard Fleischman & Assoc., Inc.,</u>
No. 09 Civ. 322 (CM), 2009 WL 1585979 (S.D.N.Y. June 3, 2009)......................................35

<u>Morales v. Plantworks, Inc.,</u>
No. 05 Civ 2349 (DC), 2006 WL 278154 (S.D.N.Y. February 2, 2006) ...............................39

<u>Roach v T.L. Cannon Corp.,</u>
10 Civ. 0591 (TJM)(DEP), 2013 WL 1316397 (N.D.N.Y. Mar. 5, 2013) <u>report and
recommendation adopted as mod'd,</u> 10 Civ. 0591 (TJM)(DEP), 2013 WL 1316452
(N.D.N.Y. Mar. 29, 2013) ....................................................................................................41

<u>Sexton v. Franklin First Fin'l, Ltd.,</u>
No. 08 Civ. 4950 (JFB)(ARL), 2009 WL 1706535 (E.D.N.Y. June 16, 2009).....................54

**OTHER**

Opinion Letter FLSA2008-11 ......................................................................................................68

2009 WL 5710143
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Felix CANO, Noe Ramirez Vasquez, and Jorge
Ramirez, on behalf of themselves and on behalf
of all others similarly situated, Plaintiffs,
v.
FOUR M FOOD CORP., Richard Lukeman, William
Lukeman, and Gregory Lukeman, Defendants.

No. 08–CV–3005 (JFB)(AKT).  |  Feb. 3, 2009.

**Attorneys and Law Firms**

Troy L. Kessler, Misiano Shulman Capetola & Kessler, LLP,
Melville, NY, for Plaintiff.

Kerry Ann Dinneen, James W. Weller, Tara L. Eyer Daub,
Nixon Peabody, Jericho, NY, for Defendant.

Opinion

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

*1 Plaintiffs Felix Cano, Noe Ramirez Vasquez, and Jorge
Ramirez (collectively, "plaintiffs") commenced this action
on behalf of themselves and others similarly situated on
July 23, 2008, seeking unpaid wages from Defendants Four
M Food Corp., Richard Lukeman, William Lukeman, and
Gregory Lukeman (collectively, "FOUR" or "the defendants"),
pursuant to the Fair Labor Standards Act of 1938, as amended,
("FLSA"), 29 U.S.C. § 201, et. seq., as well as New York
Labor Law.[1] Plaintiffs now move, with respect to their first
cause of action, for conditional certification as an FLSA
collective action pursuant to 29 U.S.C. § 216(b) ("Section
216(b)"). They also move for court authorized notice to
all individuals who are similarly situated in this potential
collective action, and, to facilitate such notice, the production
by defendants of names and last known physical addresses
of certain of defendants' former and current employees. For
the reasons set forth below, plaintiffs' motion for conditional

certification under Section 216(b) of the FLSA, as well as
court authorized notice and motion to compel the production
by defendants of names and addresses of potential plaintiffs
in the collective action, is granted. However, the scope of
such notice shall be limited to only those individuals who are
"similarly situated" to the named plaintiffs, as defined in this
Memorandum and Order. The Court further orders that the
parties jointly submit a modified notice in accordance with
this Memorandum and Order for approval by the Court within
thirty (30) days of the date of this Order.

**I. BACKGROUND**

**A. Facts**

In support of this motion for conditional certification of an
FLSA collective action, plaintiffs have submitted supporting
affidavits from the plaintiffs, Felix Cano, Noe Ramirez
Vasquez, and Jorge Ramirez, as well as the affidavits of
two potential "opt-in" plaintiffs, Marvin Alexander Ortiz
Tadeo and Fernando Gonzalez. The Court has considered the
pleadings and motion papers, and the affidavits and exhibits
attached thereto, in adducing the facts relevant to this motion.

The defendants are in the supermarket business. (Plaintiffs'
Memorandum of Law, at 2; Answer ¶ 11.) FOUR maintains
three grocery stores in the State of New York, which are
located in Brentwood, Bohemia, and Copiague. (Plaintiffs'
Memorandum of Law, at 2.) Plaintiffs are former employees
of the defendants. Plaintiffs claim that during their tenure
as employees them of FOUR, defendants failed to properly
compensate them for their overtime work. Specifically, they
claim that they "were subjected to a policy and practice of
requiring them to work in excess of forty (40) hours per week,
without providing proper payment for overtime" (Plaintiffs'
Memorandum of Law, at 3) by "failing to maintain accurate
time sheets and payroll records" and paying plaintiffs "at
times, wholly or partially in cash, without providing an
accurate indication as to their rate of pay, their hours worked
each day, and the total hours worked each week." (Compl.¶¶
79–80.) They also allege that the potential plaintiffs to
this action are "the current and former employees of the
defendants, who have worked as shelfstockers, grocery
baggers, food packers and wrappers, delivery truck unloaders
and loaders, shopping cart retrievers, bathroom cleaners,
and were part of the general maintenance staff." (Plaintiffs'
Memorandum of Law, at 2.)

**\*2** Plaintiff Felix Cano, the first named plaintiff, was "employed by the defendants to bag groceries, stock shelves, stock produce, change light bulbs and batteries in light fixtures, retrieve shopping carts, clean bathrooms and the floors, and to perform other general maintenance from, in or about, October 2001, until, in or about, May 2008." (Plaintiffs' Memorandum of Law, at 2; Affidavit of Felix Cano ¶¶ 2, 4–5.) Cano alleges that he was assigned to work in FOUR's Bohemia and Brentwood locations. (Complaint ("Compl .") ¶ 48.) He also alleges that he worked more than sixty (60) hours in most workweeks in which he was employed by defendants. (Compl.¶ 60.) Cano further alleges that defendants failed to compensate him for time worked in excess of forty (40) hours per week at a rate of at least one and one-half time his regular hourly rate. (Compl.¶ 62.)

Named plaintiff Noe Ramirez Vasquez was "employed by the defendants to stock shelves, pack groceries, assist in unloading the delivery trucks, empty the bottle machines, clean the bathrooms, and assist in the general maintenance from, in or about, May 2007, until, in or about, September 2008." (Plaintiffs' Memorandum of Law, at 2; Affidavit of Noe Ramirez Vasquez ¶¶ 2, 4–5.) Vasquez alleges that she was assigned to work in FOUR's Bohemia, Brentwood, and Copiague location. (Compl.¶ 54.) She also alleges that she worked more than sixty (60) hours in most workweeks. (Compl.¶ 74.) She further alleges that defendants failed to compensate her for time worked in excess of forty (40) hours per week at a rate of at least one and one-half time her regular hourly rate. (Compl.¶ 76.)

Plaintiff Jorge Ramirez, the third named plaintiff, was "employed by the defendants to stock shelves in the dairy and frozen food departments, pack groceries, retrieve shopping carts from the parking lot, cut the grass, clean bathrooms, and assist in performing basic maintenance from, in or about, August 2002, until, in or about, July 2007." (Plaintiffs' Memorandum of Law, at 2; Affidavit of Jorge Ramirez ¶¶ 2, 4–5, 7.) Ramirez alleges that he was assigned to work in FOUR's Bohemia and Brentwood locations. (Compl.¶ 51.) He also alleges that he worked more than sixty (60) hours in most workweeks. (Compl.¶ 67.) Ramirez further alleges that defendants failed to compensate him for time worked in excess of forty (40) hours per week at a rate of at least one and one-half time his regular hourly rate. (Compl.¶ 69.)

The potential plaintiffs who would like to opt-in to this action are Marvin Alexander Ortiz Tadeo and Fernando Gonzalez. Tadeo was employed by the defendants from in or about January 2006 until in or about December 2007, and his "duties consisted of stocking the shelves, organizing and stocking the pallets, stocking the produce department, arranging produce, cleaning bathrooms, cleaning the floors, retrieving the shopping carts from the parking lot, and general maintenance." (Plaintiffs' Memorandum of Law, at 2–3; Affidavit of Marvin Alexander Ortiz Tadeo ¶¶ 4–5.) Fernando Gonzalez was employed by the defendants from in or about March 2002 until in or about January 2006, and his "duties consisted of cutting, cleaning, packing and wrapping the meat in the meat department." (Plaintiffs' Memorandum of Law, at 3; Affidavit of Fernando Gonzalez ¶ 5.)

### B. Procedural History

**\*3** Plaintiffs filed this action on July 23, 2008. On November 5, 2008, plaintiffs submitted the instant motion for conditional certification as an FLSA collective action. On December 24, 2008, defendants filed their opposition papers, and plaintiffs submitted a reply on January 5, 2009. Oral Argument was heard on January 30, 2009, and the Court reserved its decision at that time. The Court has fully considered the submissions of the parties.

### II. DISCUSSION

### A. Legal Standard

Section 216(b) of Title 29 provides, in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages ... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself

or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "Under Section 216(b) of the FLSA, an employee has a private right of action 'to recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions.' " *Hens v. ClientLogic Operating Corp.*, 2006 WL 2795620, at *3 (W.D.N.Y. Sept.26, 2006) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101, 103 (S.D.N.Y.2003)). "Although the FLSA does not contain a class certification requirement, suit orders are often referred to in terms of 'certifying a class.' " *Parks v. Dick's Sporting Goods, Inc.*, 2007 WL 913927, at *3 (W.D.N.Y. March 23, 2007).

To determine whether an action should be certified as an FLSA collective action, a two-step analysis is used. *Rubery v. Buth–Na–Bodhaige, Inc.*, 569 F.Supp.2d 334, 336 (W.D.N.Y.2008) ("Courts utilize a two-step process when analyzing motions to certify a collective action under the FLSA"). The first step is to determine whether the proposed class members are "similarly situated." *Rubery*, 569 F.Supp.2d at 336; *Gjurovich*, 282 F.Supp.2d at 105 ("Once the [p]laintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff."). At this stage, "the evidentiary standard is lenient," *Rubery*, 569 F.Supp.2d at 336, and plaintiff must make a "modest factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Scholtisek v. The Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y.2005). In making this showing, "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan" is required. *Scholtisek*, 229 F.R.D. at 387; *see also Gjurovich*, 282 F.Supp.2d at 104 ("the determination that potential plaintiffs are similarly situated is merely a preliminary one") (internal quotation marks and citation omitted). This first stage determination is "based on the pleadings, affidavits and declarations." *Hens*, 2006 WL 2795620, at *3; *see also Hallissey v. America Online, Inc.*, 2008 WL 465112, at *1 (S.D.N.Y. Feb.19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.").

*4 The second phase of the FLSA collective action inquiry, on the other hand, typically occurs after the completion of discovery; at that point, the court makes a factual finding based on the developed record as to whether or not the class members are actually "similarly situated." "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Hens*, 2006 WL 2795620, at *4. If the court determines at that time that the members are not similarly situated under the law, then "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." *Rubery*, 569 F.Supp.2d at 336. Also, "should the class description later be shown to require additional modifications, they can be made, as appropriate, during a second tier inquiry." *Id.* at 338; *see also Mendoza v. Casa de Cambio Delgado, Inc.*, 2008 WL 938584, at *2 (S.D.N.Y. Apr.7, 2008) (court "has the power to alter or modify the class description if subsequent events suggest that it is appropriate to do so.").

Notably, "[c]ollective actions brought under the FLSA are different in various respects from class actions under Rule 23 of the Federal Rules of Civil Procedure." *Sherrill v. Sutherland Global Svcs., Inc.*, 487 F.Supp.2d 344, 348 (W.D.N.Y.2007). Under the FLSA, potential plaintiffs are required to "opt-in" "to be bound by the judgment (and to benefit from it." *Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249, 260 (S.D.N.Y.1997). Each potential plaintiff must file his or her written consent in the court in which the suit is brought. *See id.* In relation to the class certification requirements, "a named plaintiff in a collective action need not demonstrate other facts—numerosity, commonality, typicality, and adequacy of representation—which are required to bring a class action." *Hens*, 2006 WL 2795620, at *3.

### B. Application

### 1. Conditional Certification

In the instant case, the Court finds that the plaintiffs have satisfied their burden of showing, at this initial stage of the FLSA collective action inquiry, that certain proposed class members are "similarly situated" to them. Plaintiffs have alleged that they and the potential opt-in plaintiffs were subjected to a policy and practice of being required to work in

excess of forty (40) hours per week without proper overtime pay. (Plaintiffs' Memorandum of Law, at 3.) Specifically, plaintiffs have alleged that the defendants have a common policy or practice to deny wages to its hourly employees by failing to maintain accurate time sheets and payroll records and by paying plaintiffs wholly or partially in cash. (Compl. ¶¶ 79–80 .) Plaintiffs have sufficiently shown a factual basis for being similarly situated with respect to this common policy of being denied overtime pay through their pleadings and submitted affidavits. *Hens,* 2006 WL 2795620, at *3. Because at this stage, the burden on plaintiffs is a minimal one and only a "modest factual showing" need be made with respect to the issue of potential plaintiffs being "similarly situated," plaintiffs' "substantial allegations," *Scholtisek,* 229 F.R.D. at 387, regarding defendants' common failure to pay its general maintenance employees overtime pay pursuant to the FLSA is sufficient to overcome this burden. *Patton v. Thompson Corp.,* 364 F.Supp.2d 263, 267 (E.D.N.Y.2005); *see also Trinidad v. Breakaway Courier Systems,* 2007 WL 103073, at *2 (S.D.N.Y. Jan.12, 2007) ("plaintiffs need only provide some factual basis from which the court can determine if similarly situated plaintiffs exist") (internal citations omitted); *Guzman,* 2007 WL 2994278, at *2 (stating that the burden is "very low" at the notice stage.)

**\*5** First, the Court finds defendants' argument that "[p]laintiffs have not and cannot demonstrate that the Four M Defendants enacted, maintained, and/or imposed an unlawful policy or practice to which the [p]laintiffs were victim" unavailing. (Defendants' Memorandum of Law, at 2.) The facts here are similar to those presented to the court in *Wraga v. Marble Lite, Inc.,* 2006 WL 2443554, at *2 (E.D.N.Y. Aug.22, 2006), where the court reasoned:

> In light of the minimal nature of Wraga's burden on this motion, he has sufficiently demonstrated that an identifiable "factual nexus" exists between his situation and that of other potential class members. In his affidavit, as well as in the complaint, Wraga describes a policy by which defendants required their employees to work in excess of 40 hours per week without paying them overtime as required by the FLSA. Further, based on conversations he had with other employees, Wraga says that he is aware of at least 18 other laborers, installers, varnishers and tilers who performed the same or similar work as he, who were required by defendants to work in excess of 40 hours per week, but who were not paid overtime as part of the defendants' policy. Wraga describes conversations he observed between some of these employees and defendant Kobe in which the employees complained that they were not paid properly for their overtime hours. Wraga has even provided the names of seven such employees, all of whom appear on payroll records defendants have produced thus far in discovery, and one of whom was fired by Kobe for complaining about Kobe's failure to properly pay him for overtime work. Accordingly, the Court finds that allowing this case to proceed as a collective action is appropriate.

Defendants' contention that Wraga's affidavit is insufficient as a matter of law to support his motion because it contains merely conclusory allegations is misplaced. Courts routinely grant such motions based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees. *See Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 91, 96 (S.D.N.Y.2003) (plaintiff established propriety of collective action notice by, *inter alia,* submitting declaration naming employees who were similarly situated); *see also Patton,* 364 F.Supp.2d at 267; *Young,* 225 F.R.D. at 55.

Similarly, in this case, the named plaintiffs stated in their affidavits that they were continually denied proper compensation for the hours they worked in excess of forty (40) hours per week. (Affidavit of Felix Cano ¶¶ 2, 8, 10, 13; Affidavit of Noe Ramirez Vasquez ¶¶ 2, 8, 10, 13; Affidavit of Jorge Ramirez ¶¶ 2, 8, 10, 13.) Plaintiffs further stated that they knew personally that many of their former coworkers, many of whom they listed by name, were also not properly compensated for their overtime. (Affidavit of Noe Ramirez Vasquez ¶¶ 10, 13; Affidavit of Jorge Ramirez ¶¶ 10, 13.) Plaintiff Cano's affidavit states that there are five to ten other "grocery baggers, shelve stockers, general maintenance staff" whom he believes were not properly compensated for their overtime wages, of which several he named (Affidavit of Felix Cano ¶¶ 2, 7, 10); similarly, Vasquez attested to

six to ten other employees who "stocked the shelves in their respective departments, assisted in unloading the trucks, packed groceries, and assisted in general maintenance," whom she attempted to name (Affidavit of Noe Ramirez Vasquez ¶¶ 2, 7), and Jorge Ramirez attested to eight to fifteen "packers, shelf stockers, and grocery baggers," many of whom he named (Affidavit of Jorge Ramirez ¶¶ 2, 7.) The two affidavits of potential opt-in plaintiffs also indicate that they performed similar variations of general maintenance work and were subject to a denial of overtime pay. (Affidavit of Marvin Alexander Ortiz Tadeo ¶¶ 2, 911; Affidavit of Fernando Gonzalez ¶¶ 2, 8, 11.) Finally, the personal knowledge of plaintiffs as to defendants' failure to pay overtime wages to others was based in part on conversations with other co-workers. (Affidavit of Felix Cano ¶ 10; Affidavit of Noe Ramirez Vasquez ¶ 10; Affidavit of Jorge Ramirez ¶ 10; Affidavit of Marvin Alexander Ortiz Tadeo ¶ 11; Affidavit of Fernando Gonzalez ¶ 11.)

**\*6** These statements setting forth defendants' common denial of overtime pay, the named plaintiffs' personal knowledge of and the names of other co-workers who were allegedly subject to the same denial of overtime pay, and the opt-in plaintiffs' affidavits attesting to the same, constitute a sufficient factual basis for alleging that the purported class members were "victims of a common policy or plan" and that a "factual nexus" exists between the situation of the named employees and that of other current and former employees. *Realite,* 7 F.Supp.2d at 308; *cf. Rubery,* 569 F.Supp.2d at 337 ("plaintiff has met her burden to demonstrate, by producing affidavits and time records from other Shop Managers which are indicative of a common policy or plan with respect to the duties and supervisory responsibilities of Shop Managers."); *Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at \*5 (S.D.N.Y. May 29, 2007) (finding that a plaintiff's complaint and declaration averring, based on his personal knowledge, that he, along with four other employees in similar positions, were not compensated for overtime work "satisfy the minimal standards for conditionally certifying an FLSA collective action at this preliminary stage of the proceedings."); *Prizmic v. Armour, Inc.,* 2006 WL 1662614, at \*3 (E.D.N.Y. June 12, 2006) (denying conditional class certification where "[p]laintiff [had] not submitted *any* affidavit or documentation in support of the instant motion.") (emphasis supplied). Thus, the Court finds that conditional certification is warranted under the facts alleged in this case.

In this regard, the Court finds defendants' reliance on *Seever v. Carrols Corp.,* 528 F.Supp.2d 159 (W.D.N.Y.2007) to

be misplaced. In that case, which had already undergone "extensive" discovery, the defendant employer moved simultaneously for summary judgment on several claims that indicated "no evidence," including in affidavits submitted by plaintiffs, that allegedly illegal internal policies "were part of a uniform policy common to other stores." *Id.* at 173. As defendants point out, the court in *Seever* stated that "the affidavits are incomprehensibly vague as to the material circumstances surrounding these particular alleged policies, such as whether these acts occurred during the time period relevant to this action ... Given these omissions, it is impossible for the Court to determine as a matter of law whether the activities the affiants describe were even compensable, let alone relevant to the instant plaintiffs' claims." *Id.* at 174. However, the instant case is certainly distinguishable from *Seever;* plaintiffs here have alleged and attested to (1) a common policy of being denied overtime pay by having their time recorded inaccurately and being paid in part in cash, (2) similar work duties that are clearly compensable in nature, (3) personal knowledge of others' similar situation with respect to defendants' failure to pay overtime wages, (4) personal knowledge of the expected number and identities of potential plaintiffs, and (5) particular dates of overlapping employment that are, at least in some part, within the statute of limitations set by the FLSA.

**\*7** The Court also rejects defendants' argument that "[p]laintiffs also fail to establish that they are similarly situated to potential opt-in plaintiffs" because they "present no facts as to the jobs held by [their former co-workers], the hours worked by them and at which store location(s), the manner in which these former co-workers were paid, and/or if they were paid in the same manner as [p]laintiffs." (Defendants' Memorandum of Law, at 3.) It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs. Similarly, it is not critical whether Cano's position was that of a "porter" (Answer ¶ 47) while Ramirez, for example, was a "produce clerk." (Answer ¶ 49.) As long as they were all similarly situated with *respect to being subject to the same policy* of being denied overtime compensation, and there exists a factual nexus among the plaintiffs, conditional certification of the collective action is appropriate. *See Heagney v. European Am. Bank,* 122 F.R.D. 125, 127 (E.D.N.Y.1988) ("[i]n order to be 'similarly situated,' the plaintiffs do not have to perform the same job in the same location as long as there is an [unlawful] policy common

to all"); *Realite,* 7 F.Supp.2d at 308 ("Instead, all that is required is "some identifiable factual nexus which binds the named [plaintiffs] and potential class members together as victims of a particular alleged discrimination."); *Chowdhury,* 2007 WL 2873929, at *4 ("defendants' attack on plaintiff's factual showing focuses mostly on irrelevant differences between plaintiff and opt-in plaintiffs. The proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated 'with respect to their allegations that the law has been violated' ") (citing *Young,* 229 F.R.D. at 54); *Hallissey,* 2008 WL 465112, at *2 ("While dates of employment and hours worked are unique to each employee, it does not necessarily create dissimilarity under the FLSA. Nor does the fact that employees worked a variety of different jobs in a number of different departments at different locations preclude class treatment.") (internal citations omitted); *Parks,* 2007 WL 913927, at *3–*4 ("although similarity considerations might prove dispositive on a 'second stage' analysis, evidence of discrepancies between putative class members is insufficient to defeat FLSA certification at the initial stage, due to plaintiff's 'relatively lenient' burden to demonstrate that the class members were together subjected to the same wage and hour practices, for which she may rely on 'substantial allegations' of such practices."); *cf. Damassia v. Duane Reade, Inc.,* 2006 WL 2853971, at *6 (S.D.N.Y. Oct.5, 2006) ("[o]n defendant's logic, no group of opt-in plaintiffs would ever be 'similarly situated' unless they were clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele."). Because in this case, plaintiffs have sufficiently alleged that all of the prospective plaintiffs were subjected to the same illegal pay practices by FOUR and have set forth an identifiable factual nexus linking the named plaintiffs with putative collection action members, they have met the requirement of demonstrating that the named plaintiffs are "similarly situated" to the prospective collective action members. Indeed, defendants are simply incorrect in arguing that plaintiffs cannot claim to be similarly situated to prospective plaintiffs "because of the generalized allegation that they were all continually denied proper compensation via the phantom policy." (Defendants' Memorandum of Law, at 3.) First, the Court finds that plaintiffs have sufficiently characterized the policy that defendants allegedly followed and second, the allegation that "they were all continually denied proper compensation" is precisely why conditional certification is warranted at this stage.

**\*8** Finally, it is well settled that the existence of certain individual claims does not preclude the conditional

certification of an FLSA collective action. Defendants make the point that only one of the five affidavits, that of Fernando Gonzalez, speaks to a lunch hour issue. (Defendants' Memorandum of Law, at 10.) Therefore, defendants urge, "the Court would have to undertake an individualized, factual inquiry into whether each [p]laintiff and potential opt-in plaintiff had similar lunch hour issues." (Defendant's Memorandum of Law, at 10.) However, an individual plaintiff may bring an individual claim in a collective action, so long as that plaintiff pursues the collective claim as well. *See Chowdhury,* 2007 WL 2873929, at *5 ("[E]ven if plaintiff's individual claims include grievances unrelated to overtime compensation, the inclusion of individual claims in a collective action does not render plaintiff not similarly situated to the opt-in plaintiffs."). Thus, the Court rejects defendant's argument on these grounds, because Gonzalez clearly attested to also being similarly subjected to FOUR's policy of denying overtime pay.

In sum, plaintiffs have demonstrated a sufficient "factual nexus between [their] situation and the situation of other current and former employees," *Realite,* 7 F.Supp.2d at 308, who were potentially denied overtime wages. The pleadings and affidavits of the named plaintiffs, as well as the potential opt-in plaintiffs, are sufficient at this stage of the litigation for conditional certification of a collective action pursuant to Section 216(b) of the FLSA.

### 2. Scope of Notice

Plaintiffs further request that the Court authorize plaintiffs "to post and circulate a Notice of Pendency and Consent to Join form to all individuals who are similarly situated in this collective action." (Plaintiffs' Memorandum of Law, at 1.) Specifically, plaintiffs seek court authorization to circulate this proposed notice of pendency to all employees of FOUR and have set forth an identifiable factual nexus linking the named plaintiffs with putative collective action members, beginning six (6) years from the commencement of this lawsuit. (Plaintiffs' Memorandum of Law, at 8.) Defendants oppose the notice on the grounds that the notice "should be limited to current and former employees who were grocery clerks, produce clerks, and porters." (Defendants' Memorandum of Law, at 11.) Defendants also argue that the notice should only be sent to those specified employees who were employed by Defendants within the past three (3) years prior to the commencement of the action. (Defendants' Memorandum of Law, at 12.)

Even though Section 216(b) does not expressly provide a district court with the authority to order notice, "[t]he Second Circuit has recognized a district court's authority to order that notice be given to potential members of a plaintiff class in actions under this section (generally referred to as 'collective actions'), pursuant to the opt-in provisions of the FLSA." *Rubery,* 569 F.Supp.2d at 335 (internal citation omitted); *see also Scholtisek,* 229 F.R.D. at 387. Upon conditional certification of an FLSA collective action and notice thereof, class members are given the opportunity to "opt in." *Rubery,* 569 F.Supp.2d at 336. "Because a collective action requires written consent from the opt-in plaintiffs, 'it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice,' in order to ensure that the drafting and distribution of the notice is 'timely, accurate and informative.' " *Rubery,* 569 F.Supp.2d at 336 (quoting *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 171–72, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).

**\*9** Although the Court finds that conditional certification is warranted, it concludes that the scope of notice should not be as broad as plaintiffs have proposed. As an initial matter, the Court finds it prudent to limit the scope of the notice of pendency to only those employees as to whom there are allegations that they have been affected by defendants' policy of denying overtime pay. Because there is no factual basis for deeming plaintiffs, with respect to defendants' alleged failure to pay overtime wages, "similarly situated" to all current and former employees of FOUR, the notice shall only be sent to those employees who engaged in similar job duties as the plaintiffs, including general maintenance work for the defendants at any of defendants' grocery store locations. Since plaintiffs have not set forth any facts or allegations with respect to employees other than those engaged in similar duties to the plaintiffs—namely, general maintenance work and variations thereof—the Court finds that notice to *all* employees of FOUR is unnecessary. Even though plaintiffs are certainly not required to show that they are identically situated, or that they possess the same attributes with respect to their job, they are required to show that they are subject to the same common policy or plan by defendants. In this regard, the Court is not persuaded that plaintiffs have made any attempt to show that all employees of FOUR are similarly situated to the named plaintiffs and as such, the proposed notice of pendency should be modified accordingly. *Cf. Sherrill,* 487 F.Supp.2d at 350 ("Although it is true that a finding of 'similarly situated' does not require the plaintiffs to perform the same job in the same location

as long as there is [an unlawful] policy common to all, plaintiffs have not demonstrated that the Sutherland policies and practices complained of affected hourly employees other than telemarketing agents.") (internal quotation marks and citation omitted).

The plaintiffs and opt-in plaintiffs have stated that as employees, they completed various tasks, including stocking shelves, cleaning bathrooms, cutting the grass, cleaning the walls, changing light bulbs, unloading delivery trucks, bagging groceries, and arranging produce. (Plaintiffs' Memorandum of Law, at 7–8.) Even if these individuals lacked a precise job title or shared the same titles, their duties were similar in nature and can broadly be categorized as general maintenance work, a term which plaintiffs use themselves in their affidavits and the complaint. Accordingly, the notice of pendency should be directed to these employees. This may include employees of FOUR, however, who do not necessarily have the job titles of "grocery clerks, produce clerks, and porters," as long as the individuals were engaged in similar duties as the named plaintiffs and were subject to the same alleged denial of overtime wages. In this respect, the Court finds that plaintiffs' description of the potential plaintiffs in their Memorandum of Law seems comprehensive, and the notice may use such language: "the current and former employees of the defendants, who have worked as shelf stockers, grocery baggers, food packers and wrappers, delivery truck unloaders and loaders, shopping cart retrievers, bathroom cleaners, and were part of the general maintenance staff." (Plaintiffs' Memorandum of Law, at 2.)

**\*10** Plaintiffs also propose that this notice of pendency be circulated in both English and Spanish. (Declaration of Troy L. Kessler ¶ 6.) To the extent such circulation is approved in this Memorandum and Order, the Court authorizes a translated version to be circulated in Spanish, particularly given that the plaintiffs have attested to their affidavits having been translated into Spanish. (Affidavit of Felix Cano ¶ 14; Affidavit of Noe Ramirez Vaxquez ¶ 14; Affidavit of Jorge Ramirez ¶ 14; Affidavit of Marvin Alexander Ortiz Tadeo ¶ 13; Affidavit of Fernando Gonzalez ¶ 13.)

Plaintiffs further propose that the notice of pendency be sent to current and former employees who have worked for defendants within six years of the commencement of this lawsuit. The FLSA has a maximum three year statute of limitations period. *See* 29 U.S.C. § 255. Plaintiffs request a six year period, however, because the state law claims brought in this action, over which the Court may exercise

supplemental jurisdiction, have a six year limitations period. *See* 28 U.S.C. § 1367. Even though district courts in this Circuit have granted both six and three year periods in similar cases, this Court finds it prudent and expedient in this case to allow a six-year period to apply, even if some recipients of the notice will have claims that are time-barred under the FLSA. Since there may be a number of employees who have both timely state and FLSA claims (such as named plaintiffs Cano and Ramirez and opt-in plaintiff Gonzalez), and the number of potential plaintiffs is purportedly not very high, it seems logical, efficient, and manageable to compel defendants' production of these names only once, if possible. While a few other courts have only allowed notice to be sent, under similar circumstances, to employees within a three year time period, *see* *Foster v. Food Emporium,* 2000 WL 1737858, at *3 (S.D.N.Y. Apr.26, 2000), *LeGrand v. Education Management Corp.,* 2004 WL 1962076, at *2 (S.D.N.Y. Sept.2, 2004), and *Sobczak v. AWL Industries, Inc.,* 540 F.Supp.2d 354, 364 (E.D.N.Y.2007), this Court finds the reasoning of other courts, who have allowed a six-year period, persuasive. *See* *Harrington v. Educ. Mgmt. Corp.,* 2002 WL 1343753, *2 (S.D.N.Y. June 19, 2002); *Realite,* 7 F.Supp.2d at 308 n. 4; *Wraga v. Marble Lite, Inc.,* 2006 WL 2443554, at *3 (E.D.N.Y. Aug.22, 2006).

Defendants' argument that only a three-year period should apply is based on the assertion that the Court would lack jurisdiction over those individuals who have timely claims under state law, but not under the FLSA. If, however, plaintiffs successfully move at a later date for class certification of the state law claims, it is clear that this Court would have proper jurisdiction over these individuals. *See, e.g.,* *Jankowski v. Castaldi,* 2006 WL 118973, at *9 (E.D.N.Y. Jan.13, 2006) (approving class certification of New York state law claims seeking recovery of allegedly unpaid overtime wages in an action already conditionally certified pursuant to the FLSA); *Brzychnalsi v. Unesco, Inc.,* 35 F.Supp.2d 351, 354 (S.D.N.Y.1999) ("Although different time periods are involved because of the different statutes of limitations applicable to the FLSA and NYMWA claims, there is substantial overlap ... There is no reason why the claims should be separately litigated in two different courts."); *Iglesias–Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 375 (S.D.N.Y.2007) ("[T]he federal and state law claims unquestionably derive from a common nucleus of operative fact and warrant the exercise of supplemental jurisdiction. The federal and state wage and hour claims are essentially the same and arise out of the same alleged conduct of the defendants."); *Gardner v. Western Beek Properties,*

*Inc.,* 2008 WL 2446681, at *2 (E.D.N.Y. June 16, 2008) ("Despite the alleged incompatibility of the FLSA collective action and a Rule 23 opt-out class, the Court notes that federal courts in New York have regularly allowed the two to coexist .") (collecting cases).

**\*11** Defendants seem to suggest that notice to the aforementioned individuals should then await this potential class certification. However, the absence of class certification at this stage does not require that the Court refrain from having the notice span six years. Even in the absence of class certification under Rule 23, it is possible that these individuals could fall within the Court's pendant party jurisdiction, pursuant to 28 U.S.C. § 1367(a).[2] *See* *Exxon Mobil Corp. v. Allapattah Svcs., Inc.,* 545 U.S. 546, 553, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). Indeed, "federal courts may, and often do exercise supplemental jurisdiction over state labor law claims, even when those employees' FSLA claims have been dismissed as time-barred," *Wraga,* 2006 WL 2443554, at *3 (collecting cases); *Chen v. Street Beat Sportswear, Inc.,* 364 F.Supp.2d 269, 276 (E.D.N.Y.2005) (exercising supplemental jurisdiction over two plaintiffs' state law claims, even though their FLSA claims were time-barred); *Ouedraogo v. Durso Associates, Inc.,* 2005 WL 1423308, at *2 (S.D.N.Y. June 16, 2005) ("Ultimately, Jallow's state law claims share too many common threads with the other plaintiffs' federal claims for them to be separated from one other. As such, the court concludes that the exercise of supplemental jurisdiction, including pendant party jurisdiction, over Jallow's state law claims is appropriate.") (footnote omitted). Therefore, the Court will allow the notice of pendency to be circulated to current and former employees, within the applicable category of duties described *supra,* who have worked for the defendants within six years prior to the commencement of this lawsuit.

Defendants also object to the form of the plaintiffs' proposed notice of pendency in that it fails to include defendants' counsel's information. (Defendants' Memorandum of Law, at 11.) The Court agrees that both counsel's contact information should be included in the notice. *See* *Gjurovich,* 282 F.Supp.2d at 108. In accordance with this Memorandum and Order, the parties shall submit a joint proposed notice of pendency to the Court for approval "in order to ensure that the drafting and distribution of the notice is timely, accurate and informative." *Rubery,* 569 F.Supp.2d at 336 (internal citation and quotation marks omitted); *see also* *Mendez v. Casa De Cambio Delgado, Inc.,* 2008 WL 938584, at *1 (S.D.N.Y. Apr.7, 2008) ("Courts have wide discretion here

to grant certification, allow discovery, and regulate notice."). This joint proposed notice, with its Spanish translation, shall be submitted within thirty (30) days of this Memorandum and Order.

### 3. Motion to Compel Production of Names and Last Known Addresses

Plaintiffs also seek relief "[c]ompelling defendants to furnish the names and last known physical addresses of those individuals in the collective action." (Plaintiffs' Memorandum of Law, at 1.) Courts often grant this kind of request in connection with a conditional certification of an FLSA collective action, and this Court concludes such a request is appropriate in this case. *See, e.g., Hens,* 2006 WL 2795620, at *5 (stating that the name, last known mailing address, last known telephone number, work location, and dates of employment are "essential to identifying and notifying potential 'opt-in' plaintiffs, and should be disclosed"); *Sherrill,* 487 F.Supp.2d at 350 ("I agree that such information is essential to identifying prospective opt-in plaintiffs."); *Chowdhury,* 2007 WL 2873929, at *2 ("When a court certifies a collective action, it may require an employer to disclose the names and addresses of potential

plaintiffs."); *Anglada,* 2007 WL 1552511, at *7 ("Courts within this Circuit routinely grant plaintiffs' motions to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action"); *Rubery,* 569 F.Supp.2d 334, 338 ("Counsel's request for contact information from those opting into the class is neither unusual nor inappropriate."). Defendants shall provide this information to plaintiffs within forty-five (45) days of this Memorandum and Order, provided that the notice submitted by the parties is approved by the Court.

## III. CONCLUSION

 **\*12**  For the reasons set forth above, plaintiffs' motion for conditional certification as an FLSA collective action, pursuant to Section 216(b) of the FLSA, and for court authorized notice and the production by defendants of certain employees' names and last known addresses, is granted, in accordance with the guidelines set in the foregoing decision.

SO ORDERED.

---

Footnotes

1    Plaintiffs filed this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure to pursue its claims under New York Labor Law, but no motion for Rule 23 class certification has yet been made by plaintiffs at the time of this opinion.

2    Of course, under the Court's supplemental jurisdiction, the Court has the discretion to decline to exercise supplemental jurisdiction, if it becomes clear that the state law claims substantially predominate over the FLSA claims. *See* 28 U.S.C. § 1367(c).

---

End of Document                              © 2013 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 2588851
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Sophia FRANCIS, Individually and on Behalf of
All Other Persons Similarly Situated, Plaintiffs,

v.

A & E STORES, INC., Defendant.

No. 06 Civ. 1638(CLB)(GAY).   |   June 26, 2008.

**Attorneys and Law Firms**

Brian L. Bromberg, Bromberg Law Office, P.C., NYC, Seth R. Lesser, Fran L. Rudich, Lock Law Firm, PLLC, NYC, Bradley Berger, Jeffrey M. Gottlieb, Berger & Gottlieb, NYC.

Adin C. Goldberg, Day Pitney LLP, NYC.

**Opinion**

### REPORT AND RECOMMENDATION

GEORGE A. YANTHIS, United States Magistrate Judge.

**\*1** TO THE HONORABLE CHARLES L. BRIEANT, United States District Judge:
Defendant A & E Stores, Inc. operates retail clothing stores under several brand names, including fifty-eight stores under the brand name "PayHalf." The majority of defendant's PayHalf stores are located in the Northeast, although several are located in Illinois. In September 2005, A & E hired plaintiff as an assistant store manager in a salaried position. She worked at PayHalf stores in Nanuet, New York and Greenburgh, New York, until she resigned on February 7, 2006.

On March 2, 2006, plaintiff commenced the instant action, on behalf of herself and others similarly situated, to recover unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiff specifically alleges that (1) based upon her job responsibilities she was not "exempt" from the FLSA's overtime wage requirement, (2) all PayHalf assistant store managers had similar job responsibilities and (3) about one-third of the approximately ninety PayHalf assistant store managers nationwide are salaried employees. Presently before this Court is plaintiff's

motion (1) to conditionally certify a collective action pursuant to FLSA § 216(b), (2) for court-authorized notice of the action to potential opt-in plaintiffs and (3) for an Order directing defendant to produce an electronic list of contact information for potential opt-in plaintiffs. For the reasons that follow, I respectfully recommend that plaintiff's motion should be granted in part and denied in part.

### I. CONDITIONAL CERTIFICATION

The FLSA provides a private right of action to recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions. *See* 29 U.S.C. § 216(b). Pursuant to the FLSA, employees such as the plaintiff may sue on behalf of themselves and "other employees similarly situated" for violations of the statute's minimum wage and overtime provisions. *See id.* Unlike class action suits brought pursuant to Fed.R.Civ.P. 23, only potential plaintiffs who "opt in" may be bound by or benefit from the judgment in an FLSA collective action. *See Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 197 (S.D.N.Y.2006). Also unlike a Rule 23 class action, "no showing of numerosity, typicality, commonality and representativeness need be made" for certification of an FLSA collective action. *See Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y.2005).

In determining whether a suit may proceed as a collective action under the FLSA, "[c]ourts typically undertake a two-stage review .... As a first step the court examines pleadings and affidavits, and if the court finds that proposed class members are similarly situated, the class is conditionally certified; potential class members are then notified and given an opportunity to opt-in to the action." *See Cuzco v. Orion Builders, Inc.,* 477 F. Supp .2d 628, 632 (S.D.N.Y.2007). Then, after completion of discovery, the court "examines the record and again makes a factual finding regarding the similarly situated requirement; if the claimants are similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims." *See Lee,* 236 F.R.D. at 197.

**\*2** At the initial assessment stage, before discovery is completed, the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations. *See Young,* 229 F.R.D. at 54. In order to succeed on her motion for conditional certification, "plaintiff has only a minimal burden to show that [s]he

is similarly situated to the potential class," which requires "a modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." See *Cuzco*, 477 F.Supp.2d at 632-33 (quotation and citation omitted).

Here, plaintiff's motion seeks an Order certifying a conditional nationwide collective action for PayHalf Assistant Managers who were salaried and did not receive overtime compensation.[1] Plaintiff alleges that she is similarly situated to members of the putative class because all PayHalf Assistant Managers perform essentially the same duties and responsibilities. In support of her contention, plaintiff proffers the following: (1) her declaration, in which she states that her duties were the same at both stores in which she worked; (2) A & E Stores' Job Description for Assistant Store Manager (Bromberg Declaration, Exh. D); (3) the deposition testimony of Leah Dweck, A & E's Director of Human Resources, who testified that she prepared the Assistant Manager Job Description and that it was a fair and accurate description of the duties and responsibilities of assistant store managers in the PayHalf stores (Bromberg Declaration, Exh. E); and (4) the deposition testimony of James Hamlin, A & E's Vice President of Store Operations (Bromberg Declaration, Exh. C), who testified as follows:

> Q. Okay. By the way, when we were talking about the duties of the store managers and the assistant store managers, are those pretty much the same across all the Payhalf Stores?
>
> A. More or less.
>
> Q. So it is all similar the way it works across-how many stores is it again?
>
> A. 58.
>
> Q. 58 stores?
>
> A. Similar, yes.

In sum, I conclude that the evidence submitted by plaintiff constitutes a sufficient preliminary showing that all putative class members held the same or similar positions, had the same or similar duties, and all were designated as exempt from the overtime provisions of the FLSA. Accordingly, I respectfully recommend that plaintiff's motion for conditional collective action certification as to those salaried PayHalf Assistant

Managers who did not receive overtime compensation should be granted.

## II. SCOPE OF THE CLASS

Defendant argues that, if certification is granted, the geographic scope of the class should be limited. Defendant specifically contends that plaintiff has provided no basis for nationwide certification and proposes, instead, that the scope of the class be limited to salaried assistant managers within the district in which plaintiff worked. However, plaintiff's evidence of the similarly-situated nature of the proposed class does not provide any basis on which to impose geographical restrictions. Any variations among the duties of assistant managers can be explored during discovery and addressed in a second-stage motion for de-certification. Accordingly, I conclude, and respectfully recommend, that defendant's contentions regarding the geographic scope of the class should be rejected.

**\*3** Defendant further argues that the temporal scope of the class should be limited to two years instead of three because plaintiff proffers no evidence of willful conduct. See 29 U.S.C. § 255(a). At this preliminary stage, however, plaintiff's allegations of willful conduct (Complaint ¶¶ 26-27) are sufficient to support defining the class based upon the three-year statute of limitations. "[W]here there has been no substantive discovery as to the appropriate temporal scope of the prospective class of member plaintiffs, and where the Plaintiff has alleged a willful violation of the FLSA, it is prudent to certify a broader class of plaintiffs that can be limited subsequently, if appropriate, during the second phase of the collective action certification process." See *Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901, 2007 WL 1552511, at \*8 (S.D.N.Y. May 29, 2007). See also *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y.2007) ("[W]here willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action."). Accordingly, I conclude, and respectfully recommend, that defendant's contentions regarding the temporal scope of the class should also be rejected and, therefore, that the certified class should consist of all PayHalf Assistant Managers, employed nationwide by defendant within the past three years, who were salaried and did not receive overtime compensation.

## III. IDENTITIES OF POTENTIAL PLAINTIFFS

In order to facilitate dissemination of notice to potential plaintiffs in the collective action, plaintiff requests that this Court direct defendant to produce "[a] list, in

electronic format, of all persons employed by Defendants as daytime and evening assistant managers, three years from the date of the order to the present including name, address, telephone number, social security number, dates of employment, location of employment, employee number, if any." Defendant objects to plaintiff's request for the production of social security numbers. "Courts within this Circuit routinely grant plaintiffs' motions to compel production of the *names and addresses* of potentially similarly situated employees who may wish to 'opt-in' to a collective action." *Anglada,* 2007 WL 1552511, at *7 (citing cases) (emphasis added). Indeed, at a pretrial conference on March 30, 2007, Your Honor ordered defendant to produce the names and addresses of all PayHalf assistant managers dating back to March 2003; defendant asserts that it has fully complied with that order. Plaintiff provides no justification regarding her request for additional information. Accordingly, I respectfully recommend that defendant should be directed to produce in electronic format, to the extent it has not already done so, the names and last known addresses of Assistant Managers employed by defendant at its PayHalf stores since March 2003.

## IV. PROPOSED NOTICE

**\*4** "It is well-established that district courts may authorize the sending of notice to potential opt-in plaintiffs in appropriate cases where a collective action has been brought under § 216(b) of the FLSA." *Cuzco,* 477 F.Supp.2d at 635. The district court has broad discretion to determine the form of the notice and its specific provisions. *See Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

The undersigned has reviewed plaintiff's proposed notice [2] and concludes that it is sufficient, but with the exception of some changes and additions. Attached as Exhibit A to this Report and Recommendation is a copy of plaintiff's proposed FLSA collective action notice, altered by the undersigned to incorporate recommended changes and additions for Your Honor's consideration.

## V. CONCLUSION

For all of the foregoing reasons, I respectfully recommend that plaintiff's motion should be granted in part and denied in part and that Your Honor (1) conditionally certify a class which consists of all PayHalf Assistant Managers, employed nationwide by defendant within the past three years, who were salaried and did not receive overtime compensation, (2)

direct defendant to produce in electronic format, to the extent it has not already done so, the names and last known addresses of Assistant Managers employed by defendant at its PayHalf stores since March 2003 and (3) issue court-authorized notice of the action to potential opt-in plaintiffs.

## VI. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended and Rule 72(b), the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. *See* Fed.R.Civ.P. 6(e). Such objections, if any, shall be filed serve written objections. *See* Fed.R.Civ.P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Charles L. Brieant at the United States District Court. Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of the any order of judgment that will be entered. *See Caidor v. Onondaga County,* 517 F.3d 601, 604 (2d Cir.2008).

Requests for extensions of time to file objections must be made to the Honorable Charles L. Brieant and not to the undersigned.

## EXHIBIT A

### *THIS NOTICE HAS BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK*

### *THIS IS NOT A SOLICITATION FROM A LAWYER*

**If you are or were an "Assistant Store Manager" at a "PayHalf" store, and you are currently employed in that position or were employed in that position within three years prior to the date of this notice, and you were salaried and did not receive overtime compensation,** *please read this notice.*

## 1. WHY DID I GET THIS NOTICE?

 **\*5**  The purpose of this legal notice is to inform you that a lawsuit has been filed against A & E Stores, Inc., owner of PayHalf Stores, for unpaid overtime wages, and that you may be eligible to join the lawsuit.

The Court has authorized this notice so that other individuals who may be "similarly situated" to the original plaintiff can become aware of their rights and join the lawsuit-or not-at their choice.

This notice advises you about how your rights may be affected by this lawsuit and how you may participate in this lawsuit, if you decide you wish to do so.

## 2. WHAT IS THE LAWSUIT ABOUT?

Plaintiff Sophia Francis, a former PayHalf Assistant Store Manager, filed the lawsuit against A & E Stores, Inc. on March 2, 2006. She alleges that A & E Stores, Inc. violated the Federal Fair Labor Standards Act by not paying certain eligible PayHaif Assistant Store Managers overtime compensation at the rate of time and one-half for all hours worked in excess of 40 hours in a work week. Defendant A & E Stores, Inc. disagrees, and claims it properly paid its PayHalf Assistant Store Managers all wages they were owed. The lawsuit is captioned *Francis v. A & E Stores, Inc.*, No. 06-Civ-1638 (CLB) (GAY).

## 3. WHO MAY JOIN THE LAWSUIT?

If you are currently employed as a PayHalf Assistant Store Manager, or were employed as a PayHalf Assistant Store Manager within three years prior to the date of this notice, and you are or were a salaried employee who and did not receive overtime compensation, then you are eligible to join this lawsuit. Joining this lawsuit does not mean that you are automatically entitled to any money, only that the lawyers who represent you will try and obtain money for you. The Court may determine further rights, including the right for the case to continue on a consolidated basis.

## 4. HOW DO I JOIN?

If you fit within the definition of the class members described above, you may join this lawsuit **in either of two ways:**

(1) You may join this lawsuit by reading, completing and returning the attached "Consent to Become Party Plaintiff" form to class counsel at the addresses listed below. The return envelope is pre-addressed and postage-paid for your convenience. Should the enclosed Consent form be lost or misplaced, forms are available at http://www.FrancisOvertimeClassAction.com or you may contact class counsel:

Seth R. Lesser & Fran Rudich

Locks Law Firm, PLLC

110 East 55th Street

New York, N.Y. 10022

Telephone: 212-838-3333

Email: frudich@lockslawny.com

Brian L. Bromberg

Bromberg Law Office, P.C.

40 Exchange Place, Suite 2010

New York, N.Y. 10005

Telephone: 212-248-7906

Email: brian@bromberglawoffice.com

Brad Berger & Jeffrey Gottlieb

Berger & Gottlieb

150 East 18th Street, Suite PHR

New York, N.Y. 10003

Telephone: 212-228-9795

Email: nyig@aol.com

The Consent form must be sent to class counsel in sufficient time to have plaintiffs' counsel file it with the Court on or before [insert date that is 60 days from the date of notice mailing]. If you fail to return the "Consent to Become Party Plaintiff" form to class counsel in time for it to be filed with the federal court on or before the above deadline, you may not be able to participate as a plaintiff in this lawsuit.

**-OR-**

**\*6**  (2) You may also join the lawsuit by retaining another lawyer of your own choosing. If you do so, your attorney must file an "opt-in" consent form with the Court on or before [insert date that is 60 days from date of notice mailing]. The address of the Court is:

U.S. District Court for the Southern District of New York

Attn: Clerk of the Court

300 Quarropas Street

White Plains, N.Y. 10601

The Clerk of the Court cannot give legal advice about this lawsuit.

## 5. WHAT HAPPENS IF I JOIN?

If you choose to join in this lawsuit, you will be bound by the Judgment in this lawsuit, whether it is favorable or unfavorable to you.

If you join the lawsuit by signing and returning the "Consent to Become Party Plaintiff" form, the lawyers for the class will represent you. These lawyers are representing the class on a contingency basis. They will not get paid unless they obtain money for you and the class. If there is a recovery, the class lawyers will receive a part of any settlement obtained or money judgment obtained in favor of all members of the class. The amount they will get paid will be determined by the Court.

## 6. AND IF I DO NOT JOIN?

If you do not wish to be part of the lawsuit, you do not need to do anything. If you do not join the lawsuit, you will not be part of the lawsuit in any way and will not be bound or affected by the result of the lawsuit (whether favorable or unfavorable).

If you decide not to join the lawsuit, you retain your right to bring a similar lawsuit on your own at a future time. However, claims under the Fair Labor Standards Act must be brought within *2 years* of the date the claim accrues, unless the employer's violation of the law was "willful," in which case the claim must be brought within *3 years*.

## 7. NO RETALIATION PERMITTED

Federal law prohibits the defendant from discharging you from your position of employment or in any other manner penalizing you or discriminating against you because you received this notice or join this lawsuit, or because you in any other way exercise your rights under the Fair Labor Standards Act.

## 8. FURTHER INFORMATION

Additional information can be obtained from the lawyers listed in Paragraph 4 or from the website also listed in Paragraph 4.

You may also examine the Court file in this case, in person, at the U.S. Courthouse, 300 Quarropas Street, White Plains, N.Y. 10601.

*Other than in-person requests to examine the file at the Clerk's Office, no inquiries concerning this case should be directed to the Court or to the Clerk of the Court.*

DATED: _____, 2008

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK. THE COURT TAKES NO POSITION IN THIS CASE REGARDING THE MERITS OF THE PLAINTIFFS' CLAIMS OR OF THE DEFENDANT'S DEFENSES OR COUNTERCLAIMS.**

**CONSENT TO BECOME PARTY PLAINTIFF**

I consent to be a party plaintiff in the above-captioned lawsuit in order to seek redress for violations of the Fair Labor Standards Act, 29 U.S.C. § 216(b), as set forth in the Complaint.

**\*7**  I hereby designate The Locks Law Firm, PLLC, Bromberg Law Office, P.C. and Berger & Gottlieb to represent me in the suit.

_____

Signature

_____                    Street Address

Print Name                             _____

_____                    City, State and Zip Code


Footnotes

1    Both parties agree that defendant had two different pay scales for its PayHalf Assistant Managers: approximately thirty percent of
     PayHalf's Assistant Managers were salaried and did not receive overtime compensation, while the remaining Assistant Managers
     were paid hourly and received overtime compensation.

2    Defendant did not submit a proposed form.

---

**End of Document**                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 605790
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Claudia GAYLE, individually and on
behalf of all others similarly situated
as a class representative, Plaintiff,
v.
HARRY'S NURSES REGISTRY, INC., and Harry
Dorvilier a/k/a Harry Dorvilien, Defendants.

No. CV–07–4672(CPS)
(MDG). | March 9, 2009.

**Attorneys and Law Firms**

Jonathan A. Bernstein, Levy Davis & Maher LLP, New York, NY, for Plaintiff.

Mark Lance Hankin, Hankin, Handwerker & Mazel, PLLC, Milo S. Silberstein, Dealy & Silberstein, LLP, New York, NY, for Defendants.

**Opinion**

**MEMORANDUM AND ORDER**

CHARLES P. SIFTON, District Judge.

 *1 Plaintiff Claudia Gayle, individually and on behalf of all others similarly situated, commenced this purported collective and class action on November 7, 2007, alleging that Harry's Nurses Registry, Inc. ("Harry's Nurses") and its principal, Harry Dorvilier ("Dorvilier"), (collectively "defendants") violated provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Minimum Wage Act, N.Y. Labor Law §§ 190 et seq. and 650 et seq. ("MWA") by failing to pay overtime wages.[1] Plaintiff seeks overtime premium pay, liquidated damages, reimbursement for amounts withheld from pay as workers' compensation, pre-judgment interest, a permanent injunction, certification of this action as a class action, costs, and attorneys' fees. Now before the Court is the defendants' motion for summary judgment, the plaintiff's cross-motion for partial summary judgment on the issue of liability, and the plaintiff's motion to distribute notice to potential class members. The motion also effectively asks the Court to decide whether plaintiff's action may be maintained as a collective action under the FLSA. For the reasons set forth below, the defendants' motion is denied and the plaintiff's motions are granted.

**BACKGROUND**

The following facts are taken from the complaint and the parties' submissions in connection with this motion. The facts are undisputed except as noted.

*Structure of Harry's Nurses*

Harry's Nurses is a corporation organized under the laws of the State of New York, and has its principal place of business in Queens, New York. Dorvilier is the president and chief executive officer. Plaintiff is a registered nurse and resides in Nassau County, New York.

Harry's Nurses refers temporary healthcare personnel, including Registered Nurses ("RNs") and Licensed Practical Nurses ("LPNs") (collectively, "field nurses") to patients in their private homes in and around New York City. Affidavit of Harry Dorvilier at ¶ 5 ("Dorvilier Aff."). This is Harry's Nurses' only business. Deposition of Harry Dorvilier at 9:16–10:22 ("Dorvilier Dep."). Harry's Nurses has from seven to ten full-time employees, who hold the offices of director of patient services, office manager, accountant, field nurse staffer, homecare nurse staffer, staff coordinator, billing/payroll clerk, and nursing supervisor. Dorvilier Aff. at ¶ 58.

Harry's Nurses maintains a referral list or "registry" of field nurses. *Id*. at ¶ 6. At any given time, Harry's Nurses may have as many as five hundred field nurses on its referral list. *Id*. at ¶ 7. In order to be listed on the referral list, a nurse must fill out an application, sit for an interview, consent to a background check, provide documentation that she or he is covered by his or her own liability insurance, possess a valid LPN or RN license, read Harry's Nurses orientation information, and complete a test of basic nursing knowledge. *Id*. at ¶ 8. Harry's Nurses provides the field nurses with an in-service document pertaining to various basic procedures including emergency and disaster planning, treating a patient with Alzheimer's Disease, the stages of dying, New York State laws regarding proxy decision making power, and hepatitis/HIV information and confidentiality. *Id*. at ¶ 10. Nurses must certify that they have read and understood this document, which has a blank line for "employee's signature." *Id* . at 32:22–25, 34:15–20. When field nurses care for patients, they are expected

to perform twelve categories of assessments, each category being described with particularity in the documents issued by defendants, and to note their findings in the patient's chart. *Id.* at 125:23–126:19.

 **\*2** Patients typically come into contact with Harry's Nurses via advertising on the radio and in newspapers, and advertising directed towards social workers and doctors. Dorvilier Dep. at 14:9–18:2. When a client contacts Harry's Nurses seeking a nurse placement, Harry's Nurses generates a pool of field nurses from the referral list whose qualifications it determines best coincide with the needs of the patient. Dorvilier Aff. at ¶ 11. The Nursing Supervisor calls the nurse from the pool to inform her of the placement opportunity, including the hours and number of days of the placement. *Id.* at ¶ 12. The details of the nursing services to be rendered are determined by the patient's needs and condition. *Id.* at ¶ 18. If a patient is unhappy with the nurse, the patient may contact Harry's Nurses and ask for a replacement. *Id.* at ¶ 30. Field nurses have no contractual or economic relationships with patients to whom they are referred through Harry's Nurses. P.Ex. B at 2.

Field nurses on the referral list are not discouraged from holding other jobs. Dorvilier Aff. at ¶ 19–20. Many nurses on the referral list wait days, weeks, or months between placements. *Id.* at ¶ 26. The nurses commonly work at one or several other jobs, including putting their names on other referral lists. *Id.* at ¶ 27. Defendants require that field nurses arrange their schedules to avoid conflicts with assignments from Harry's Nurses. Dorvilier Dep. at 110:13–111:12. In the case of a conflict, a nurse may not send another nurse in his or her stead. *Id.* at 40:18–41:13. A nurse is under no obligation to accept a work placement and may decline at her discretion, without suffering negatively with respect to future placement opportunities. *Id.* at ¶ 13–14. A nurse must work a full shift rather than a portion of a shift. Dorvilier Dep. at 74:3–75:12.

Within 90 days of the time that a nurse is placed in service by Harry's Nurses, a nursing supervisor goes to the patient's home. *Id.* at ¶ 2. Affidavit of Cherriline Williams–West at ¶ 1 ("Williams–West Aff."). The supervisor observes and assesses the nurse's skills, including hand washing. *Id.* She also checks the book of doctor's orders relating to the patient to ensure that the orders regarding medication and dosage are up-to-date. *Id.* The supervisor or one of her colleagues performs an assessment within 48 hours of the time that Harry's Nurses begins to care for a patient. *Id.* Harry's nursing coordinator phones the patient at least once per day to verify

that the assigned nurse has reported for duty. *Id.* at 68:19–70:11.

Nursing supervisors are responsible for reviewing assessments performed by nurses in the field. Williams–West Aff. at ¶ 3. Nursing supervisors conduct monthly reviews with the nurses in the field that last 4–5 hours, for which the nurses are not paid. *Id;* Dorvilier Aff. at 85:2–86:4. Nurses are taught how to perform a proper head-to-toe assessment of the patient, including such things as mental capacity, heart rate, condition of tracheotomy, and sound of the lungs. *Id.* The supervisor also talks to the nurses about infection control and legal issues in nursing. *Id.* On occasion, supervisors are accompanied on the inthe-field assessments by vendors of medical equipment or their technicians to assist the supervisor in instructing the nurses on the use of medical equipment. *Id.*

 **\*3** The nursing supervisor reports to the nursing director.[2] Dorvilier Dep. at 28:18–20. The nursing director creates a progress notes form, which must be completed by the nurse and submitted with her time sheet. If any note is "not in compliance," the nursing supervisor directs the nurse to rewrite the note or attend an in-service continuing education session. *Id* . at 26:25–30:12. After the time sheets and progress notes are turned in, Harry's Nurses pays the nurses a set hourly rate for hours worked. Dorvilier Aff. at ¶ 48.

Approximately 95% of Harry's Nurses' placements are for the care and treatment of Medicaid patients. *Id.* at ¶ 46. Harry's Nurses follows Medicaid's rules and regulations in all of its business activities. *Id.* at ¶ 46. Harry's Nurses submits the nurses' time sheets and progress notes to Medicaid on a bi-weekly basis, after which Medicaid pays Harry's Nurses a "reimbursement rate" for the hours worked by field nurses on Medicaid cases. *Id* . at ¶ 49. The reimbursement rate for LPNs is currently a fixed rate of $24.00 an hour, regardless of overtime hours worked. *Id.* at ¶ 52. Harry's Nurses pays LPNs the reimbursement rate less $5.00 per hour for Harry's Nurses' expenses and profit. *Id.* at ¶ 51.

All field nurses on the referral list are required to carry their own professional liability insurance and each individual nurse is responsible for maintaining his or her professional license. *Id.* at ¶ 55. Nurses must furnish and maintain their own basic supplies, including a blood pressure meter and stethoscope. *Id.* at ¶ 57. Nurses must also purchase their own uniforms and pay for their own travel expenses. *Id.* at ¶ 57.

Field nurses have no investment in defendants' business. Dorvilier Dep. at 43:13–15. A nurse cannot lose money providing services to patients and cannot profit beyond the hourly fee paid. *Id.* at 43:16–45:13. Harry's Nurses takes charge of billing and collections from the field nurses' patients' insurance carriers; Harry's Nurses pays its nurses promptly regardless of whether the carriers pay promptly. *Id.* 118:21–120:9. Field nurses are covered by Harry's Nurses' commercial liability insurance policy. *Id.* at 118:14–20.

Defendants may unilaterally end their association with a field nurse. Dorvilier Dep. at 109:22–110:12. If they do so, they owe the nurse for hours actually worked, but do not owe contract damages. *Id.* The "Confidentiality of Patient" form generated by defendants states that "[f]ailure to maintain patient confidentiality may lead to discharge." *Id.* at 108:14–25; P.Ex. P. Nurses applying for a position on the registry acknowledge their understanding that false information on the application may result in discharge. P.Ex. D. at 4. A discharged nurse may not seek employment directly from her patient. P.Ex. H. Other reasons for which a nurse may be discharged include failure to appear for work punctually and at the request of the patient. Dorvilier Dep. at 23:19–24:1, 108:14–25.

### *Plaintiff's Work Situation*

**\*4** On February 20, 2007, plaintiff entered into a "Memorandum of Agreement" with Harry's Nurses, whereby she agreed to retain Harry's Nurses' services to coordinate placement opportunities. Dorvilier Aff. ¶ 65. Plaintiff's relationship with Harry's Nurses lasted for nine months, until November, 2007. *Id.* at ¶ 70. Plaintiff agreed that she would be responsible for payment of income taxes for the work performed and that she would carry her own professional liability insurance. *Id.* Harry's Nurses did not deduct any federal or state income taxes on her behalf. *Id.* at ¶ 75. Defendants treated plaintiff as an independent contractor. Gayle Aff. at ¶ 3.

Plaintiff and her similarly situated co-workers regularly worked in excess of 40 hours in the work week, and were not paid overtime premium pay for this work. Complaint at ¶ 19 ("Compl."); Dorvilier Dep. at 75:13–19, 87:8–13. Defendants state that plaintiff never demanded overtime pay. Dorvilier Aff. at ¶ 76.

Defendants paid plaintiff directly for her services; plaintiff formed no corporation or other business entity. Affidavit of Claudia Gayle at ¶ 5 ("Gayle Aff."). She has no business

cards, has never advertised, and has never solicited a patient directly. *Id.* at ¶ 4. She is dependent on referrals from Harry's Nurses and other registries. *Id.*

## DISCUSSION

### I. Summary Judgment Standard

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law ." Fed.R.Civ.P. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills,* 320 F.3d 110, 117 (2d Cir.2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt" as to the material facts. *See Matsushita,* 475 U.S. at 586; *Harlem Assocs. v. Vill. of Mineola,* 273 F.3d 494, 498 (2d Cir.2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.,* 315 F.3d 171, 175 (2d Cir.2003). In deciding such a motion the trial court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party ." *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir.2000).

### II. Employment Status

**\*5** In their motion for summary judgment, defendants claim that plaintiff was an independent contractor, not subject to the FLSA.

## A. The FLSA Economic Reality Test

The overtime provision of the FLSA states that "no employer shall employ any of his employees ... for a workweek longer than 40 hours" unless the employee receives overtime pay. 29 U.S.C. § 207(a)(1). The FLSA's definition of an employee "is necessarily a broad one in accordance with the remedial purposes of the Act." *Brock v. Superior Care,* 840 F.2d 1054, 1058 (2d Cir.1988) (citing *United States v. Rosenwasser,* 323 U.S. 360, 363, 65 S.Ct. 295, 89 L.Ed. 301, L.Ed. 301, 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301 (1945)). "Employee" refers to "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" means "to suffer or permit to work." *Id.* § 203(g). The second circuit has treated employment for FLSA purposes "as a flexible concept to be determined by a case-by-case review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.,* 537 F.3d 132, 141–42 (2d Cir.2008). "Several factors are relevant in determining whether individuals are 'employees' or independent contractors for purposes of the FLSA." *Superior Care,* 840 F.2d at 1058. These factors are known as the "economic reality test," and include the following: "(1) the degree of control exercised by the employer over the workers; (2) the workers' opportunity for profit or loss and their investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business." [3] *Id.* at 1058–59 (citing *United States v. Silk,* 331 U.S. 704, 716, 67 S.Ct. 1463, 91 L.Ed. 157 (1947). "No one of these factors is dispositive; rather, the test is based on a totality of the circumstances." *Id.* at 1059. "Any mechanical application of the test is to be avoided." *Id.* The ultimate concern is whether the worker is in business for herself. *See id.* Where work done in its essence follows usual path of employee, affixing an 'independent contractor' label does not remove the worker from the protection of Fair Labor Standards Act. *Rutherford Food Corp. v. McComb* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).

In *Superior Care,* the Second Circuit found that a registered nurse was an employee within the meaning of the FLSA. The defendant in *Superior Care* was engaged in the business of referring temporary healthcare personnel, including nurses, to individual patients. 840 F.2d at 1057. Nurses wishing

to work for Superior Care were interviewed and placed on a roster. *Id.* At 1057. As work opportunities became available, the company would assign nurses from the referral list. *Id.* Nurses were not required to accept any proposed referral. *Id.* Once an assignment was accepted, the treatment was prescribed by the patient's doctor. *Id.* The company supervised its nurses through visits to job sites once or twice a month. *Id.* Nurses were required to submit patient care notes to comply with state and federal law. *Id.* The length of an assignment depended on the needs of the patient. *Id.* The nurses were prohibited from entering into private arrangements with patients. *Id.* The nurses were paid an hourly wage. *Id.* Nurses were permitted to hold other jobs, and many were listed on other nurse registries. *Id.* Many of the nurses worked for Superior Care for less than a year, and employment placements were sporadic. *Id.* The one difference of note between this case and *Superior Care* was that some of the nurses in *Superior Care* were classified as employees, for whom the employer paid taxes. *Id.* At 1059. However, the Court did not rely on this factor to determine that Superior Care owed back wages to the nurses it had classified as independent contractors. *Id.* The Court applied the economic reality factors and determined that they fully supported the District Court's conclusion that the nurses were employees. *Id.* The facts of the case before me differ in no material respect from those of *Superior Care.* I apply the economic reality factors below in order to determine whether plaintiff must be deemed an employee entitled to overtime.

### 1. Degree of Control Exercised by Defendants

**\*6** In *Carter v. Dutchess Comm. Coll.,* 735 F.2d 8, 12 (2d Cir.1984), the Second Circuit stated that the following factors should be used to determine whether an entity has exercised formal control over its workers: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." [4] (cited in *Barfield,* 537 F.3d at 142–43). Applying these factors to the plaintiff, I find that defendants exercised control over plaintiff. Defendants had the power to end their association with plaintiff unilaterally for failure to maintain patient confidentiality or for providing false information on the application, as well as other reasons. If she is fired, plaintiff would be unable to contact clients directly to continue working for them. Plaintiff was required to create progress notes, which were scrutinized every two weeks. Plaintiff's work was supervised by a nursing supervisor who

spent 4–5 hours per month with her in the field. Plaintiff had no economic relationship with their patients, nor could she negotiate her rate of pay with them. Defendants set the rate of pay for plaintiff based on the Medicaid reimbursement rate less Harry's Nurses' expenses and profit. Plaintiff was not permitted to assign her shift to others. Plaintiff was free to accept or reject shifts, but she did accept a placement, she was required to perform for the entire duration of the placement rather than a portion.

In *Superior Care*, the Court stated that Superior care exercised control over its nurses, because it unilaterally dictated the nurses' hourly wage, supervised the nurses by monitoring their patient care notes and visiting the job sites, and limited work hours to 40 hours per week where nurses claimed they were owed overtime. 840 F.2d at 1060. Although the supervisor made job site visits only once or twice a month, the nurses were made aware that they were subject to such checks as well as to regular review of their nursing notes. *Id*. The Court noted that "[a]n employer does not need to look over his workers' shoulders every day in order to exercise control." *Id*. Control may be restricted or exercised only occasionally without removing the employment relationship from the protections of the FLSA. *See Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir.1999).

Defendants make a number of arguments against a conclusion that they exercised control over plaintiff, none of which are persuasive. Defendants state that plaintiff signed a document during her initial interview indicating that she was retaining Harry's Nurses to coordinate placement opportunities for her as an independent contractor. The fact that plaintiff signed a form describing her as an independent contractor does not make her an independent contractor; the economic realities test assesses the realities of the work situation rather than job titles.

 **\*7** Defendants maintain that the patients and their families and doctors were the ones who dictated the instructions for care. This claim is belied by the affidavit of Ms. Williams–West, a nursing supervisor for Harry's Nurses who attests that she did supervise the field nurses' work.[5] Defendants further claim that the patients alone possess the power to fire the nurses.[6] This claim is contradicted by the fact that Harry's Nurses explicitly reserves the power to unilaterally fire nurses for a number of reasons, *e.g.*, failing to comply with confidentiality requirements.

Defendants claim that progress notes are necessary in order to be in compliance with Medicaid standards, and they are not collected for the purpose of monitoring nurses. *Id*. at ¶ 45. Defendants state that because they have no intention of monitoring nurses for their own purposes, this exercise of control should not be significant for the purpose of determining employee status under the FLSA. Assuming this claim were true, the fact that defendants do not profess an interest in monitoring the nurses' work but require them to prepare paperwork in order to comply with government regulations does not change the result, which is is that defendants do supervise field nurses' work, thereby enabling them to control that work. *See Barfield*, 537 F.3d at 147.

Defendants acknowledge that they maintained "functional control over the nurses," but argue that the "ultimate arbiter of formal control" was the patient, and therefore this factor cannot weigh against defendants. D. Reply at 5. Defendants misconstrue the law. An employee may be jointly employed where, *inter alia*, two or more employers arrange to share the employee's services or where one employer acts directly or indirectly in the interest of another in relation to the employee. 29 C.F.R. § 791.2(b). The fact that the patients may have exercised a good deal of control over nurses does not lead to the conclusion that defendants did not exercise such control. Defendants cite *Barfield*, 537 F.3d at 146, for the proposition that because the patients have ultimate control over various aspects of the work, they are the employers. However, *Barfield* stands for the proposition that one joint employer may not disclaim liability by arguing that another joint employer exercises a greater degree of control. *Id*. at 141, 146.

## 2. *Plaintiff's Opportunity for Profit or Loss and her Investment in the Business*

In his deposition, defendant Dorvilier noted that field nurses have no investment in the defendants' business, that nurses cannot lose money providing services, and that nurses cannot profit beyond the hourly fee paid. Dorvilier Dep. at 43:13–15; 43:16–45:13. Defendants now argue that plaintiff made a significant investment by purchasing and maintaining equipment (such as her stethoscope and nursing scrubs) and securing a means of transportation. Defendants argue that plaintiff was able to maximize profit by choosing how much equipment to purchase and what form of transportation to use, taking into account how many hours she worked. That plaintiff would 'profit' more if she had worked more hours does not mean that she had an opportunity for profit. Her

pay was not contingent on the success of the company or the excellence of her work. She was paid an hourly wage. The argument that her stethoscope and nursing scrubs were an investment would render every worker who purchases basic clothing and tools for a job an independent contractor. Such investments are "negligible." *Superior Care,* 840 F.2d at 1059.

### 3. Degree of Skill

**\*8** Plaintiff concedes that nurses are skilled workers. However, "the fact that workers are skilled is not itself indicative of independent contractor status. A variety of skilled workers who do not exercise significant initiative in locating work opportunities have been held to be employees under the FLSA." *Superior Care,* 840 F.2d at 1060. In this case, nothing in the record indicates that plaintiff exercised initiative in finding job assignments. "As a matter of economic reality, the [plaintiff's] training does not weigh significantly in favor of independent contractor status." *Id.*

### 4. Permanence or Duration of the Working Relationship

Plaintiff worked for defendants for nine months. Defendants state that plaintiff's relationship with Harry's Nurses was irregular and unstructured, as there were no regular shifts or typical number of hours work, and that the schedule for placement was determined by the needs of the patient. In *Superior Care,* the Court held that the transient nature of the nursing work force, including seeking placement through referral services, was "not dispositive of independent contractor status." 840 F.2d at 1060. Employees may work for more than one employer without losing their benefits under the FLSA. *Id.* Further, "workers have been deemed employees where lack of permanence is due to operational characteristics intrinsic to the industry rather than to the workers' own business initiative." *Id.* at 1060–61. Following the Second Circuit's holding, the irregular nature of plaintiff's work for defendants is no bar to a finding that she was an employee within the meaning of the FLSA. [7]

### 5. Whether Plaintiff's Work is an Integral Part of Defendants' Business

Defendants' only business is to place nurses in homes to provide patient care. Plaintiff performed this function. "The services rendered by [plaintiff] constituted the most integral part of [defendant's] business, which is to provide health care personnel on request." *Superior Care,* 840 F.2d at 1059. Nevertheless, defendants claim that the "actual services

rendered by plaintiff during placement for any particular client were not an integral part of Harry's Nurses." Def. Mem. at 26. Defendants argue that, had plaintiff declined to accept any of her placement offers from defendants, defendants would have offered those opportunities to other qualified nurses. The question is not whether plaintiff's individual services were essential to the business, but whether the type of work performed by plaintiff was integral to the defendants' business, which it clearly was. *See id.*

### B. Application of the Economic Realities Factors

Under the economic realities test, plaintiff is an employee within the meaning of the FLSA. Defendants admit that they exercise "functional control" over the nurses, [8] and other indicia of control are present. Even taking defendants' claim as true that they required nurses to submit progress notes and to be supervised by the supervising nurse once a month only to comply with government regulations and to ensure that the patients needs were being met, the fact remains that defendants exercised control over plaintiff's nursing activity by reviewing the notes and training her once a month to ensure that she was complying with proper nursing procedures. Plaintiff invested minimal funds in the business, and had no opportunity for profit or loss. Plaintiff is a skilled employee, but exercised no independent initiative in locating work opportunities. Defendants do not dispute this. Accepting as true defendants' claim that plaintiff and her colleagues were a transient working population, this factor does not weigh against her in the context of a field of work where all employees are transient. *See Superior Care,* 840 F.2d at 1060. The Second Circuit has determined that work performed by home healthcare workers for nursing referral agencies is an integral part of the employer's business. *Id.* at 1059.

**\*9** Accepting all of defendants' statements as true for the purposes of this motion, no reasonable fact finder could find that plaintiff was not an employee under the FLSA. Each of the elements of plaintiff's work situation cited by defendants in support of their claim has been specifically addressed in prior case law, which has concluded that persons such as plaintiff are employees.

Under the FLSA, "no employer shall employ any of his employees ... for a workweek longer than 40 hours" unless the employee receives overtime pay. 29 U.S.C. § 207(a)(1). Defendants have admitted that plaintiff was not paid overtime wages when she worked more than forty hours in one week, in

violation of the FLSA. Plaintiff's motion for partial summary judgment on the question of liability is accordingly granted.

## III. Joint and Several Liability

Plaintiff also seeks partial summary judgment on the question of liability against both Harry's Nurses and Mr. Dorvilier. Courts have found that the FLSA definition of "employer" includes individual principals of corporate employers. *RSR Security Servs.,* 172 F.3d at 139–40 (chairman who was 50% owner of corporate defendant, who had the power to hire and fire, was individually liable for overtime violations). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liability under the FLSA for unpaid wages." *Keun–Jae Moon v. Joon Gab Kwon,* 248 F.Supp.2d 201, 237 (S.D.N.Y.2002) (citing *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983) (citing cases). *See also Samborski v. Linear Abatement Corp.,* 1999 U.S. Dist. LEXIS 14571, 1999 WL 739543 (S.D.N.Y.1999) (president and sole owner of company had operational control and was individually liable); *Chao v. Vidtape, Inc.,* 196 F.Supp.2d 281 (E.D.N.Y.2002) (president had power to hire, fire, supervise, and determine pay rate and was individually liable); *Lopez v. Silverman,* 14 F.Supp.2d 405, 412–13 (S.D.N.Y.1998) (president had "dominant" role over daily operations and was individually liable).

Defendant Dorvilier has stated that he is the CEO of Harry's Nurses, and that he "oversee[s] the whole operation, make[s] sure that the service has been provided." Dorvilier Dep. at 9:10–15. Dorvilier operates the business himself. *Id.* at 12:7–10. Accordingly, because Harry's Nurses is liable for violations of the FLSA, and defendant Dorvilier was a corporate officer with operational control of the corporation, Dorvilier is jointly and severally liable to plaintiff.

## IV. Plaintiff's Motion for Notice of Collective Action

I turn to plaintiff's request for court-authorized notice informing potential plaintiffs of their opportunity to "opt-in" to the present lawsuit. This motion derives from 216(b) of the FLSA, which provides a right of action to recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions. 29 U.S.C. 216(b). Section 216(b) provides, in relevant part:

> **\*10** An action to recover [for unpaid overtime wages] may be maintained

against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Thus, under the FLSA potential plaintiffs must 'opt in' to a collective action to be bound by the judgment. Moreover, only if plaintiffs 'opt in' will the statute of limitations on potential plaintiffs' claims be tolled. *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 260 (S.D.N.Y.1997).

"It is well settled that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to 216(b) of the FLSA." *Id.* at 261; *see also Braunstein v. E. Photographic Lab., Inc.,* 600 F.2d 335, 336 (2d Cir.1979). "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Court authorized notice "comports with the broad remedial purpose of the [FLSA]." *See Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335, 336 (2d Cir.1978).

In order to receive authorization for class notice in an FLSA action, plaintiff must demonstrate that potential class members are "similarly situated" to plaintiff. *See* 29 U.S.C. § 216(b). The threshold for demonstrating that potential plaintiffs are similarly situated is "very low at the notice stage." *Lynch v. United Servs. Auto. Ass'n,* 491 F.Supp.2d 357, 368. (S.D.N.Y.2007). Plaintiff can meet this burden "by making a modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." [9] *Hoffman,* 982 F.Supp. at 261 (collecting cases). This first review is "merely a preliminary finding," and does not require a determination that the persons being notified are, in fact, similarly situated to the plaintiff. *Lynch,* 491 F.Supp.2d at 368. After discovery, the Court reviews the collective action certification more rigorously, at which point it may decertify the collective

action if it determines that the plaintiffs are not similarly situated. *Dumitrescu v. Mr. Chow Enters.*, 2008 U.S. Dist. LEXIS 49881, at *11, 2008 WL 2600667 (S.D.N.Y.2008).

Plaintiff has made the modest factual showing needed to support a preliminary determination that there are others similarly situated who should be notified of their opportunity to join this suit as plaintiffs. First, plaintiff states that she worked in excess of forty hours a week without receiving one and one-half times her normal compensation in accordance with the FLSA's overtime rules. Gayle Aff. at ¶ 3. Second, plaintiff alleges that all field nurses are paid in the same manner as plaintiff. Gayle Aff. at ¶ 7. Third, Defendants admit that they treat all of their nurses as independent contractors, including plaintiff. Dorvilier Dep. at ¶ 33:12–16. [10] Plaintiff and Ms. Patricia Robinson ("Robinson"), who also worked as a nurse for defendants, have submitted affidavits stating their belief that other field nurses are unaware that defendants' classification of them as independent contractors is unlawful. Gayle Aff. at ¶ 8; Robinson Aff. at ¶ 8. If plaintiff has a viable FLSA claim against defendants as the result of their classification of her position, it is likely that there are other similarly situated employees who have similarly viable claims. *See Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y.2007) (plaintiffs met their burden where they relied on their own pleading and declarations to show they were subject to certain practices at defendant's workplace and, to the best of their knowledge, their experience was shared by members of the proposed class).

 **\*11**  I accordingly grant plaintiff's application to circulate a notice of pendency to other persons similarly situated to herself pursuant to 29 U.S.C. § 216(b). I find it is appropriate to do so at this stage, rather than awaiting the completion of discovery, because this will facilitate "the Act's broad remedial purpose and promot[e] efficient case management," *Hoffman*, 982 F.Supp. at 262, and will preserve the rights of potential plaintiffs whose rights might become time-barred during the discovery phase of this case. This is a preliminary determination that may be revised upon the completion of discovery.

Plaintiff requests that the class be defined as "all persons who have been employed by Harry's Nurse Registry and/or Harry Dorvilier as field or per diem nurses at any time

since November 7, 2004." This definition is accepted for the purpose of authorizing notice.

Plaintiff seeks an order compelling production of a list of names, last known addresses, dates of employment, telephone numbers, and social security numbers of all nurses registered with defendants' registry since November 7, 2004 to facilitate discovery of similarly situated persons. Courts often direct an employer defendant to disclose the names and addresses of similarly situated potential plaintiffs. *See Patton v. Thomson Corp.*, 364 F.Supp.2d 263, 266 (E.D.N.Y.2005); *Cano v. Four M Food Corp.*, 2009 U.S. Dist. LEXIS 7780, at *35 (E.D.N.Y. February 3, 2009); *Chowdhury v. Duane Reade, Inc.*, 2007 U.S. Dist. LEXIS 73853, at *6, 2007 WL 2873929 (S.D.N.Y. October 2, 2007); *see also Hoffman–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (authorizing disclosure for the purposes of notice in an ADEA action).

Most of the information requested by plaintiff is essential to identifying and notifying potential "opt-in" plaintiffs, and should be disclosed. However, plaintiff has not made a showing that disclosure of confidential social security numbers is necessary in order to facilitate the delivery of notices. *See Chowdhury*, 2007 U.S. Dist. LEXIS 73853, at *21, 2007 WL 2873929. The request for disclosure of social security numbers is denied without prejudice to its renewal after disclosure of the other information from defendants on a more ample showing of how the information is necessary to identify class members.

### CONCLUSION

For the reasons stated above, plaintiff's motion for partial summary judgment on the issue of liability is granted, and defendants' motion for summary judgment is denied. In addition, plaintiff's motion seeking leave to circulate a notice of pendency pursuant to 29 U.S.C. § 216(b) is granted. Defendants are directed to disclose the names, last known addresses, dates of employment, and telephone numbers for all persons employed as field or per diem nurses from November 7, 2004 to the present on or before April 9, 2009. Plaintiff is directed to settle a proposed Notice of Pendency and consent form on or before the same date.

 **\*12**  SO ORDERED.

Footnotes

1    In her complaint, plaintiff also made a claim under N.Y. Labor Law § 193, alleging that defendants had deducted the cost of workers'
     compensation insurance coverage. Plaintiff has withdrawn this claim.

2    The current nursing director is Dorvilier's sister. Dorvilier Dep. at 28:6–13.

3    Defendants acknowledge the applicability of the economic realities test, but contend that in addition to this test, the Internal Revenue
     Service has utilized a more expansive set of twenty-four factors to aid in its determination as to whether a person should be considered
     an independent contractor or an employee. Defendants' Memorandum of Law in Support of Summary Judgment at 13 ("Def.Mem.").
     Defendants claim that these factors are helpful in "narrowing the scope" of the six factors named above. *Id.* Plaintiff responds that
     the IRS test is not applicable, citing the Supreme Court's decision in *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326, 112
     S.Ct. 1344, 117 L.Ed.2d 581 (1992) (the FLSA definition of 'employee' "stretches the meaning of 'employee' to cover some parties
     who might not qualify as such under a strict application of traditional agency law principles.") Accord *Frankel v. Bally Inc.,* 987 F.2d
     86, 89 (2d Cir.1993). Plaintiff cites numerous cases that apply the six factor economic realities test, rather than the IRS test. *See Ling*
     *Nan Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 67 (2d Cir.2003); *Schwind v. EW Assocs.,* 357 F.Supp.2d 691, 700 (S.D.N.Y.2005)
     ("[t]he Supreme Court has specifically declined to apply the well-established agency law concepts of 'employee' and 'independent
     contractor' when interpreting congressional labor statutes"). In light of these precedents, I apply the six-factor test.

4    The Second Circuit has also stated that an entity that lacks formal control over workers may nevertheless be considered their employer
     based on its exercise of functional control. *Zheng v. Liberty Apparel Company,* 355 F.3d 61 (2d Cir.2003). *Zheng* lists the following
     six factors: "(1) whether [defendant's] premises and equipment were used for the [plaintiff's] work; (2) whether the [plaintiff] had a
     business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which [plaintiff] performed a
     discrete [job] that was integral to [defendant's business]; (4) whether responsibility under the contracts could pass from one [nurse]
     to another without material changes; (5) the degree to which the [defendants] or their agents supervised [plaintiff's] work; and (6)
     whether [plaintiff] worked exclusively or predominantly for [defendants]." *Id.* at 72. Because I conclude that defendants exercised
     formal control over plaintiff, it is not necessary to analyze her work situation under the functional control test.

5    Defendants previously maintained that no one from Harry's Nurses ever observed or evaluated plaintiff's performance in carrying out
     her nursing duties. Def. Mem. at 25. Plaintiff then offered the affidavit of Ms. Williams–West, a former nurse supervisor with Harry's
     Nurses, which stated that, once a month, Ms. Williams–West would visit nurses in the field and review certain procedures with them in
     order to ensure that they were being properly performed. Defendants thereafter explicitly admitted that Harry's Nurses supervises the
     nurses once a month. Defendants' Reply to Plaintiff's Cross–Motion for Summary Judgment at 3 ("D.Reply"). However, defendants
     continue to maintain that Harry's Nurses has "no stake in patient 'progress' beyond maintaining its contractual relationship with the
     client's insurance carrier." *Id.*

6    Defendants state that "Harry's does not discharge nurses; like any other subcontractor, the nurse will simply not be invited to work
     on future assignments." D. Reply at 4. This claim begs the question. If the nurses are employees, defendants' decision not to 'invite
     them back' constitutes a firing.

7    Defendant cites an unreported case from a District Court in Tennessee, which found that nurses who often worked less than 40 hours
     a week for a referral service, simultaneously performed other nursing work, and worked only those shifts to which they agreed in
     advance were a transient work force. *See Wilson v. Guardian Angel Nursing, Inc.,* 2008 U.S. Dist. LEXIS 59623 (M.D.Tenn.2008).
     This holding is contrary to the law in the Second Circuit.

8    *See* Def. Mem. at 5.

9    Unlike Rule 23, section 216(b) of the FLSA requires no showing of numerosity, typicality, commonality, or representativeness. As a
     result, "the 'similarly situated' standard for certifying a 216(b) collective action is considerably more liberal than class certification
     under Rule 23." *Lynch,* 491 F.Supp.2d at 369.

10   At any given moment, Harry's Nurses Registry may have up to five hundred nurses on its referral list.

---

**End of Document**                                      © 2013 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 3347091
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Miroslaw GORTAT, et al., Plaintiffs,

v.

CAPALA BROTHERS, INC., et al., Defendants.

No. 07-CV-3629(ILG)(SMG).   |   Oct. 16, 2009.

**REPORT AND RECOMMENDATION ON MOTION FOR CLASS CERTIFICATION**

**Attorneys and Law Firms**

Robert Wisniewski, Robert Wisniewski & Associates P.C., New York, NY, for Plaintiffs.

Felipe E. Orner, Felipe E. Orner, Esq., Flushing, NY, for Defendants.

**Opinion**

*Introduction*

*MEMORANDUM AND ORDER ON MOTION FOR APPROVAL AS A COLLECTIVE ACTION*

GOLD, S., United States Magistrate Judge.

**\*1** Plaintiffs, on behalf of themselves and others similarly situated, bring this action under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.,* the Portal-to-Portal Act, 29 U.S.C. § 254, and New York state labor law ("NYLL"), seeking to recover unpaid wages, unpaid overtime compensation, and statutory damages resulting from defendants' alleged labor law violations. Plaintiffs filed concurrent motions on June 11, 2009 seeking orders: (1) certifying their New York state law wage and overtime claims as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) and appointing Miroslaw Gortat, Henryk Bienkowski, Miroslaw Filipkowski, Artur Lapinski, Jan Swaltek, Edmund Kisielewicz, Henryk Stoklosa and Artur Kosiorek as class representatives and Robert Wisniewski as

class counsel; (2) authorizing their FLSA claims to proceed as collective action pursuant to 29 U.S.C. § 216(b);[1] (3) approving notice of the collective action and class action, and authorizing such notice to be mailed to all putative class members as well as published in Nowy Dziennik, a New York-based Polish language newspaper for five consecutive weekends; and (4) compelling defendants to produce a complete list of their employees during the six years preceding the filing of the complaint.

By order dated July 9, 2009, the Honorable I. Leo Glasser referred plaintiffs' motion for class certification to me for a report and recommendation. Docket Entry 166. A motion to proceed as a collective action may be decided by a Magistrate Judge. *See Mazur v. Olek Lejbzon & Co.,* 2005 WL 3240472, at *2 n. 1 (S.D.N.Y. Nov.30, 2005). *See also Patton v. Thomson Corp.,* 364 F.Supp.2d 263, 265-66 (E.D.N.Y.2005). Accordingly, and for the reasons set forth below, I respectfully recommend that Judge Glasser approve plaintiffs' motion for class certification, and I grant plaintiffs' motion to proceed as a collective action.

*Discussion*

Senior United States District Judge Glasser has already issued a detailed decision in this case addressing a variety of motions. *See Gortat v. Capala Bros., Inc.,* 257 F.R.D. 353 (E.D.N.Y.2009).* Familiarity with that decision, and thus with the facts of the case and its procedural history, is presumed.

**1.** *Class certification*

Plaintiffs move for class certification of their state law unpaid wage and unpaid overtime compensation claims pursuant to Rule 23(b)(3). Plaintiffs propose to certify a class defined as follows:

> All employees of the Defendants during the six years immediately preceding the initiation of this action [filed on Aug. 29, 2007] up to the date of this decision, who performed work as roofers, bricklayers, masons, building laborers, drivers, foremen and other manual workers with the same or similar duties who are entitled to compensation from the Defendants for unpaid minimum wages, and/

or overtime premium wages, and/or spread-of-hours wages, and/or other wages, and who are asserting claims under the New York State Labor Law, including without limitation, Sec. 190 *et seq.* and Sec. 650 *et seq.* as well as the wage orders promulgated thereunder.

**\*2** Pl. R. 23 Mem. at 1. [2]

Plaintiffs bear the burden of establishing the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) fair and adequate representation of the class. A plaintiff must also qualify under one of the subdivisions of Rule 23(b). *See Marisol A. v. Giuliani,* 126 F.3d 372, 375-76 (2d Cir.1997). When considering a class certification motion, the allegations in the complaint are accepted as true. *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 85 (S.D.N.Y.2001) (internal quotation marks omitted). Although a court may consider material outside the pleadings to determine whether to certify the class, it "must not consider or resolve the merits of the claims of the purported class." *Id.* (internal quotation marks omitted). "The Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction,' ... and 'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.' " *Gortat,* 257 F.R.D. at 361-62 (internal citations omitted).

Several of the issues raised by plaintiffs' motion for class certification have already been decided. Earlier in this litigation, defendants moved to dismiss plaintiffs' class action claims on the grounds that plaintiffs had failed to establish the numerosity and adequate representation requirements of Rule 23(a). [3] On May 5, 2009, Judge Glasser denied defendants' motion. *Id.* at 365. The rulings Judge Glasser made in the course of denying defendants' motion to dismiss plaintiffs' class action claims are the law of the case.

"[L]aw of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (citation omitted); *see also Pescatore v. Pan Am. World Airways, Inc.,* 97 F.3d 1, 7-8 (2d Cir.1996) (noting that the "doctrine is admittedly discretionary"). A

prior decision should not be re-examined "absent cogent or compelling reasons," *Pescatore,* 97 F.3d at 8 (internal quotation marks and citation omitted), such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) (internal quotation marks and citation omitted).

Defendants contend that the doctrine is not appropriately applied here because Judge Glasser's decision was based upon a different legal standard than the one applicable to plaintiffs' motion. More specifically, defendants assert that Judge Glasser's decision placed the burden on them as movants, *see* Def. R. 23 Opp. Mem. at 42-43, [4] whereas, as noted above, plaintiffs bear the burden on the instant motion. Defendants' contention that Judge Glasser's decision placed the burden on them is incorrect. To the contrary, Judge Glasser made it clear that, although defendants were the movants, the burden remained with plaintiffs. *See Gortat,* 257 F.R.D. at 361 ("Even where defendant moves for denial of class certification before plaintiff has sought certification, *the burden of establishing the propriety of a class action remains with the plaintiff* ....") (internal quotation marks omitted) (emphasis added). Accordingly, plaintiffs' burden with respect to the pending motion is not a basis for overcoming the effect of Judge Glasser's prior rulings.

**\*3** With the weight of Judge Glasser's prior decision resolved, I now turn my attention to the requirements for class certification imposed by Rule 23.

### a. Numerosity

Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Courts in the Second Circuit presume numerosity when the putative class has at least forty members. *Gortat,* 257 F.R.D. at 362 (citing *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995)). In the proceedings before Judge Glasser, plaintiffs demonstrated that the class would be comprised of seventy-four foremen and laborers based on an employee list produced by defendants. Judge Glasser thus held that plaintiffs had established numerosity. *Id.* at 362-63. Furthermore, Judge Glasser found that joinder would be impracticable because some of the putative members are presently employed by defendants and are thus unlikely to bring claims on their own, and that "many if not most of the purported class members are persons with

inadequate resources to exercise their rights by prosecuting their own claims." *Id.* at 363.

Defendants contend they have produced new evidence that requires re-examination of Judge Glasser's ruling. In support of their motion to deny certification, defendants submitted affidavits from seventeen current and/or former Capala Brothers employees purportedly disclaiming interest in joining the litigation. *Id.* at 362. Judge Glasser did not discuss the merits of the affidavits but rather held that, "[e]ven if the Court were to subtract ... those who have purportedly disclaimed any interest in taking part in this litigation, the purported class would remain presumptively numerous." *Id.*

Defendants have now submitted twenty-four additional affidavits, and argue that forty-one of the seventy-four employees have now indicated that they will not join the lawsuit. Orner R. 23 Aff., Exs. H & Z.[5] The affidavits are substantially identical, and state the following:

> I was an employee of ... Capala Brothers, Inc. and I am aware of the litigation started in Federal Court by my former co-employees in this action claiming unpaid hours and wages from my employer. With such awareness and knowledge of these claims ... [I] declare that I do not join in claiming any unpaid hours or wages from the defendants in this action.
>
> *See id.,* Ex. H.

Defendants advance two arguments with respect to these affidavits. First, defendants contend that the affidavits constitute valid and enforceable releases of the affiants' NYLL claims and bar the affiants from joining the class.[6] *See* Def. R. 23 Opp. Mem. at 33-34. Defendants' argument fails as a matter of law.

New York courts "will enforce valid releases that are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not 'the product of fraud, duress or undue influence.' " *Hummel v. AstraZeneca LP,* 575 F.Supp.2d 568, 570 (S.D.N.Y.2008) (citing *Skluth v. United Merch. & Mfr., Inc.,* 163 A.D.2d 104, 559 N.Y.S.2d 280, 282 (1st Dep't 1994) (citation omitted)). Although courts regularly enforce agreements that release NYLL wage and overtime claims, *see Defilippo v. Barclays Capital, Inc.,* 552 F.Supp.2d 417, 426 (S.D.N.Y.2008), the affidavits submitted by defendants do not resemble the releases contemplated by existing case law. *See, e.g., Wright v. Brae Burn Country Club, Inc.,* 2009 WL 725012, at *4 (S.D.N.Y. Mar.20,

2009) (holding that a release of NYLL claims in settlement of a dispute by former employee represented by counsel did not violate public policy where the employee was no longer working for his employer when he signed the release and therefore did not contract away his basic labor rights); *Hummel,* 575 F.Supp.2d at 569-71 (holding that a broadly worded agreement was valid to release defendant from liability for NYLL claims in exchange for payment of $13,077); *Defilippo,* 552 F.Supp.2d at 427 (enforcing release of NYLL overtime claims where the employee signed a severance agreement expressly releasing his employer from "any and all causes of action" in exchange for $53,000 in severance compensation); *Simel v. JP Morgan Chase,* 2007 WL 809689, at *1-3, 5 (S.D.N.Y. Mar.19, 2007) (enforcing a mutual release between employee and employer, which included a release of the employee's NYLL claims, to resolve disputed claims between the parties).

**\*4** The affidavits here do not evince a clear and unambiguous agreement to release Capala Brothers from liability for NYLL violations. They are not styled as releases and they do not contain language explicitly releasing claims. Rather, they state only that the affiants choose not to "join in claiming any unpaid hours or wages from the defendants." Moreover, these purported releases from putative plaintiffs-many of whom are recent immigrants dependent on defendants for employment-were obtained without the benefit of independent advice from counsel or even notice of the plaintiffs' claims in a form approved by the court. As such, the proposition that they were knowingly and voluntarily made is suspect. Finally, while a release will not be considered invalid for lack of consideration, *see Simel,* 2007 WL 809689, at *2 (quoting N.Y. GEN. OBLIG. § 15-303 (McKinney 2001)), in each of the cases cited above the employees involved released their claims either in exchange for a severance package or to settle a dispute. *See supra.* Here, there is no indication that the employees received anything in return for executing the affidavits. Accordingly, the affidavits are not valid and enforceable releases of the affiants' NYLL wage and overtime claims.

Second, defendants contend that, even if the affiants did not release their underlying claims, they must be excluded from any numerosity determination because they have already expressed their lack of interest in joining the litigation. The affidavits, however, are not a reliable indicator of a lack of interest in joining the class. The class has yet to be certified, and a court-approved notice has yet to be sent to putative members. Moreover, as discussed above, it is entirely unclear

what type of "notice" the affiants received and thus which claims they do not intend to bring.[7] Finally, when asked during oral argument to identify any precedent addressing the effect of affidavits like the ones presented here, defendants were unable to do so. *See* Tr. of 9/10/09, Docket Entry 183, at 6-8. This court's independent research has not yielded any such authority either. Accordingly, to the extent defendants argue that these affidavits constitute "opt outs" from the class action, or that they should be given any weight when determining numerosity, their argument is rejected.

To the contrary, these affidavits appear to have been procured in a manner that is inconsistent with the policies behind Rule 23. In *Gulf Oil Company v. Bernard,* the Supreme Court recognized that, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). *See also* FED. R. CIV. P. 23(d). A court possesses such supervisory authority even before a class is certified. *See In re Initial Pub. Offering Sec. Litig.,* 499 F.Supp.2d 415, 418 n. 13 (S.D.N.Y.2007) (citing *In re Currency Conversion Fee Antitrust Litig.,* 361 F.Supp.2d 237, 252-53 (S.D.N.Y.2005)).

**\*5** Numerous courts have found that contacts with putative class members warranted judicial intervention. *See, e.g., In re Sch. Asbestos Litig.,* 842 F.2d 671, 682-83 (3d Cir.1988) (affirming district court's order requiring defendants to disclose their involvement in the lawsuit when communicating directly with class members, where such communications were found to be factually and legally incomplete); *In re Initial Pub. Offering Sec. Litig.,* 499 F.Supp.2d at 421 (ordering plaintiff's-intervener's counsel to submit class-wide communication to the court for *in camera* review before disclosure to the class where counsel had, *inter alia,* issued press releases soliciting clients and sent an *ex-parte* letter to the court). In the case of *In re Currency Conversion Fee Antitrust Litigation,* the court held that arbitration clauses were unenforceable because "defendants' unsupervised communications ... sought to eliminate putative class members' rights in this litigation." 361 F.Supp.2d at 254. The court ruled, in language equally applicable here, that "when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization." *Id.* at 253.

Here, defendants' unsupervised communications sought to limit the rights of putative class members without the benefit of court-approved notice about the pending class action. Accordingly, considering these affidavits when determining numerosity would legitimize conduct that Rule 23 deems inappropriate. It would also provide an incentive for defendants in this case, and in other cases, to engage in improper and potentially coercive communications with members of a putative class.

In sum, I find that these affidavits are insufficient to release defendants from liability for the putative class members' NYLL claims. Moreover, the affidavits are not reliable evidence of the affiants' lack of interest in joining the class action. Finally, the affidavits were procured in disregard of the policies underlying Rule 23. Accordingly, the affidavits provide no basis for overcoming Judge Glasser's determination that plaintiffs have established numerosity.

### b. Commonality

Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class." Judge Glasser has already found that "any individualized questions regarding the number of hours that a specific employee worked will not predominate over the questions of law and fact that are relevant to all members of the purported class ...." *Gortat,* 257 F.R.D. at 362. Although Judge Glasser was not explicitly addressing the requirement of commonality, his analysis demonstrates that plaintiffs have met their burden of showing that their grievances derive from common questions of law or fact.[8] *See Marisol,* 126 F.3d at 376. *See also Becker v. Long Island Lighting Co.,* 164 F.R.D. 144, 150 (E.D.N.Y.1996) ("Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class. It does not require that *all* questions of law or fact raised be common.") (internal quotation marks omitted).

**\*6** Defendants have not presented any new arguments or evidence that warrant a re-examination of Judge Glasser's ruling. Accordingly, common questions of law and fact exist as to whether plaintiffs were denied pay by defendants for regular and overtime hours they claim to have worked. *See, e.g., Jankowski v. Castaldi,* 2006 WL 118973, at \*2-3 (E.D.N.Y. Jan.13, 2006) (finding commonality among the plaintiffs who alleged that they had been denied overtime wages pursuant to defendants' policy).

### c. Typicality

"Typicality ... requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.' " *Marisol,* 126 F.3d at 376 (internal citations omitted). "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate" the analysis of each. *Id.* Named plaintiffs allege that they each performed similar work for defendants and that, like other members of the class, they were never compensated for all the hours they worked "as a result of Defendants' common scheme to deprive employees of pay for all hours worked." Pl. R. 23 Mem. at 21. Defendants present the same arguments in opposition to a finding of typicality as they do to commonality. For the reasons stated in Judge Glasser's opinion and above, these arguments are without merit, and I therefore find that plaintiffs meet this requirement.

#### d. Adequate representation

Rule 23(a)(4) requires plaintiffs to demonstrate that the named plaintiffs and class counsel will fairly and adequately protect the interests of the class. Judge Glasser has already held that "the evidence clearly shows that the plaintiffs' interests in obtaining the requested relief are not antagonistic to those of the other class members [and that, as a result,] the plaintiffs are adequate class representatives." *Gortat,* 257 F.R.D. at 365. In addition, Judge Glasser found plaintiffs' counsel to be qualified and able to represent the class. *Id.*

Defendants spend a substantial portion of their motion papers denigrating class representatives and class counsel, see, e.g., Def. R. 23 Opp. Mem. at 13-14, 16, 19-27, even though Judge Glasser unequivocally rejected these same attacks, see *Gortat,* 257 F.R.D. at 363-65. The only ground raised by defendants in opposition to the pending motion that was not presented to Judge Glasser is defendants' argument that inconsistencies in plaintiffs' deposition testimonies regarding when the workday began render them improper class representatives.[9] *See, e.g.,* Orner R. 23 Aff. ¶¶ 7, 45. The inconsistencies pointed out by defendants, however, to the extent they exist, are trivial. For example, defendants note that, although plaintiff Miroslaw Filipkowski testified that his co-employees changed into their work clothes before 7:00 a.m., Filipkowski also admitted to sometimes arriving after 7:00 a.m. *Id.* ¶ 83; Filipkowski Dep. at 41, 43-55, 110-12.[10] Defendants contend that this establishes that Filipkowski's testimony is contradictory, rendering him an improper class

representative. Orner R. 23 Aff. ¶ 83. However, it is not inconsistent to testify that, as a general matter, employees changed into their work clothes before 7:00 a.m., Filipkowski Dep. at 111, and to acknowledge being late and arriving after 7:00 a.m. approximately once every two weeks, *id.* at 44.

**\*7** Defendants similarly accuse plaintiff Artur Lapinski of having provided conflicting sworn testimony. Orner R. 23 Aff. ¶ 64. Again, however, any inconsistency is insignificant. In his affidavit in support of plaintiffs' motions, Lapinski states he would spend "around half an hour" to load the company vans with tools and materials in the morning. Lapinski Aff. ¶ 7.[11] At his deposition, Lapinski testified that he left the shop, on average, between 7:20 a.m. and 7:50 a.m., presumably after beginning to load the vans at or shortly after 7:00 a.m. Lapinski Dep. at 87.[12] There is no meaningful inconsistency here.

Defendants also argue that plaintiff Miroslaw Gortat provided inconsistent testimony when he first stated that he arrived at job sites in Manhattan at 8:00 a.m., Gortat Dep. at 156,[13] and later stated that construction noise could start only at 8:30 a.m. or 9:00 a.m., *id.* at 158. *See* Orner R. 23 Aff. ¶ 109. Gortat's testimony, however, is not inconsistent: he first stated that he usually arrived at job sites about 8:00 a.m., Gortat Dep. at 156, l. 11; then stated that construction at certain smaller sites could start as early as 8:00 a.m., *id.* at 156, ll. 14-20; and then stated that construction started later at larger sites, *id.* at 156, ll. 22-23; 158, l. 5.

As these examples make plain, defendants have not established that plaintiffs have provided materially false testimony about the "central issues in this litigation." *Gortat,* 257 F.R.D. at 364. More importantly, they have not demonstrated that the "plaintiffs' interests in obtaining the requested relief are ... antagonistic to those of the other class members." *Id.* at 365. Accordingly, as Judge Glasser has already held, plaintiffs have demonstrated that they are adequate class representatives and that Mr. Wisniewski is qualified and able to represent the class.

#### e. *Rule 23(b)(3) requirements*

Plaintiffs seek certification under Rule 23(b)(3), which requires a demonstration that "questions of law or fact common to class members predominate" over questions affecting only individual class members. "[T]o meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject

to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir.2001) (internal quotation marks omitted). "The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2)." *Ansoumana*, 201 F.R.D. at 89.

Judge Glasser found that common questions of law and fact that are relevant to all class members predominate over individualized issues. *Gortat*, 257 F.R.D. at 362. Thus, while some plaintiffs are laborers and others are foremen, some were paid by check while others were paid in cash, and some worked more hours than others, these differences do not predominate over the main issue: plaintiffs' allegation that defendants paid all of these employees for fewer hours than they claim to have worked. Defendants have not presented any evidence since Judge Glasser's opinion to the contrary. Accordingly, I find that plaintiffs have shown that common questions of law or fact predominate over any individualized issues.

**\*8** Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As noted above, questions that are relevant to all members of the class predominate over individualized issues, supporting the superior efficiency of the class action form. More importantly, Judge Glasser also found that putative members presently employed by defendants are unlikely to risk retaliatory action by defendants by bringing claims on their own, and that "many if not most of the purported class members are persons with inadequate resources to exercise their rights by prosecuting their own claims." *Gortat*, 257 F.R.D. at 362. In addition, plaintiffs allege that some of the putative class members possess relatively small claims and would thus be discouraged from spending the money to litigate individually. Pl. R. 23 Mem. at 26. For all these reasons, a class action is superior to other methods for efficiently adjudicating this controversy.

Accordingly, I respectfully recommend that Judge Glasser grant plaintiffs' motion for class certification of their New York state law wage and overtime claims pursuant to Rule 23(b)(3).

## 2. Collective action

"Under the FLSA, employers are required to compensate covered employees for all the work performed, including overtime ...." *Bowens v. Atl. Maint. Corp.*, 2008 WL 1827439, at \*23 (E.D.N.Y. Apr.23, 2008). Employees may bring an action against the employer to " 'recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions.' " *Id.* (quoting *Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249, 260 (S.D.N.Y.1997)).

Section 216(b) of the FLSA provides that "one or more employees" may move to have their case certified as a collective action "for and in behalf of ... themselves and other employees similarly situated." *See also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101, 103 (S.D.N.Y.2003). Upon granting conditional certification, the court may authorize an FLSA plaintiff to provide written notice to potential plaintiffs of their right to join in the action. *Id.* at 104. After receiving the written notice, employees who seek to join the collective action "must 'opt in' and consent in writing." *Morales v. Plantworks, Inc.*, 2006 WL 278154, at \*1 (S.D.N.Y. Feb.2, 2006). Unlike a class action under Rule 23, "only potential plaintiffs who 'opt-in' can be 'bound by the judgment' or 'benefit from it.' " *Gjurovich*, 282 F.Supp.2d at 104.

To proceed with a collective action, "[t]he named plaintiff must ... show that he is similarly situated to the prospective plaintiffs who would benefit from notice of the right to join." *Bowens*, 2008 WL 1827439, at \*22. Although neither the FLSA nor its implementing regulations define the term "similarly situated," courts in this Circuit "have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Morales*, 2006 WL 278154, at \*2 (quoting *Hoffmann*, 982 F.Supp. at 261). Where, as here, plaintiffs move to proceed as collective action post-discovery, courts apply "heightened scrutiny to this inquiry as compared to pre-discovery." *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, at \*9 (S.D.N.Y. Sept.29, 2006).

**\*9** In assessing the viability of a collective action, courts consider " '(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class.' " *Laroque v. Domino's Pizza LLC*, 2008 WL 2303493, at \*5 (E.D.N.Y. May 30, 2008) (quoting *Guzman v. VLM, Inc.*, 2007 WL 2994278, at \*3 (E.D.N.Y. Oct.11, 2007)). Notably, a collective action under Section 216(b) requires no formal showing of numerosity,

typicality, commonality, or representativeness. *See Lynch v. United Servs. Auto. Ass'n,* 491 F.Supp.2d 357, 369 (S.D.N.Y.2007).

While certification as a collective action does not require that the elements of Rule 23 be satisfied, the discussion above of plaintiffs' motion for class certification strongly supports permitting plaintiffs to proceed with a collective action. First, plaintiffs easily meet their burden of demonstrating that defendants' employees are similarly situated. Plaintiffs' claims raise the same core questions of law and fact. *See supra* section 1(b). This is demonstrated by plaintiffs' affidavits, which allege similar facts and circumstances in support of plaintiffs' claims that they were deprived of wages and overtime compensation due under the FLSA. *See* Docket Entry 145. *See also Sobczak v. AWL Industries, Inc.,* 540 F.Supp.2d 354, 362 (E.D.N.Y.2007) ( "Courts regularly grant motions for approval of a collective action notice 'based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees.' ") (internal citation omitted). Though foreman and laborer plaintiffs performed different duties, were paid at different rates and worked different hours, these minor factual disparities do not defeat plaintiffs' motion to proceed as a collective action, nor do they render the class unmanageable. *See Gortat,* 257 F.R.D. at 362. Moreover, defendants have not articulated any individualized defenses. Thus, "on balance, the policy objectives of reducing cost and increasing efficiency are best furthered by granting collective action ...." *Torres,* 2006 WL 2819730, at *11.

Defendants argue that, because there is "widespread knowledge" of the litigation and forty-one putative members have already "opted out" by signing the affidavits described above, plaintiffs' motion to proceed as a collective action should be denied. Def. Section 216(b) Opp. Mem. at 5-6, 22-24.[14] Defendants' argument is meritless. Section 216(b) does not have a numerosity requirement, making the number of putative members interested in joining the collective action irrelevant. More importantly, the FLSA "expressly prohibits" settlement of a claim for unpaid wages or unpaid overtime without the supervision of the Secretary of Labor, or pursuant to judicially supervised stipulated settlements. *Simel,* 2007 WL 809689, at *4 (citing 29 U.S.C. § 216(c) and collecting cases). Thus, the affidavits procured by defendants do not constitute effective waivers of FLSA claims or otherwise preclude certification as a collective action.

*10 Accordingly, plaintiffs' motion to proceed with their FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) is granted.

### 3. *Notice*

Plaintiffs have submitted a proposed notice of the class action lawsuit. *See* Docket Entry 142, Exs. 7 & 8. They have not submitted a proposed notice of the collective action. During the time my report and recommendation is pending before Judge Glasser, counsel are directed to draft a proposed notice under the following guidelines, so that notice may be promptly circulated in the event that my recommendation to certify the class is adopted by Judge Glasser.

During oral argument, I recommended that plaintiffs draft one notice that includes information about both the class action and the collective action in order to minimize the cost of mailing and to avoid the likely confusion that would result if class members were to receive multiple notices.[15] Tr. of 9/10/09 at 20-22. With respect to the substance of the notice, counsel are directed to review the transcript of 9/10/2009, Docket Entry 183, at 15-22, and consider my recommendations, and to consult *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 101, 105-08 & Ex. B (S.D.N.Y.2003), for a detailed discussion of the proper form and substance of a collective action notice.

Counsel shall submit a proposed notice for my review by November 4, 2009. In the event that the parties are unable to agree on a proposal, plaintiffs shall submit their proposed notice by November 4, 2009, and defendants will file objections one week thereafter.

In addition to mailing the notice to putative members, plaintiffs seek to publish it in Nowy Dziennik, a New York-based Polish language newspaper for five consecutive weekends. I recommend that, given the thoroughness of defendants' production with respect to the names of putative class members, and the lack of concrete information about there being additional employees, plaintiffs should pay for publication of the notice as a taxable expense. However, if a significant number of class members who were not on defendants' list of seventy-four employees join the class after publication, plaintiffs may seek to have the cost of publication shifted to defendants.

### 4. *Discovery*

Plaintiffs allege that defendants' employee list does not contain the names and addresses of all persons who have been employed by Capala Brothers since August 29, 2001, or during the six years preceding the filing of this lawsuit. Pl. R. 23 Mem. at 16, 31; Filipkowski Aff. ¶ 18. [16] During oral argument, defendants represented that they have current contact information for every full-time and part-time employee who worked for Capala Brothers over the last six years, except for one. See Tr. of 9/10/09 at 18. To the extent defendants have not provided contact information for each full-time and part-time employee who worked for Capala Brothers at any time on or after August 29, 2001, defendants are directed to do so by October 30, 2009.

### 5. Order to show cause

*11  As discussed above, a district court has both the authority and the duty to scrutinize communications between counsel and putative class members. Indeed, a court may limit communications between counsel and putative class members to protect the class from misleading information, including communications that "omit[ ] critical information," "that threaten the choice of remedies available to class members," or that otherwise "abuse the rights of the members of the class." In re Currency Conversion Fee Antitrust Litig., 361 F.Supp.2d at 252-53 (collecting cases). An order limiting communications "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Gulf Oil Co., 452 U.S. at 101-02. Such intervention "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." Id.

Plaintiffs have not made a motion to limit communications between defendants and putative class members. Nevertheless, as discussed above, defendants' unsupervised contacts with putative class members, which resulted in those members signing affidavits expressing a lack of interest in participating in this action without the advice of independent counsel or the benefit of a court-approved notice, are cause for serious concern. See, e.g., Cobell v. Norton, 225 F.R.D. 4, 7 (D.D.C.2004) (finding that the court may act sua sponte to limit communications between defendants and class members when it is in the best interests of the class). See also Kleiner v. First Nat. Bank of Atlanta, 751 F.2d 1193, 1203 (11th Cir.1985) (pointing out that "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a

one-sided presentation of the facts, without opportunity for rebuttal."); Ralph Oldsmobile Inc. v. Gen. Motors Corp., 2001 WL 1035132, at *4 (S.D.N.Y. Sept.7, 2001) (finding potential for abuse sufficient to warrant court intervention where putative members purportedly released claims against defendants without knowing about the pending litigation).

Defendants' conduct is especially troublesome with respect to those employees who still work for Capala Brothers. Where, as here, putative class members are involved in an ongoing business relationship with defendants, and those members are dependent on defendants for employment, the potential for coercion suggests that limitations may be warranted. See, e.g., E.E.O.C. v. Morgan Stanley & Co., 206 F.Supp.2d 559, 563 (S.D.N.Y.2002) (ordering limits on communications between employer and employees because of the possibility of coercion); In re Currency Conversion Fee Antitrust Litig., 361 F.Supp.2d at 253 (collecting cases for the proposition that there is sufficient potential for coercion to justify limitations where the parties are engaged in an ongoing business relationship).

*12  Accordingly, defendants are ordered to show cause, in writing, by October 30, 2009, why this court should not enter an order directing that defendants and their counsel either (1) refrain from communicating with any putative class member about the substance of this case or, (2) provide notice to any putative class member who contacts them, or who defendants contact, about this litigation, that it is proceeding as a collective action, that an application to certify a class of which the employee may be a member is pending, that the putative class is represented by Robert Wisniewski, (and to provide Mr. Wisniewski's address and phone number), and that they may wish to consult with Mr. Wisniewski or their own attorney before deciding whether to opt in to the collective action or opt out of the class action if it is certified. In addition, if my recommendation to certify the class is adopted by Judge Glasser, defendants are ordered to show cause why this court should not enter an order directing that defendants and their counsel provide a copy of the court-approved notice to any class member who contacts them, or who defendants contact, about this litigation. See Sorrentino v. ASN Roosevelt Ctr. LLC, 584 F.Supp.2d 529, 533 (E.D.N.Y.2008) (finding that although the court could not regulate the content of defendants' settlement offer to the putative class, it would require defendants to mail their offer together with a position letter from plaintiffs' counsel "to ensure that the parties make an informed decision" and

so that the potential class need not be "reliant on defendants' notice for information about the litigation").

### Conclusion

For the reasons discussed above, I respectfully recommend that Judge Glasser grant plaintiffs' motion to certify their New York state law wage and overtime claims as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). I also recommend that Judge Glasser approve the named plaintiffs as class representatives and appoint Mr. Wisniewski as class counsel. Any objections to this Report and Recommendation must be filed within ten days of this Report and in any event no later than November 4, 2009. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir.1989).

In addition, I grant plaintiffs' motion to proceed with their FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).

Counsel are directed to meet and confer and submit a proposed notice of the class action and collective action by November 4, 2009. In the event that counsel are unable to agree on a proposal, plaintiffs shall submit their proposed notice by November 4, 2009, and defendants will file any objections one week thereafter.

To the extent they have not done so already, defendants are directed to provide the contact information for every full-time and part-time employee who worked for Capala Brothers at any time on or after August 29, 2001, by October 30, 2009.

**\*13** Finally, defendants are directed to respond to the order to show cause by October 30, 2009.

### Footnotes

1   While NYLL § 663 permits private causes of action for unpaid wages to be brought as a class action, FLSA authorizes only a collective action procedure for private causes of action pursuant to 29 U.S.C. § 216(b). See Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 361 n. 6 (E.D.N.Y.2009).

2   "Pl. R. 23 Mem." refers to Plaintiffs' Memorandum of Law in Support of Motion for Class Certificationj Docket Entry 143.

3   Although the parties stipulated that plaintiffs' certification motion would be stayed pending resolution of their respective summary judgment motions, defendants nevertheless brought a motion to deny class certification along with their motion for summary judgment. See Gortat, 257 F.R.D. at 361.

4   "Def. R. 23 Opp. Mem." refers to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification, Docket Entry 168.

5   "Orner R. 23 Aff." refers to defense counsel Felipe Orner's Affidavit in Opposition to Plaintiffs' Motion to Certify a Class Action under Fed.R.Civ.P. 23(b)(3), Docket Entry 170.

6   Defendants also claim to present new evidence that nineteen workers hired in 2007 do not qualify as part of the class. Def. R. 23 Opp. Mem. at 16; Orner R. 23 Aff., Ex. I. After the complaint was filed, defendants claim that they required new hires to sign "regulations of employment" acknowledging that the workday began at 7:30 a.m. To the extent defendants argue that these "regulations" are the equivalent of a release, this argument is rejected for the reasons stated in the text.

7   Plaintiffs also point out that when defendants' former employees received notice about this action through subpoenas to testify at a deposition, they chose to join the lawsuit as class representatives. See Combined Reply Memorandum of Law in Support of Plaintiffs' Motion for Approval of Collective Action Notice and to Certify a Class under Rule 23(b)(3), Docket Entry 178, at 8-9.

8   Defendants argue, as they did before Judge Glasser, that the laborers and foremen cannot compose the same class because they are claiming compensation for different hours of the workday. Judge Glasser rejected this argument. Gortat, 257 F.R.D. at 362. Judge Glasser also held "that the foremen [are] not employers for the purposes of FLSA," Gortat, 257 F.R.D. at 367, and noted that "the test for an 'employer' is essentially identical under federal and state law," id. at n. 13. These findings lend further support to plaintiffs' claim that the putative class members share common factual circumstances.

9   Defendants also proffer affidavits from neighbors of the Capala Brothers' shops and from managers of construction projects stating that the workday did not commence before 7:30 a.m. as alleged by plaintiffs. See, e.g., Orner R. 23 Aff., Exs. P & R. At least one such affidavit was part of the record before Judge Glasser. Docket Entry 95, Ex. O. These affidavits do not demonstrate plaintiffs' lack of credibility. Rather, the affidavits demonstrate that there is a material issue of fact as to when the workday began, which is precisely why Judge Glasser denied defendants' motion for summary judgment. See Gortat, 257 F.R.D. at 361 ("Because defendants' evidence

suggests that the workday started at the work sites in Manhattan and the plaintiffs' evidence suggests that the workday started at 7:00 a.m. at the Greenpoint shop, there is a question of fact that requires the Court to deny the defendants' motion for summary judgment.").

10    "Filipkowski Dep." refers to excerpts from plaintiff Miroslaw Filipkowski's deposition transcript, Orner R. 23 Aff., Ex. V, Docket Entry 173.

11    "Lapinski Aff." refers to plaintiff Artur Lapinski's affidavit in support of Plaintiffs' Motion for Class Action Certification, Docket Entry 142.

12    "Lapinski Dep." refers to excerpts from plaintiff Artur Lapinski's deposition transcript, Orner R. 23 Aff., Ex. U, Docket Entry 173.

13    "Gortat Dep." refers to excerpts from plaintiff Miroslaw Gortat's deposition transcript, Orner R. 23 Aff.j Ex. X, Docket Entry 173.

14    "Def. Section 216(b) Opp. Mem." refers to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Notice under 29 U . S.C. § 216(b), Docket Entry 163.

15    Defendants argue that it would be prejudicial to send one notice to all members because of the different statutes of limitations applicable to FLSA claims (three years) and NYLL claims (six years), and urge that the collective action notice not be sent to any former employees who do not have claims beginning from three years before the initiation of this action. Although defendants cite precedents for the proposition that notice should be sent only to individuals they employed no earlier than three years prior to the filing of this lawsuit, Def. Section 216(b) Opp. Mem. at 15-16, none of the cases defendants rely upon involved motions to certify a Rule 23 class pursuant to NYLL. *See, e.g., Jemine v. Dennis,* 2009 WL 837802, (E.D.N.Y. Mar.26, 2009); *Suarez v. S & A Painting & Renovation Corp.,* 2008 WL 5054201 (E.D.N.Y. Nov.21, 2008); *Summa v. Hofstra Univ.,* 2008 WL 3852160 (E.D.N.Y. Aug.14, 2008); *Dumitrescu v. Mr. Chow Enterprises, Ltd.,* 2008 WL 2600667 (S.D.N.Y. June 30, 2008); *Laroque v. Domino's Pizza,* 557 F.Supp.2d 346 (E.D.N.Y.2008); *Sobczak v. AWL Indus., Inc.,* 540 F.Supp.2d 354 (E.D.N.Y.2007); *LeGrand v. Educ. Mgt. Corp.,* 2004 WL 1962076 (S.D.N.Y. Sept.2, 2004). Moreover, any potential confusion or prejudice can be mitigated by including information about the limitations periods in the notice.

16    "Filipkowski Aff." refers to the affidavit of plaintiff Miroslaw Filipkowski in Support of Plaintiffs' Motion for Class Action Certification, Docket Entry 142.

---

**End of Document**                                          © 2013 Thomson Reuters. No claim to original U.S. Government Works.

 © 2013 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 1585979
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Rodney MALLOY, individually and on behalf
of all others similarly situated, Plaintiff,
v.
RICHARD FLEISCHMAN & ASSOCIATES
INC., Richard Fleischman, and John Does
# 1–10, Jointly and severally, Defendants.

No. 09 Civ. 322(CM).   |   June 3, 2009.

Opinion

## MEMORANDUM DECISION AND ORDR CONDITIONALLY CERTIFYING FAIR LABOR STANDARDS ACT COLLECTIVE ACTION AND AUTHORIZING NOTICE TO BE ISSUED TO THE CLASS

McMAHON, District Judge.

**\*1** Plaintiff works for defendant corporation (hereinafter referred to as RFA). He alleges that, at various times, he has worked in various positions—a Help Desk employee, a Desktop support Technician and a Field Support Technician—the duties of which essentially track those of the information technology support specialist position as detailed by the United States Department of Labor in a Compliance Letter dated October 26, 2006. Plaintiff alleges that he and approximately 250 other RFA employees who occupied the same or similar positions all perform approximately the same duties—diagnosing and repairing client computer problems including setting up email and Blackberry accounts, physically setting up computer stations and other hardware, maintaining backup equipment, archiving customer data, installing and deploying computer programs and otherwise providing general computer support to RFA's clients. Other allegedly similarly situated employees serve as server administrators, data integrity backup administrators, networking administrators, and analogous positions where they do not supervise employees. It appears to be the position of the Department of Labor that such persons are or may be non-exempt employees who are subject to the wages and hours laws set forth in the Fair Labor Standards Act, 29 U.S.C. § 213.

Plaintiff alleges that he and other similarly situated employees worked more than 40 hours per week but were not paid overtime. He seeks conditional certification of an opt-in class under Section 216(b) of the FLSA for purposes of remediating that alleged violation of law. Plaintiff also brings claims under the New York State Labor Law but he is not presently seeking certification of a state law class, which raises entirely different issues.

Defendants contest plaintiff's description of its job titles (RFA classifies the jobs at issue as "Help Desk employees, Field Service Technicians, Data Integrity Specialists and a Systems Administrator), but admits that persons who work in the information technology area, performing the sorts of duties that are described in plaintiff's complaint, are classified as "exempt" by RFA, are paid "at least $455 a week on a salaried basis" and are allowed to take "comp time" (which they can cash in at their hourly rate of pay) when they are constrained to work overtime (which RFA insists is a rare occurrence, although defendants admit that Help Desk employees, for example, routinely work "eight to ten hour shifts"). (All references are from Defendants' Brief in Opposition to the motion at page 3). RFA asserts that it differentiates itself from its competitors by actively seeking out more highly trained individuals for IT support positions, and avers in particular that its Field Service Technicians perform at a level "unique" to the IT industry. Defendants also insist that each individual Field Service Technician, by virtue of being "embedded" at a client's facility, performs different functions, so even that group of employees cannot be treated as similarly situated. (Brief in Opposition at 2–7). It argues that preliminary certification would, therefore, not be appropriate.

**\*2** Plaintiff's motion is granted.

Plaintiff asks this court to pre-certify his FLSA claim as a collective or representative action under 29 U.S.C. § 216, and to authorize notice to prospective plaintiffs. In contrast to the "opt-out" procedure of the Rule 23 class action, proposed class members to a FLSA representative action must "opt in" by filing a written consent with the court. The FLSA permits employees to maintain such an action "for and in behalf of ... themselves and other employees similarly situated." 29 U.S.C. § 216(b). When determining whether a matter shall proceed as a collective action, courts should be mindful of the remedial purposes of the FLSA. *Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335, 336 (2d Cir.1978).

Courts generally follow a two-step process when deciding whether to certify a representative action. *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y.2006). At the first stage, the court will look at the pleadings and affidavits. If the plaintiff satisfies the "minimal burden of showing that the similarly situated requirement is met," the court certifies the class as a collective action. *Id*. (citing *Scholtisek v. Eldre Corp*., 229 F.R.D. 381, 387 (W.D.N.Y.2005). "At this juncture—also termed the 'notice stage'—the court applies 'a fairly lenient standard' and (when it does so) typically grants 'conditional certification.' " *Torres v. Gristede's Operating Corp*., 2006 U.S. Dist. LEXIS 74039, *37–38 (S.D.N.Y. Sept 28, 2006) (quoting *Moss v. Crawford & Co*., 201 F.R.D. 398, 409) (W.D. Pa 2000). Potential class members are then notified and provided with the opportunity to opt in to the action. *Scholtisek*, 229 F.R.D. at 387.

After discovery—and usually upon a defendant's motion for decertification of the class—a court examines the record and again makes a factual finding regarding the similarly situated requirement. If the claimants are indeed similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims. *ABC Carpet & Home*, 236 F.R.D. at 197.

Neither the FLSA nor its implementing regulations defines the term "similarly situated." *Hoffman v. Sbarro, Inc*. 982 F.Supp. at 261. However, courts have held that at the preliminary or conditional certification stage, plaintiffs can satisfy the "similarly situated" requirement by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.' " *Realite v. Ark Restaurants Corp*., 7 F.Supp.2d 303, 306 (S.D.N.Y.1998); *see also Krueser v. New York Telephone Co*., 1993 WL 276058 (S.D.N.Y. July 21, 1993) (when the litigation is in its early stages, plaintiffs need only provide "some factual basis from which the court can determine if similarly situated plaintiffs exist.") The "similarly situated" standard for certifying a class action is thus considerably more liberal than class certification under Rule 23. For certification of a representative action, "no showing of numerosity, typicality, commonality and representativeness need be made." *Young v. Cooper Cameron Corp*., 229 F.R.D. 50, 54 (S.D.N.Y.2005).

**\*3** At this preliminary certification stage, plaintiff has more than satisfied his de minimis burden of showing that he is "similarly situated" to the proposed class members. All of the proposed class members are current or former employees of RFA who perform some sort of computer support work. In his affidavit, the named plaintiff sets forth some of the factual bases for his claims, along with what he knows about the applicability of his own personal arguments to those that would be made by members of the proposed class. Plaintiff identifies a common policy or practice that is applicable to all the IT support specialists employed by RFA: the refusal to pay them time and a half for hours worked in excess of 40, and instead to compensate them with "comp time" that can be cashed in, but not for one and one half times the employee's normal hourly rate of pay. [1] Defendant admits that this is its practice; its defense appears to be that the IT support specialists are exempt, rather than non-exempt, employees. If the IT specialists have been improperly classified as "exempt," then the named plaintiff has alleged a common wage, overtime and payroll practices that violates the FLSA. Having done so, he is entitled to proceed in a representative capacity, and all potential plaintiffs are entitled to notice and an opportunity to opt into this action.

Defendants' argument that the affected employees are exempt rather than non-exempt because of their special qualifications and the non-industry-standard aspects of their work are not properly made at this juncture, where there has been virtually no discovery. Defendant will have an opportunity to overturn conditional certification when all discovery has concluded. For now, plaintiff has offered evidence that the IT specialists he seeks to represent lack the kind of discretion and independent judgment required of exempt employees. The fact that these employees perform skilled work—and the court has no doubt that they do—does not automatically exempt them from the wages and hours laws. 29 C.F.R. § 541.202(f). The Department of Labor letter referenced above states, "[P]erforming highly skilled technical work in troubleshooting computer problems does not, by itself, demonstrate the exercise of discretion and independent judgment with respect to matters of significance."

Defendants' argument that Help Desk employees do not work much in the way of overtime does not address the propriety of conditional certification for those employees who DO work overtime—and plaintiff's motion papers include time records that suggest RFA may be underestimating how much overtime its Help Desk employees work.

Defendants' argument that certain IT specialists, notably Field Service Technicians, are uniquely situated *vis a vis* each other, and so cannot be part of a "similarly situated" group of plaintiffs, is virtually identical to an argument rejected by this court in *Iglesias–Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363 (S.D.N.Y.2007). There, defendants argued that the named plaintiffs were not "similarly situated" to the proposed class members because, with one exception, all worked exclusively as duck feeders at La Belle Farm, while some class members performed other tasks, such as butchering. Because duck feeding was a unique job, "with different work schedules and requirements," defendants contended that plaintiffs could not allege a common practice or policy with respect to other workers at defendants' other poultry facilities. (Def. Response to Pl. Supp. Mem. at 3.) The court was not persuaded:

> **\*4** Defendants are incorrect. Only very limited discovery has taken place to date in this action. The plaintiffs rely, as they are entitled to do at this stage of the proceedings, on the pleadings and their own declarations. Plaintiffs have easily made the modest showing that is required of them at this preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class. Whether plaintiffs' evidence will suffice to survive a motion for summary judgment or to carry their burden at trial will become apparent in due time and in the light of full discovery. For the moment, the factual variations defendants rely on do not undercut plaintiffs' allegations of common wage and overtime practices that violate the FLSA.

*Iglesias–Mendoza, supra.,* 239 F.R.D. at 368.

Finally, variation in damages among members of the putative class does not defeat certification of a collective action. *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147 (2d Cir.2001).

The plaintiff's motion is granted and the action is conditionally certified as a collective action under 29 U.S.C. § 216(b).

The court finds that the form of notice proposed by plaintiff is timely, accurate and informative, and agrees that notice shall issue forthwith to all potential members of the class, defined s current for former IT technology support employees of RFA who worked as Help Desk employees, Desktop Support Technicians, Field Support Technicians, Server and Networking Administrators and Data Integrity Specialists. Notice shall be given in two ways. RFA must, within ten business days of the date of this decision, post the notice in each workplace where potential collective action members are employed. The defendants are not required to post opt-in consent forms along with the notice, but the notice shall plainly and clearly direct any person who wants to opt in to the office of plaintiff's counsel, who shall provide a consent form to any person who requests one. A copy of the notice, together with a consent form, shall also be mailed by first class mail to potential collective action members. The notice shall clearly provide that persons interested in participating are required to file their consents with the court within 65 days of the mailing, consistent with established practice under the FLSA.

Because only defendant knows the names and addresses of potential collective action members, defendants have 20 business days within which to provide the plaintiff with the names and last known addresses of all persons who qualify as potential opt-ins. Defendant is advised that its list should be over-inclusive rather than under-inclusive. Defendant shall provide the requested information in both paper and digital form.

This constitutes the decision and order of the court.

---

Footnotes

1   Plaintiffs include a copy of the "comp time" policy statement, which clearly states that just a few extra hours will not be compensated at all—with comp time reserved for "working above and beyond normal standards." (Morris Dec. Ex B).

---

**End of Document**                                                                                  © 2013 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 278154
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

José MORALES, Efren Morales, and Felix
Pacheco, and on behalf of themselves and
all others similarly situated, Plaintiffs,
v.
PLANTWORKS, INC., Neil Mendeloff,
and Verna Mendeloff, Defendants.

No. 05 Civ. 2349(DC). | Feb. 2, 2006.

**Attorneys and Law Firms**

Michael Faillace & Associates, P.C., By: Michael Faillace, New York, New York, for Plaintiffs.

Goldberg and Weinberger LLP, By: Stuart Weinberger, New York, New York, for Defendants.

**Opinion**

### MEMORANDUM DECISION

CHIN, J.

 **\*1** Plaintiffs José Morales, Efren Morales, and Felix Pacheco were employed as landscapers by defendant Plantworks, Inc. which is owned and operated by defendants Neil Mendeloff and Verna Mendeloff. Plaintiffs bring this action pursuant to the Fair Labor Standards Act (the "FLSA"), the New York Labor Law, and the "spread of hours" wage order of the New York Commission of Labor. Plaintiffs contend that defendants maintained a policy and practice of requiring plaintiffs to work more than forty hours per week without paying them minimum wage and overtime compensation in violation of state and federal labor laws. Plaintiffs also seek to recover damages against defendants for discrimination and retaliation under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the New York State Executive Law § 290 et seq., the FLSA, 29 U.S.C. § 201 et seq., and New York Labor Law § 215.

Plaintiffs move for an order (1) permitting plaintiffs to proceed as a collective action with respect to their FLSA claims; (2) compelling defendants to furnish the names and last known addresses of all employees of Plantworks since September 2002; (3) authorizing plaintiffs to send a notice and "opt-in" form to all prospective members of the collective action; and (4) compelling Plantworks to post the Court-approved "opt-in" notice in conspicuous locations in its offices. The motion is denied in part and granted in part, as set forth below.

### DISCUSSION

The FLSA permits employees to maintain an action "for and in behalf of ... themselves and other employees similarly situated. 29 U.S.C. § 216(b). The named plaintiffs must be "similarly situated" to the proposed members of the class, and proposed class members must "opt in" and consent in writing to being a party to the action. Id.

In collective actions, courts in this circuit frequently follow a two-stage certification process. Masson v. Ecolab, Inc., No. 04 Cv. 4488(MBM), 2005 WL 2000133, at \*13 (S.D.N.Y. Aug. 17, 2005); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 91, 96 (S.D.N.Y.2003); Rodolico v. Unisys Corp., 199 F.R.D. 468, 480 (E.D.N.Y.2001) (class certification in ADEA case); see also Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B Federal Practice and Procedure: Civil 3d § 1807, at 487-53 (2005) (discussing two stages of certification process) ("Wright, Miller & Kane"). At the first stage, the court examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated. Masson, 2005 WL 2000133, at \*13. If the court finds that they are, it conditionally certifies the class and permits notice to be sent to putative class members. Id.; Wright, Miller, & Kane, 7B Federal Practice and Procedure § 1807, at 492-93. At the second stage, the employer can move to decertify the class if discovery reveals that the claimants are not similarly situated. Masson, 2005 WL 2000133, at \*14.

 **\*2** In collective actions, district courts have "broad discretion to grant certification, to allow discovery, and to regulate notice." Wright, Miller, & Kane, 7B Federal Practice and Procedure § 1807, at 486. See Hoffman v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y.1997) ("It is well settled that district courts have the discretionary power to authorize the sending of ['opt-in'] notice[s] to potential class members."). Thus, at this early stage in the litigation, the threshold question for the Court is whether circumstances exist to warrant the exercise of this discretion or, in other

words, whether plaintiffs have demonstrated that the potential class members are "similarly situated" to them. *Id.*

The FLSA does not define "similarly situated" nor does it set out standards for determining whether the requirement has been met. *See id.* In this Circuit, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffman,* 982 F.Supp. at 261 (citing cases). *See also Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 431 (S.D.N.Y.1995) ("[P]laintiffs need merely provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.' ") (quoting *Schwed v. General Electric Co.,* 159 F.R.D. 373, 376 (N.D.N.Y.1995)). The leniency of this requirement is consistent with the broad remedial purpose of the FLSA. *See Hoffman,* 982 F.Supp. at 262 (citing cases discussing broad remedial purpose of FLSA).

In this case, plaintiffs have not met their burden. In support of their motion, plaintiffs submitted an affidavit of their attorney, to which were attached the following exhibits: (1) plaintiffs' First Amended Complaint; (2) a proposed "opt in" form; (3) a copy of the settlement form and general release issued to plaintiff Pacheco by defendants; (4) copies of four payroll check stubs for plaintiff José Morales; (5) copies of two payroll stubs for plaintiff Efren Morales; and (6) copies of two payroll stubs for plaintiff Felix Pacheco. (Faillace Aff. Ex. A-F). The payroll stubs support plaintiffs' claim that they were paid the regular rate for overtime. (Faillace Aff. Ex. D-F). The affidavit and exhibits, however, contain no reference to any Plantworks employee other than plaintiffs, and they make no allegations of a common policy or plan to deny plaintiffs overtime. The only additional support for plaintiffs' claim that they are similarly situated to other Plantworks' employees comes from their conclusory allegation in the amended complaint that "[t]here are over 20 current and former employees that are similarly situated to Plaintiffs and have been denied minimum wage and overtime compensation while working for Defendants. Plaintiffs are representative of these other workers and are acting on behalf of their interests as well as their own interests in bringing this action." (Am.Compl.¶ 33).

*3 Though the first stage of class certification only requires a "modest factual showing," it must be sufficient to demonstrate that plaintiffs and potential class members were victims of a common scheme or plan that violated the law. *See Hoffman,* 982 F.Supp. at 261; *Levinson v. Primedia Inc.,* 02 Cv. 2222(CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) (finding that plaintiff failed to meet "modest burden"). In making this showing, "[c]onclusory allegations are not enough." Wright, Miller, & Kane, 7B *Federal Practice and Procedure* § 1807, at 490-91. Here, plaintiffs have offered only a conclusory allegation in their complaint; they have offered nothing of evidentiary value. Because plaintiffs have failed to meet this minimal requirement, their motion for class certification is denied. In light of the remedial purpose of the FLSA and the Court's broad discretionary power, plaintiffs' motion for the names and addresses of Plantworks employees is granted, but only to the extent that defendants must produce the names and last known addresses of all individuals employed by Plantworks since 2002 in non-management positions with whom they have not entered settlement agreements. *See Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 168-70 (1989) (upholding district judge's order that employer produce names and addresses of discharged employees); Wright, Miller, & Kane, 7B *Federal Practice and Procedure* § 1807, at 495-96 ("If conditional certification is denied, the court may allow discovery to provide plaintiffs a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and the notice to opt in.")

### CONCLUSION

Based on the record before the Court, plaintiffs' motion for certification and for authorization to send a notice and 'opt-in' form is denied. Plaintiffs may renew the motion should discovery reveal additional facts to support the application. Plaintiffs' motion for the names and addresses is granted to the limited extent set forth above.

SO ORDERED.

---

© 2013 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1316397
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Matthew ROACH, et al., Plaintiffs,

v.

T.L. CANNON CORP., et al., Defendants.

Civil Action No. 3:10–CV–0591
(TJM/DEP).    |    March 5, 2013.

**Attorneys and Law Firms**

Thomas & Solomon LLP, Annette M. Gifford, Esq., Michael J. Lingle, Esq., J. Michael Thomas, Esq., of Counsel, Rochester, NY, O'Hara O'Connell & Cioltoli Law Firm, Frank S. Gattuso, Esq., Dennis G. O'Hara, Esq., of Counsel, Fayetteville, NY, for Plaintiffs.

Littler Mendelson, P.C., Craig Benson, Esq., Elena Paraskevas–Thadani, Esq., Erin W. Smith, Esq., of Counsel, New York, NY, for Defendants.

**Opinion**

### REPORT, RECOMMENDATION, AND ORDER

DAVID E. PEEBLES, United States Magistrate Judge.

 *1 Plaintiffs Matthew Roach, Melissa Longo, Garrett Titchen, and Christina Apple, four of the defendants' former employees, have commenced this action against T.L. Cannon Corp., as well as several of its corporate and individual affiliates, that collectively own and operate sixty-one Applebee's Neighborhood Grill and Bar Restaurants ("Applebee's") located throughout New York and portions of Connecticut. In their amended complaint, plaintiffs assert violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL") arising from the alleged existence of systemic, companywide policies and practices in place at defendants' Applebee's restaurants, resulting in violations of the FLSA and NYLL, and estimated to have affected thousands of current and former Applebee's employees.

Immediately upon commencement of the action, plaintiff moved for leave to pursue a collective action for purposes of their FLSA claim, and for class certification with respect to

their NYLL claims, pursuant to Rule 23 of the Federal Rules of Civil Procedure. That motion resulted in a partial approval of plaintiffs' request to pursue their FLSA claim as a collective action, limited to the Applebee's Front Street restaurant. The remaining portions of the motion, however, were denied without prejudice to renewal following discovery.

Currently before the court is plaintiffs' renewed motion for companywide collective action FLSA certification and Rule 23 class certification with regard to the NYLL claims. For the reasons set forth below, I find that, while plaintiffs have met their modest burden of establishing the requisites for the FLSA collective action certification they now seek, they have failed to meet their more demanding burden to show that they satisfy the requirements for class action certification under Rule 23 with respect to all of their NYLL claims, with the exception of the spread of hours claim.

### I. BACKGROUND

Together, the defendants own and operate approximately sixty-one Applebee's restaurants. Amended Complaint (Dkt. No. 94) at ¶ 3. Those restaurants vary in size, sales volume, and configuration, and include fiftythree located throughout the New York, and eight in Connecticut. Id.; Sabio Decl. (Dkt. No. 26) at ¶ 2. Defendants opened their first New York Applebee's restaurant in 1991, in Rochester, New York. Amended Complaint (Dkt. No. 94) at ¶ 37. Among the Applebee's restaurants operated by the defendants is one located at 842 Upper Front Street, Binghamton, New York, where three of the four named plaintiffs were employed at various times between April 2005 and August 2010. Sabio Decl. (Dkt. No. 26) at ¶¶ 1, 6, 7, 9; Apple Aff. (Dkt. No. 31–1) at ¶ 4.

Each of the defendants' New York restaurants is managed by a general manager, who is regarded as the highest ranking employee on location and supervises all other managerial and hourly workers at the facility. Sabio Decl. (Dkt. No. 26) at ¶¶ 4–5. Among the responsibilities of defendants' general managers is ensuring compliance with applicable wage and hour laws. Id. at ¶ 5. Some, although not all, of defendants' restaurants also have other management employees who work under the general manager, including assistant general managers, training managers, kitchen managers, and bar managers. Id. at ¶ 4.

 *2 The workforce at each of defendants' Applebee's locations also includes hourly employees who occupy positions typically broken down into three categories,

including front of the house ("FOH") positions, back of the house ("BOH") positions, and key hourly managers ("Key"). Amended Complaint (Dkt. No. 94) at ¶ 63. BOH employees typically serve as either general utility dishwashers, prep cooks, line cooks, or expediters, all of which are non-tipped hourly positions generally paying at or slightly above the prevailing minimum wage. *Id.* at ¶¶ 64–65. FOH positions at defendants' locations can include hosts, servers, bartenders, and carside to-go ("carside") employees; hosts and carside employees are classified as non-tipped hourly employees generally paid the minimum wage, while servers and bartenders are treated as tipped workers for wage-hour purposes. *Id.* at ¶¶ 95–97. Key hourly employees are those who are assigned to work regular management shifts when a particular store is either short a manager or needs coverage for a management shift for some other reason.[1] *Id.* at ¶ 134.

The named plaintiffs in this action are all former employees, most of whom worked primarily at defendants' Front Street Applebee's location. Sabio Decl. (Dkt. No. 26) at ¶¶ 3, 6–9. Matthew Roach worked at that location from May 2005 until March 2010 as an hourly employee, including as a server, host, carside employee, prep cook, and general utility dishwasher, and expediter.[2] Roach Aff. (Dkt. No. 30–6) at ¶¶ 3–4; Sabio Decl. (Dkt. No. 26) at ¶ 6. Melissa Longo was employed at the Front Street restaurant from April 2005 until January 2010 as a bartender, carside employee, prep cook, neighborhood marketing coordinator, cook, and key hourly employee. Longo Aff. (Dkt. No. 30–5) at ¶¶ 3–5; Sabio Decl. (Dkt. No. 26) at ¶ 7. Garrett Titchen worked at the Front Street Applebee's from May 2005 until August 2009 in various hourly positions, including as a mid-line cook, fry cook, broil cook, prep cook, server, carside employee, general utility dishwasher, and food expediter, as well as in managerial positions as an opening manager and a middle manager.[3] Titchen Aff. (Dkt. No. 31–1) at ¶¶ 3–5; Sabio Decl. (Dkt. No. 26) at ¶ 9. Christina Apple worked at various Applebee's locations, including in Clay, Dewitt, North Syracuse, and Auburn, New York, between October 2005 and August 2010. Apple Aff. (Dkt. No. 31–1) at ¶¶ 4, 8. During her employment, plaintiff Apple worked as a bar manager, FOH manager, training manager, and an hourly employee. *Id.* at ¶ 9.

## II. *PROCEDURAL HISTORY*

Plaintiffs commenced this action on May 19, 2010, asserting nine causes of action arising from the alleged existence of various policies and practices at the defendants' restaurants that violate the FLSA and NYLL. *See generally* Complaint

(Dkt. No. 1). The next day, plaintiffs moved for certification of the case as a collective action under the FLSA, permitting individuals similarly situated to the named plaintiffs to opt in to the lawsuit, and for class certification with respect to their NYLL claims under Rule 23 of the Federal Rules of Civil Procedure. Dkt. No. 13. By report dated January 4, 2011, I ordered certification of the matter as a collective action for purposes of the FLSA limited to the Front Street location only, but recommended denial of plaintiffs' motion for class certification for purposes of the NYLL without prejudice to renewal following discovery. Dkt. No. 36. That report was adopted by decision and order issued by Senior District Judge Thomas J. McAvoy, dated March 3, 2011. Dkt. No. 37.

**\*3** On August 15, 2012, plaintiffs filed an amended complaint, which remains the operative pleading in the action at this juncture. Dkt. No. 94. The amended complaint asserts five claims. *Id.* at ¶¶ 177–204. The first four arise under the NYLL, alleging defendants' failure to (1) pay laundry fees, (2) pay uniform fees, (3) compensate employees one additional hour for all ten hour "spread of hours" shifts, and (4) provide required breaks and pay regular time and overtime for all time worked. *Id.* at ¶¶ 177–97. The fifth claim arises under the FLSA, alleging defendants' failure to pay regular time and overtime to employees for all time worked. *Id.* at ¶¶ 198–204.

Portions of plaintiffs' claims, as pleaded in their original complaint, were challenged by the defendants in a motion for summary judgment filed on May 11, 2012. Dkt. No. 66. By decision and order dated August 24, 2012, Judge McAvoy granted the motion, in part, and dismissed certain of plaintiffs' claims, including (1) plaintiff Titchen's spread of hour claim for periods when he worked as either a cook or a key employee; (2) plaintiff Roach's spread of hours claim during periods that he worked as a cook; (3) plaintiff Longo's spread of hours claim for when she worked as a key employee; (4) plaintiffs Apple, Roach, and Titchen's claims for reimbursement for the costs of purchasing shirts with an Applebee's logo; and (5) all of the named plaintiffs' laundering claims except those related to the costs of laundering shirts bearing the Appelbee's logo.[4] Dkt. No. 98 at 14.

On August 10, 2012, prior to the filing of plaintiffs' amended complaint and the issuance of Judge McAvoy's decision on defendants' summary judgment motion, plaintiffs moved for expansion of the collective action certification to cover current and past employees of all locations for purposes of their FLSA claim, and class certification with respect to their

NYLL claims. Dkt. No. 91. Defendants have opposed that motion, Dkt. No. 104, and plaintiffs have replied to that submission, Dkt. No. 106. Plaintiffs' motion, which is now fully briefed and was the subject of oral argument conducted on October 24, 2012, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). [5]

### III. *DISCUSSION*

#### A. *FLSA Collection Action Certification*

##### 1. *Legal Standard*

The FLSA requires employers to pay their workers minimum wages and overtime compensation. 29 U.S.C. §§ 206, 207; *Helton v. Factor 5, Inc.,* No. 10–CV–4927, 2012 WL 2428219, at *3 (N.D. Cal. June 26, 2012). In addition, it allows similarly situated employees to pursue collective actions against an employer for violations of the 29 U.S.C. §§ 106 and 107. 29 U.S.C. § 216(b). Specifically, the FLSA provides, in relevant part, that

> [a]n action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

**\*4** 29 U.S.C. § 216(b). The collective action mechanism serves to both further the broad, remedial purposes of the FLSA, and to promote efficiency in adjudication of such claims. *Lynch v. United Servs. Auto. Ass'n,* 491 F.Supp.2d 357, 367 (S.D.N.Y.2007). As one court within this circuit has observed,

> [t]he collective action procedure allows for efficient adjudication of similar claims, so 'similarly situated' employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims.... [It also]

avoid[s] the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources. Requiring [the named plaintiff] and opt-in plaintiffs to file separate cases in multiple federal district courts would not be an economic use of judicial resources.

*Lynch,* 491 F.Supp.2d at 367, 371 (citing *Hoffman–La Roche Inc.* v. *Sperling,* 493 U.S. 165 (1989)).

Both in this circuit and elsewhere, courts generally employ a twopart analysis to determine whether an FLSA suit should proceed as a collective action. *Ruggles v. WellPoint, Inc.,* 591 F.Supp.2d 150, 157 (N.D.N.Y.2008) (Treece, M.J.); *Jacobs v. N.Y. Foundling Hosp.,* 483 F.Supp.2d 251, 265 (E.D.N.Y.2007), *aff'd,* 577 F.3d 93 (2d Cir.2009); *Helton,* 2012 WL 2428219, at *3. First, the court examines the named plaintiffs' pleadings and affidavits to determine whether they and the other members of the proposed class are sufficiently "similarly situated" to warrant issuing notice of the pendency of the suit, and to permit it to proceed as a collective action through discovery. *Ruggles,* 591 F.Supp.2d at 157 (citing *Lynch,* 491 F.Supp.2d at 367–68). [6]

The plaintiffs' burden at this preliminary juncture is minimal. *Helton,* 2012 WL 2428219, at *4; *Lynch,* 491 F.Supp.2d at 368. "Plaintiff need only make a 'modest factual showing' that plaintiff and potential collective action members were victims of 'a common policy or plan that violated the law.' " *Lynch,* 491 F.Supp.2d at 368 (quoting *Iglesias–Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 367 (S.D.N.Y.2007)); *Ruggles,* 591 F.Supp.2d at 158; *Helton,* 2012 WL 2428219, at *4; *Roebuck v. Hudson Valley Farms, Inc.,* 239 F.Supp.2d 234, 238 (N.D.N.Y.2002) (Mordue, J.). At this stage, the court does not weigh the merits, resolve factual disputes, or make credibility assessments. *Lynch,* 491 F.Supp.2d at 368; *Barrus v. Dick's Sporting Goods, Inc.,* 465 F.Supp.2d 224, 229–30 (W.D.N.Y.2006). Upon determining that the potential opt-in plaintiffs are similarly situated for purposes of authorizing notice, the court will conditionally certify the collective action, granting the named plaintiffs permission to send a court-approved notice to potential members, advising them of their right to join the action by filing consent forms with the court. *Lynch,* 491 F.Supp.2d at 368.

**\*5** "During the second stage, the court undertakes a more stringent factual determination as to whether members of a

class are, in fact, similarly situated." *Lynch,* 491 F.Supp.2d at 368; *Iglesias–Mendoza,* 239 F.R.D. at 367. This more exacting standard serves as a failsafe mechanism, off-setting the lenity shown by the court at step one. *See Levy v. Verizon Info. Servs. Inc.,* Nos. 06–CV–1583, 06–CV–5056, 2007 WL 1747104, at *3 (E.D.N.Y. June 11, 2007) ("Plaintiffs' burden [at the first step] is minimal because the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage."). This second step is typically initiated by the defendant's filing a motion for decertification.[7] *Iglesias–Mendoza,* 239 F.R.D. at 367.

### 2. *Application*

In their motion, plaintiffs propose extending the putative collective action class to cover all of defendants' current and former hourly employees, regardless of the location at which they have worked. Plfs.' Memo. of Law (Dkt. No. 91–1) at 20–22. In support of this proposal, plaintiffs emphasize that defendants lack policies that ensure employees will be appropriately compensated on the occasions that they work through a scheduled break. *Id.* at 20; Gifford Decl. Exh. E (Dkt. No. 91–7) at 11. Defendants' directives to managers include that overtime compensation is not permissible and all breaks must be accounted for. Gifford Decl. Exh. J (Dkt. No. 91–12) at 6, 16, 17. While most hourly employees are apparently able to punch out and back in at the beginning and endings of breaks, servers who have open tickets are not, and must instead sign a break log, following which the manager later must manually enter the break time into the payroll system. Gifford Decl. Exh. A (Dkt. No. 91–3) at 40; Gifford Decl. Exh. B (Dkt. No. 91–4) at 43; Gifford Decl. Exh. J (Dkt. No. 91–12) at 17. No forms are provided for employees to note instances in which they miss or work through breaks to ensure they are not entered into the payroll system. Gifford Decl. Exh. E (Dkt. No. 91–7) at 14–15. According to one of defendants' former managers, Ann–Marie Rudd, defendants trained their restaurant managers to improperly deduct breaks from the time records of hourly employees, even when the employees did not actually take a break. Gifford Decl. Exh. I (Dkt. No. 91–11) at 6, 8, 22–24, 28, 35.

Plaintiffs' motion is also supported by time records and pay stubs from plaintiff Roach, a comparison of which suggests deductions were made from his time card for breaks not taken. Gifford Decl. Exhs. M, N (Dkt.Nos.91–16, 91–17). During his deposition, Andrew Williams, one of defendants' current managers with experience in several of defendants'

Syracuse-area Applebee's restaurants, testified that he had heard complaints of occasions where hourly employees' time records would reflect that they took a break when, in fact, they had missed it. Gifford Decl. Exh. H (Dkt. No. 91–10) at 5–6. Finally, of the 78 declarations of present or former hourly employees submitted by the plaintiffs, at least 45 reveal claims of improper deductions from pay for breaks that were not taken. Gifford Decl. Exh. K (Dkt.Nos.91–13, 91–14).

**\*6** In their opposition to this portion of plaintiffs' motion, defendants argue that an individualized analysis is required to determine whether a deduction made for a break not taken has, in any particular instance, resulted in violation of the FLSA's minimum wage or overtime provisions. This argument, however, implicates questions of damages, not liability, and is not appropriately considered at this juncture. *Cf. Espinoza v. 953 Assocs. LLC,* 280 F.R.D. 113, 130 (S.D.N.Y.2011) ("Although plaintiff's claims may raise individualized questions regarding the number of hours worked and how much each employee was entitled to be paid, those differences go to the damages that each employee is owed, not to the common question of Defendants' liability."). At this stage of the proceedings, the only question is whether the plaintiffs have satisfied the requirement of making a modest showing that allegedly unlawful policies or practices have existed throughout defendants' restaurants at various locations. Having reviewed plaintiffs' submissions, I conclude that they have met this minimal burden, and therefore will extend certification of the collective action in this matter to all of defendants' locations, including those in Connecticut.[8]

To be sure, this case is materially distinguishable from those FLSA actions involving definitive companywide policies or practices that are supported by evidence indicating that the allegedly-unlawful practices are known and universally implemented. *See, e.g., Helton,* 2012 WL 2428219, at *4 (involving the two-months lost pay for employees of a software and video game developer that simply stopped paying its employees' wages and benefits). Nonetheless, plaintiffs' evidence suggests the existence of company-wide practices that have led to employees receiving less wages than actually earned. As was discussed above, the plaintiffs' burden at the preliminary juncture when seeking FLSA collective action certification is extremely modest, requiring only that the potential opt-in plaintiffs be similarly situated. In my view this modest burden has been met by plaintiffs' submissions.

Accordingly, and without making any determination on the merits, or whether this case will ultimately survive an anticipated decertification motion by the defendants, I will grant plaintiffs' application to certify the matter as a collective action, applicable to past and present hourly employees at all of defendants' restaurant locations in New York and Connecticut.

**B.** *Rule 23 Class Certification*

In their amended complaint and pending motion, plaintiffs seek class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure, with respect to each of the four NYLL claims, to be broken down into the following four subclasses:

a. 'Class I–A'—employees entitled to but who never received required laundry fees as part of and in addition to their wages as required by NYLL §§ 652, 655, 663, and, particularly, 12 NYCRR § 137–1.8 (First Claim for Relief); and/or

**\*7** b. 'Class I–B'—employees entitled to but who never received required uniform fees as part of and in addition to their wages as required by NYLL §§ 652, 655, 663, and, particularly, 12 NYCRR § 137–1.8 (Second Claim for Relief); and/or

c. 'Class I–C'—employees entitled to but who never received the required additional hour of work time as part of their wages where their 'Spread of hours,' as that term is defined in 19 NYCRR §§ 137–3.11 and 142–2.18, exceeded 10–hours and payment of the additional hour was required under NYLL §§ 652, 655, 663, and, particularly, 12 NYCRR §§ 137–1.7, 137–2.6, 142–1.1, and 142–2.4 (Third Claim for Relief); and/or

d. 'Class I–D'—employees entitled to rest periods and to be paid for all hours worked, including those hours as articulated in the Third and Fourth Claims for Relief, but who were not given proper rest periods or paid for all hours to which they were entitled in violation of New York's minimum wage and overtime wage requirements pursuant to NYLL §§ 190, *et seq*, 650, *et seq*, and, particularly, 19 NYCRR §§ 137–1.3 and 142–2.2 (Fourth Claim for Relief).

Amended Complaint (Dkt. No. 94) ¶ 22. Plaintiffs estimate that the members of each of the four classes could extend into the thousands, and contend that they have met the requirements for class certification under Rule 23.

As an exception to the general rule that litigation should be conducted by and only on behalf of the named parties, an action maybe maintained by one or more named plaintiffs on behalf of a class of individuals when they are members of a group that possess a common interest and have suffered the same injury. *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2550 (2011); *Califano v. Yamasaki,* 442 U.S. 682, 700–01 (1979). To qualify for class certification, a party must meet the requirements of Rule 23(a) by demonstrating that

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24, 33 (2d Cir.2006). In addition, the party seeking certification must also meet one of the requirements of Rule 23(b), which sets out the different varieties of class actions available under the rule. *See generally* Fed.R.Civ.P. 23(b); *Brown v. Kelly,* 609 F.3d 467, 476 (2d Cir.2010); *Thompson v. Linvatec Corp.,* No. 06–CV–0404, 2010 WL 2560524, \*3 (N.D.N.Y. June 22, 2010) (McCurn, J.). To qualify for certification, the plaintiff must meet each of the Rule 23 requirements by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202–03 (2d Cir.2008).

Unlike its FLSA collective action counterpart, the certification decision under Rule 23 requires "rigorous analysis." *Wal–Mart Stores, Inc.,* 131 S.Ct. at 2551 (citing *Gen. Tel. Co. of SW v. Falcon,* 457 U.S. 147, 161 (1982)). Significantly, the Supreme Court has noted that "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Gen. Tel. Co. of SW,* 457 U.S. at 160 (internal quotation marks omitted). In recognizing the uncertainty that resulted from its prior holdings, the Second Circuit articulated the following guidelines in deciding motions for class certification:

*8 (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*In re Pub. Offerings Sec. Litig.,* 471 F.3d at 41.

In light of the inherent interplay between the class certification inquiry and the merits of a plaintiff's claims, one court has cautioned that "[a] motion for class certification should not ... become a mini-trial on the merits." *Lewis Tree Serv., Inc. v. Lucent Techs.,* 211 F.R.D. 228, 231 (S.D.N.Y.2002). At the certification stage, the court should remained focused on whether the requirements of Rule 23 have been met, and not whether the plaintiffs are likely to prevail on the merits of their claims. *Flores v. Anjost Corp.,* 284 F.R.D. 112, 122 (S.D.N.Y.2012). In determining whether those prerequisites have been met, a court must remain mindful of the public policy considerations behind Rule 23, and the Second Circuit's preference that Rule 23 be given liberal construction. *Flores,* 284 F.R.D. at 122; *Brickey v. Dolgencorp., Inc.,* 272 F.R.D. 344, 349

(W.D.N.Y.2011); *Espinoza v. 953 Assocs. LLC,* 280 F.R.D. 113, 124 (S.D.N.Y.2011).

**1. *Numerosity***

Plaintiffs' claims involve individuals who have worked at the relevant times as non-exempt employees at defendants' sixty-one Applebee's locations. Amended Complaint (Dkt. No. 94) at ¶¶ 8, 18, 22. Because, by plaintiff's estimate, there could be as many as 10,000 present and former employees that fall within those categories, *id.* at ¶ 23, and defendants have not disputed this, I find that plaintiffs easily satisfy the numerosity requirement of Rule 23(a). *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) ("[N]umerosity is presumed at a level of 40 members[.]"); *accord LaFlamme v. Carpenters Local No. 370 Pension Plan,* 212 F.R.D. 448, 452 (N.D.N.Y.2003) (Hurd, J.).

**2. *Commonality/Typicality***

The next two provisions of Rule 23(a) require the existence of common questions of law or fact, and that the claims being raised by the named plaintiffs are typical of the claims of the class. Fed.R.Civ.P. 23(a)(2)(3); *Wal–Mart Stores, Inc.,* 131 S.Ct. at 2550. "These two requirements may be considered together, as they 'tend to merge.' " *Selzer v. Bd. of Educ. of City of N.Y.,* 112 F.R.D. 176, 178 (S.D.N.Y.1986) (quoting *Gen. Tel. Co. of SW,* 457 U.S. at 157 n. 13).[9]

*9 As the Supreme Court noted in *Wal–Mart,* a degree of commonality is always present where the plaintiffs have moved for certification. *See Wal–Mart,* 131 S.Ct. at 2551 ("Th[e] language [requiring that questions of law or fact common to the class] is easy to misread, since any competently crafted class complaint literally raises common questions." (internal quotation marks omitted)). To justify class certification, however, the named plaintiffs must demonstrate that their claims "can productively be litigated at once." *Id.* In other words, the claims "must depend upon a common contention ... capable of class-wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The fact that this inquiry may be inextricably intertwined with a merits-based inquiry does not offend the intent of Rule 23. *See id.* at 2552 ("[T]here is nothing unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g .,* jurisdiction and venue, is a familiar feature of litigation." (citing *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 676–77 (7th Cir.2001)).

As one court has noted, to satisfy the requirements of Rule 23, "[p]laintiffs must produce some 'quantum of evidence to satisfy the commonality and typicality requirements, usually in the form of affidavits, statistical evidence, or both, tending to show the existence of a class of persons affected by company-wide policy or practice of discrimination.' " *Eng–Hatcher v. Sprint Nextel Corp.*, No. 07–CV–7350, 2009 WL 7311383, at *6 (S.D.N.Y. Nov. 13, 2009) (quoting *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 95 (S.D.N.Y.2006)).

To the extent that the Supreme Court's decision in *Wal–Mart* called into question whether class certification is appropriate in wage and hour cases, "[t]he weight of authority rejects th[at] argument[.]" *Morris v. Affinity Health Plan, Inc.*, No. 09–CV–1932, 2012 WL1608644, at *2 (S.D.N.Y. May 8, 2012) (collecting cases). Applying a more rigorous analysis in light of *Wal–Mart*, however, courts have looked to whether company-wide policies or practices exist that result in a common injury susceptible of class wide resolution. *See Ramos v. SimplexGrinnell LP*, 796 F.Supp.2d 346, 356 (E.D.N.Y.2011) (rejecting the cases cited by the defendant in which liability was not susceptible to class-wide proof); *Espinoza*, 280 F.R.D. at 130 ("Plaintiffs have alleged a common injury that is capable of class-wide resolution without inquiry into multiple employment decisions applicable to individual class members.").

### a. *Laundry and Uniform Fees*

The first two claims for which plaintiffs seek class certification surround reimbursement for uniform and laundry fees. Under the NYLL, as it existed prior to January 1, 2011, a violation is established if the cost of obtaining and/or maintaining a uniform, as that term is defined by regulation, results in an employee's compensation being reduced below the statutory minimum wage. *Flores*, 2012 WL 2339267, at *4. This portion of the plaintiffs' NYLL claim has been significantly narrowed as a result of Judge McAvoy's decision dated August 24, 2012, and now focuses only on shirts with the Applebee's logo. As a result, the relevant commonality inquiry is whether plaintiffs' proposed class members "suffered the same injury" such that the purchase or laundering of shirts with an Applebee's logo resulted in employees' compensation being reduced below the statutory minimum wage. *Wal–Mart Stores, Inc.*, 131 S.Ct. 2551.

**\*10** As it relates to the purchasing of Applebee's shirts, only one of the named plaintiffs, Melissa Longo, retains a viable cause of action with regard to this portion of plaintiffs' NYLL claims. [10] Paraskevas–Thadani Decl. Exh. B (Dkt. No. 104–6) at 12. Plaintiffs have submitted form declarations from present and former Applebee's employees addressing the uniform claim. Nearly every declaration provides as follows:

> During my time at Applebee's, I was required to wear a uniform, either consisting of a polo shirt with an Applebee's logo or an all black uniform, that was not appropriate to wear outside of work, and I was never compensated for the cost of them.
>
> *See generally* Gifford Decl. Exh. K (Dkt.Nos.91–13, 91–14).

In opposition to the certification motion, defendants have submitted evidence that suggests that it is not their policy to require employees to purchase items with an Applebee's logo. This evidence includes a transcript of the deposition of Susan Sabio, the defendants' Director of Human Resources, in which she testified that defendants' provided employees with shirts with Applebees' logos and aprons. ParaskevasThadani Decl. Exh. M. (Dkt. No. 140–6) at 94. In addition, defendants submitted declarations of nineteen managers and eight directors of operations confirming that employees were not required to purchase uniform clothing with an Applebee's logo. [11] Paraskevas–Thadani Decl. Exh. R (Dkt. No. 104–12). In addition, defendants have submitted ninetyone declarations of hourly employees working at twenty-three different Applebee's restaurants, all stating that they were not required to pay for any uniform item with an Applebee's logo. [12] Paraskevas–Thadani Decl. Exh. O (Dkt. No. 104–10).

Careful analysis of the competing evidence presented on this issue reveals that there is no commonality between plaintiff Longo and the proposed class members. Plaintiff's evidence, consisting of form declarations, does not squarely address whether defendants required their employees to purchase uniform clothing with an Applebee's logo on it. Instead, the common paragraph in nearly all of those declarations suggests that the clause "and I was never compensated for the cost of them" could refer to the polo shirt with the Applebee's logo or the all-black uniform. That paragraph also fails to squarely state that employees were affirmatively required to purchase the polo shirts with the logo, for which, according to plaintiffs, reimbursement would be necessary. As a result, I cannot conclude that plaintiffs have demonstrated that

plaintiff Longo has suffered a common injury with the proposed class members, sufficient to find that plaintiffs have satisfied the commonality requirement.

Finally, I note that the only one piece of evidence in the record that unequivocally states that an employee purchased uniform clothing from defendants directly is the transcript of plaintiff Longo's deposition. Paraskevas–Thadani Decl. Exh. B (Dkt. No. 104–6) at 12. Plaintiff Longo did not testify, however, that *all* of defendants' employees were *required* to purchase aprons. *Id*. Instead, her testimony is that *she* purchased aprons every other month. *Id*. This is not sufficient to meet the typicality requirement under Rule 23. *See, e.g*., *Kapiti v. Kelly*, No. 07–CV–3782, 2008 WL 3874310, at *6 (S.D.N.Y. Aug. 18, 2008) (finding that the plaintiffs failed to satisfy the typicality requirement where "[p]laintiff has not identified 'any other person who has been subjected to the same or similar treatment as he has' and 'only speculates that such is the case.' " (quoting *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir.1983) (alterations omitted)). Accordingly, I conclude that the evidence does not support a finding that plaintiffs meet the typicality requirement with respect to their uniform claim.

**\*11** The second component of this NYLL class claim concerns laundering of uniforms, which is, by virtue of Judge McAvoy's decision, limited to shirts bearing an Applebee's logo. The logo shirts were only in place as part of a defendant's uniform until approximately 2009. *See generally* Paraskevas–Thadani Decl. Exhs. Q, R (Dkt.Nos.104–10, 104–12). Nearly all of the form affidavits submitted by plaintiffs contain the following paragraph relating to whether defendants made laundry facilities available to their employees:

> The Applebee's restaurant in which I worked did not have a washer and dryer for the employees to use to wash our uniforms and the company did not launder our uniforms for us.

*See generally* Gifford Decl. Exh. K (Dkt.Nos.91–13, 91–14). In opposition, defendants submitted forty-seven declarations from hourly employees who state that washers and dryers were available in the restaurant where they worked that was available for use by employees in laundering their uniform items. Paraskevas–Thadani Decl. (Dkt. No. 104–5) at ¶ 25; Paraskevas–Thadani Decl. Exh. Q (Dkt. No. 104–10). Notably, during her deposition testimony, plaintiff Longo confirmed the availability of such washers and dryers, and

stated that she has witnessed hourly employees washing their logo shirts using those facilities. ParaskevasThadani Decl. Exh. B (Dkt. No. 104–6) at 45–46.

As with the uniform reimbursement claim, I cannot find that the record evidence gives rise to a common question with respect to the uniform laundering claim. Generally, plaintiffs argue that the issue to be resolved is whether defendants made available laundry facilities for their employees during the time that the uniform requirement included an item with an Applebee's logo. However, the plaintiffs' affidavits, considered in light of the affidavits and deposition testimony submitted by defendants, are not sufficient to demonstrate that defendants failed to make available laundry facilities to their employees such that the employees' laundry costs, resulting from washing their uniform items with the Applebee's logo, decreased their pay below the minimum wage. For this reason, I find that plaintiffs have not met the commonality requirement as it relates to this claim.

With respect to typicality, I also find that this requirement has not been satisfied because, again, the competing record evidence that suggests defendants failed to make laundry facilities available to their employees is speculative at best. *Kapiti*, 2008 WL 3874310, at *6. Indeed, plaintiff Longo even testified that she witnessed the line cooks use the washer and dryer at her restaurant to wash their clothes. ParaskevasThadani Decl. Exh. B (Dkt. No. 104–6) at 14–15.

**b. *Spread of Hours***

Plaintiffs' spread of hours claim centers upon a former New York State regulation, intended principally for application in the restaurant business, providing that, "[o]n each day in which the spread of hours exceeds 10, an employee shall receive one hour's pay at the basic minimum hourly wage before allowances, in addition to the minimum wages otherwise required by this Part." [13] 12 N.Y.C .R.R. § 137–1.7 (2010); *Shahriar v. Smith & Wollensky Rest. Group, Inc*., 659 F.3d 234, 242 (2d Cir.2011). In his decision dated August 24, 2012, addressing a split of authority on this question, Judge McAvoy held that this regulation applies only to workers compensated at the minimum wage rate. Dkt. No. 98 at 6.

**\*12** In support of this portion of their motion, plaintiffs submitted declarations from sixty of defendants current and present employees claiming not to have been properly compensated for working a ten hour period. Gifford Decl. Exh. K (Dkt.Nos.91–13, 91–14). Twenty-one of those

declarants, however, are precluded from sustaining a spread of hours claim against defendants either because they earned more than the minimum wage or because they never worked a ten-hour spread. *See generally id*. Defendants have countered with sixty-seven declarations from hourly employees, managers, and directors of operations that purport to demonstrate that defendants' policies and practices were in full compliance with New York State's spread of hours regulation that was effective until January 1, 2011. Paraskevas–Thadani Decl. Exhs. Q, R (Dkt.Nos.104–10, 104–12).

Unlike plaintiff's uniform and laundry claims, I find that plaintiffs have submitted sufficient evidence to find they satisfy the commonality requirement for their spread of hours claim. The common issue that must be answered is whether defendants' policies—or lack thereof, as plaintiffs argue—resulted in defendants' failure to compensate employees earning minimum wage for an additional hour as required under 12 N.Y.C.R.R. § 137–1.7 (2010). *See Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 910 (7th Cir.2012) (finding that the plaintiffs' satisfied the commonality requirement where they "maintain[ed] a common claim that unofficial company policy compelled them to perform duties for which they should have been entitled to collect overtime"). Because the declarations submitted by plaintiffs are explicit on this point, I have no hesitation relying on them. [14]

Similarly, I find that plaintiffs have satisfied the typicality requirement as it relates to this claim. *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir.1993) ("Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.").

**c.** *Rest Period Claim*
The remaining portion of plaintiffs' NYLL claims center upon their contention that they were denied pay for all hours worked as a result of managers allegedly altering time records to reflect that employees were given a break that they had not actually taken. [15] Amended Complaint (Dkt. No. 94)at ¶¶ 193–197. In support of this portion of their motion, plaintiffs are unable to point to a company-wide policy that, in essence, has forced local managers to violate the NYLL. There is sufficient evidence, however, to give rise to the suggestion that it was common practice, at the relevant times, for managers to change time records after

an employee's shift to reflect that he took a break, even if he did not actually take it. For example, Rudd explicitly testified that she witnessed managers altering time records and instructed them otherwise. Paraskevas–Thadani Decl. Exh. D (Dkt. No. 104–6) at 28. Here, then, the common question among the proposed class members is whether defendants' alleged practice of altering time records resulted in an employee receiving inadequate wages for the time they actually worked. Accordingly, I find that plaintiffs have satisfied the commonality requirement for their rest period claim. *See Espinoza*, 80 F.R.D. at 127 ("[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification." (collecting cases)).

**\*13** With respect to typicality, plaintiffs' evidence suggests that defendants' failure to adequately compensate their employees arises from a single practice: managers altering time records. *See, e.g.*, ParaskevasThadani Decl. Exh. D (Dkt. No. 104–6) at 28; Gifford Decl. Exh. A (Dkt. No. 91–6) at 7. As a result, I find that plaintiffs have satisfied the typicality requirement for this claim. *See Espinoza*, 280 F.R.D. at 128 ("Where the named plaintiff as well as members of the proposed class all have similar claims arising from the same scheme, the typicality requirement is satisfied [.]" (internal quotation marks omitted)).

**3.** *Adequacy of Representation*
The adequacy of representation requirement imposed under Rule 23(a)(4) implicates a two-part inquiry: "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir.2008). This inquiry "serves to uncover conflicts of interests between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Because I have concluded that plaintiffs satisfy the commonality and typicality requirements for their spread of hours and rest period claims under the NYLL, I will only address whether they have satisfied the adequacy of representation requirement with respect to those two claims.

**a.** *Spread of Hours Claim*
Because the parties do not question whether the named plaintiffs serve as adequate representatives of the purposed

class, and I have not found any reason to find them inadequate, I conclude that plaintiffs have satisfied this requirement.

**b.** *Rest Time Period Claim*

The focus of defendants' opposition is whether the named plaintiffs have standing to represent the class' interests because there are potential conflicts of interest as it relates to the rest period claim. Specifically, during a portion of the relevant time period, plaintiff Apple was an assistant manager of Applebee's restaurants in Clay and Auburn. Paraskevas–Thadani Exh. A (Dkt. No. 104–6) at 5–7. Although she also testified that she never deducted time from an employee's payroll record when a break was not actually taken, if plaintiffs prove that defendants' practice violates the NYLL meal break requirement, including at the restaurant in which she worked while serving in a managerial capacity, plaintiff Apple faces the potential for individual liability under both the FLSA and the NYLL. *See Vysovsky v. Glassman,* No. 01–CV–2531, 2007 WL 3130562, at *17–18 (S.D.N.Y. Oct. 23, 2007) (finding individual liability under the New York Labor Law); *Bravo v. Eastpoint Int'l, Inc.,* No. 99–CV9474, 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001) ("Individuals may be liable as joint employers under the FLSA only if they possess the power to control the workers in question." (citing *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132 (2d Cir.1999)). [16] In that scenario, a conflict of interest would certainly arise for plaintiff Apple's counsel, who, at that point, would also represents the class.

**\*14** Similarly, plaintiffs Longo and Titchen both testified at their depositions that, when acting in managerial capacities for defendants, they shaved not only their own time, but time of other hourly workers. Paraskevas–Thadani Decl. Exh. B (Dkt. No. 104–6) at 16–18 (Longo Dep. Tr.); Paraskevas–Thadani Decl. Exh. C (Dkt. No. 104–6) at 23 (Titchen Dep. Tr.). Serious concerns arise from these potential conflicts, making it undesirable for those plaintiffs to represent the putative class members. As a result, I find that plaintiffs have failed to satisfy the adequacy of representation requirement for their rest period claim.

**4.** *Ascertainability*

"Although Rule 23(a) does not expressly require that a class be definite in order to be certified, Second Circuit courts have implied a requirement that a class be identifiable before it may be properly certified." *Colozzi v. St. Joseph's Hosp. Health Ctr.,* 275 F.R.D. 75, 85 (N.D.N.Y.2011) (Hurd, J.).

"An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of N.Y.,* 282 F.R.D. 360, 373 (S.D.N.Y.2012) (internal quotation marks omitted). While part of the overarching Rule 23(a) inquiry, which has been described as demanding, the ascertainability requirement is more relaxed as applied in this circuit. *Flores,* 2012 WL 2339267, at *8. Additionally, "class members need not be ascertained prior to certification, but must be ascertainable at some point in the case." *Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 338 (S.D.N.Y.2003).

Because the only remaining claim that may warrant class certification is plaintiffs' spread of hours claim at this stage of the analysis, I have only addressed ascertainability as it relates to that claim.

The class to be certified for plaintiff's spread of hours claim is ascertainable. Specifically, the purported class would consist of any of defendants' employees earning minimum wage that worked a ten-hour spread and was not compensated for the required extra hour. That identifying those employees who may fall into this class may require an analysis of each employees' time records does not make the class any less ascertainable. *See Flores,* 284 F.R.D. at 123 (finding ascertainability where "[t]he class can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements"); *Noble,* 224 F.R.D. at 341–42 ("[C]ertification is routinely granted where the proposed class definition relies in part on the consideration of the defendants' alleged liability."). As a result, I find that plaintiffs have satisfied the ascertainability requirement of their spread of hours claim.

**5.** *Rule 23(b) Requirements*

In addition to meeting the requirements of Rule 23(a), plaintiffs must also qualify their putative class action under one of the paradigms set forth in Rule 23(b). Plaintiffs assert that their class action satisfies Rule 23(b)(3), which allows certification if

> **\*15** [t]he court finds that the questions of law or fact common class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed.R.Civ.P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc., 521 U.S. at 623*. The Second Circuit has held that

> [c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.

*Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir.2002)*. "The predominance requirement ... ensures that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' " *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir.2007)* (quoting *Amchem Prods., Inc., 521 U.S. at 615* (alterations omitted)).

Here, with respect to plaintiffs' spread of hours claim, the common issue to all purported class members is whether defendants exercised a practice that resulted in minimum-wage employees not receiving the extra hour pay when they worked a ten-hour spread. For a Rule 23(b)(3) inquiry, the question is whether that issue is subject to generalized proof that predominates over those issues subject to individualized proof. *Moore, 306 F.3d at 1252*. I find that is the case in this action. Specifically, the generalized proof should demonstrate whether defendants applied a practice that resulted in minimum wage employees earning less money than deserved. The individualized proof will relate to the number of occasions defendants failed to pay an employee what he earned, which ultimately is a question bearing on damages, not liability. For that reason, I find that plaintiff's spread of hours claim satisfies the criteria under Rule 23(b)(3).

## III. *SUMMARY AND RECOMMENDATION*

Plaintiffs' complaint in this matter asserts several claims under the FLSA and NYLL arising from allegedly unlawful policies and practices employed by defendants. As a result, plaintiffs have moved to have the action certified as a

collective action under the FLSA and a class action pursuant to Rule 23. With respect to the motion to certify a collective action under the FLSA, because I find that plaintiffs have met their met their modest burden of demonstrating the existence of similarly situated employees, I will preliminarily certify the matter as a collective action.

With respect to plaintiff's motion to certify the action as a class action, only plaintiffs' spread of hours and rest period claims meet the commonality and typicality requirements of Rule 23(a). The rest period claim, however, fails to satisfy the adequacy of representation requirement. Having determined that the spread of hours claim meets the requirements of ascertainability and under Rule 23(b)(3), I find that class certification is appropriate for this claim only. Accordingly, it is hereby

 **\*16** ORDERED that certification of this action as a collective action for purposes of the FLSA be GRANTED, in part, and that the persons authorized to opt-in as collective action plaintiffs include those falling within the following class:

> Those of defendants' employees who were employed at any time within three years prior to commencement of this action, and who were not paid regular and/or overtime compensation for all the hours to which they were entitled, including but not limited to those hours as articulated in the Third and Fourth Claims for Relief in plaintiffs' amended complaint, when such time was compensable time subject to the regular and overtime provisions of the FLSA pursuant to 29 U.S.C. §§ 206, 207, and 216 (plaintiffs' amended complaint, Fifth Claim for Relief);

and it is further respectfully

RECOMMENDED that plaintiffs' motion for Rule 23 class certification with regard to their claims under the NYLL be GRANTED in part as follows:

1. The class to be certified is any of defendants' current or former employees earning minimum wage between April 2005 and August 2010, and who, during that same time period, worked a ten-hour spread but did not receive

the additional hour of compensation as required by 12 N.Y.C.R.R. § 137–1.7 (2010);

   2. The only claim to be certified for class action is plaintiffs' NYLL spread of hours claim;

and it is further

RECOMMENDED that, except as described in the preceding paragraph, plaintiffs' motion for Rule 23 class certification be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Footnotes

1   Key employees can also serve as approved trainers who train new employees hired by defendants. Amended Complaint (Dkt. No. 94) at ¶ 135. These employees typically receive $0.50 more per hour during those shifts when they are engaged in training. Id. at ¶ 136.

2   Plaintiff Roach also worked at an Applebee's in Vestal, New York. Roach Aff. (Dkt. No. 30–6) at ¶ 6.

3   Plaintiff Titchen also worked at an Applebee's in Vestal, New York, and in an Applebee's located outside of Castle Rock, Washington. Titchen Aff. (Dkt. No. 31–1) at ¶ 6. There does not appear to be any connection between the Applebee's location in Washington state and the defendants, whose operations are allegedly centered in New York and Connecticut. Amended Complaint (Dkt. No. 94) at ¶ 3.

4   Because plaintiff's amended complaint did not add any new claims, the fact that Judge McAvoy issued his decision after its filing is of no relevance. The purpose of plaintiff's amended complaint was to accurately reflect the status of the claims and classes sought to be certified, and to change the relief requested from equitable to monetary. Plfs.' Memo. of Law (Dkt. No. 90–1) at 4.

5   Unlike the pending application for class certification under Rule 23, which is considered to be dispositive and thus beyond my non-consensual jurisdiction as a magistrate judge, Nelson v. Nationwide Mortg. Corp., 659 F.Supp. 611, 619–20 (D.D.C.1987), plaintiffs' motion to certify a collective action under the FLSA is regarded as non-dispositive in nature, and thus falls within my purview. Ruggles v. WellPoint, Inc., 591 F.Supp.2d 150, 156 n .6 (N.D.N.Y.2008) (Treece, M.J.); Prizmic v. Armour, Inc., No. 05–CV–2503, 2006 WL 1662614, at *1 n. 1 (E.D.N.Y. June 12, 2006); Barrus v. Dick's Sporting Goods, Inc., 465 F.Supp.2d 224, 229 n. 1 (W.D.N.Y.2006).

6   Some courts also require that a plaintiff seeking certification of a collective action under section 216(b) establish that there are similarly situated employees with an interest in opting in and becoming plaintiffs in the case. Dybach v. State of Florida Dep't of Corr., 942 F.2d 1562, 1567 (11th Cir.1991); Ohsann v. L.V. Stabler Hosp., No. 07–CV–0875, 2008 WL 2468559, at *2 (M.D. Ala. June 17, 2008); but see Cuzco v. Orion Builders, Inc., 477 F.Supp.2d 628, 634 (S.D.N.Y.2007) ("Plaintiff is not required to indicate specifically how many potential opt-in plaintiffs may join the suit, nor must an FLSA plaintiff join with other potential plaintiffs at the time a suit is filed in order for a representative action to be pre-certified."); Dumitrescu v. Mr. Chow Enters., Ltd., No. 07–CV–3601, 2008 WL 2600667, at *6 (S.D.N.Y. June 30, 2008) (finding that the fact that plaintiffs were unable to identify any persons desiring to opt-in was not deemed fatal where there were at least fifty other tipped employees who were subject to the same policies as the plaintiffs). Here, the plaintiffs in this case have likely satisfied this potential, additional factor, as demonstrated by the 78 affidavits they have collected from potential class members. Gifford Aff. Exh. K (Dkt. Nos.91–13, 91–14).

7   Here, in their opposition to plaintiffs' motion, defendants urge the court to proceed to step two of the FLSA analysis, and in essence preemptively de-certify the FLSA claim as a collective action. Defs.' Memo. of Law (Dkt. No. 104) at 29. Engaging in the in-depth factual analysis required at that step would be premature at this juncture, however, because it is not clear from the record that defendants produced class-wide, merit-based discovery that would render discovery complete as it relates to all potential opt-in plaintiffs. Compare Defs.' Memo. of Law (Dkt. No. 104) at 29 n. 21 with Plfs.' Reply Memo of Law (Dkt. No. 106) at 5 n. 2. See Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 467–68 (N .D.Cal.2004) ("[E]ven accepting that leapfrogging over necessary steps is proper, the court believes that such an approach is inappropriate in this case [because] ... it is unclear whether the factual record of this case is complete.").

8   In their motion, plaintiffs seek an order directing that a notice, in the form of that previously approved by the court, be forwarded to the additional potential collective action opt-in plaintiffs, and that defendants be required to produce a list, in PDF format, of all present and former hourly employees for purposes of sending those notices. Plfs.' Memo. of Law (Dkt. No. 91–1) at 21–22. The court is cognizant of the need for expediency, given the potential effect of the FLSA's statute of limitations that may result in expiring claims literally on a daily basis. See Lynch, 491 F.Supp.2d at 371 ("Unlike Rule 23 class actions, the statute of limitations for those who have

not filed Consent forms is not tolled by the commencement of this action. As a result, the statute of limitations continues to run on each individual's claim until they file a Consent Form with this court. Thus, every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover." (internal citations omitted)). Accordingly, defendants are directed to provide such a list within twenty-one days of the date of this decision. The parties are directed to negotiate the form of that notice, as well as the manner in which it will be promulgated, within that same twenty-one day period and notify the court of whether agreement has been reached.

9    In addition to overlapping with the typicality inquiry, the commonality requirement under Rule 23(a) also possesses many of the same attributes with the predominance requirement under Rule 26(b) (3). *Vang v. Kohler,Co*., No. 09–CV0842, 2012 WL 2917788, at *4 (E.D.Wis. July 17, 2012). Rule 23(b)(3), however, imposes a more demanding threshold, requiring not only that common issues exist, but that they dominate over others in the action. *Vang*, 2012 WL 291778, at *4 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997); *Nicholson v. UTi Worldwide, Inc.*, No. 09–CV–0722, 2011 WL1775726, at * 7 (S.D.Ill. May 10, 2011)).

10   According to Judge McAvoy's decision, plaintiffs Roach and Titchen were not required to purchase such shirts. Dkt. No. 98 at 12.

11   By way of example, Michael Huffcut, the director of operations responsible for Applebee's restaurants in the Southern Tier of New York, stated that, when he was general manager, defendants supplied t-shirts with Applebee's logos for BOH employees, and that FOH employees were provided three polo shirts with an Applebee's logo on it upon hiring and that if an employee's shirt became soiled, he would issue a clean one. Huffcut Decl. (Dkt. No. 104–12) at 47. John Bargnesi, a training manager at the Milestrip Road Applebee's in Blasdell, New York, was employed by defendants in 2007. Bargnesi Decl. (Dkt. No. 104–12) at 10. He averred that, approximately three years ago, defendants supplied hourly FOH employees with polo shirts that had an Applebee's logo, and BOH employees received t-shirts with Applebee's logos. *Id*. at 11. He also stated that employees received between two and five shirts upon hiring. *Id*. at 12. The uniform policy that is currently in place requires that hourly employees wear their own clothes, except for hats for BOH employees and aprons for FOH employees. *Id*. at 11.

These two examples are representative of the information contained in the remaining declarations of managers and directors of operations. Although each declaration contains slightly different language, none are materially different from one another or suggest that, at any time, defendants required employees to purchase clothing with an Applebee's logo. *See generally* Paraskevas–Thadani Decl. Exh. R (Dkt. No. 104–12).

12   By way of example, Priscilla Brigden was hired by defendants in October 2000. Brigden Decl. (Dkt. No. 104–10) at 32. She has worked as a host, prep cook, general utility, and is currently a line cook. *Id*. Up until five years ago, employees were required to wear a shirt with an Applebee's logo, but they were not required to pay for them. *Id*. at 33. Upon hiring, she received at least two shirts, and she never paid for additional ones when she needed one. *Id*. Currently, as a line cook, she is required to wear black t-shirts, jeans and black shoes with a hat that has an Applebee's logo. *Id*. Defendants provide the hat, and she is required to purchase the remaining items. *Id*.

Brigden's declaration is similar in substance to the remaining ninety declarations from hourly employees submitted by defendants. Although each declaration contains slightly different language, none are materially different from one another or suggest that, at any time, defendants required employees to purchase clothing with an Applebee's logo. *See generally* Paraskevas–Thadani Decl. Exh. O (Dkt. No. 104–10).

13   That provision was replaced by a regulation that also requires employers to pay employees one extra hour's pay, at minimum wage, when their work shift spans a period longer than ten hours. N.Y.C.R .R. § 146–1.6; *see also Shahriar*, 659 F.3d at 242 n. 4. None of the named plaintiffs were working when this revised provision became effective.

14   Although the declarations contain form paragraphs as it relates to plaintiffs' spread of hours claim, they expressly state that the declarant worked a ten hour spread but was not compensated for the extra hour. *See, e.g*., Christa Decl. (Dkt. No. 91–13) at 13.

15   The NYLL requires that hourly employees, such as the plaintiffs, be provided with a one half hour rest break for every shift of six hours or more. N.Y. Labor Law § 162.

16   In *Herman*, the Second Circuit determined that,

[b]ecause the [FLSA] defines employer in such broad terms, it offers little guidance on whether an individual is or is not an employer. In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case. Under the 'economic reality' test, the relevant factors include 'whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'

*Herman*, 172 F.3d at 139 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir.1984)).

2009 WL 1706535
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Matthew SEXTON, individually, and on
behalf of all others similarly situated, Plaintiff,
v.
FRANKLIN FIRST FINANCIAL, LTD., Frederick L.
Assini, Keith Dizeo, and Ellen Spaventa, Defendants.

No. 08–CV–04950 (JFB)
(ARL). | June 16, 2009.

**Attorneys and Law Firms**

Erik Harald Langeland of Erik H. Langeland, New York, NY,
for plaintiff.

Neil H. Greenberg of Neil H. Greenberg & Associates,
Westbury, NY, for the defendants.

**Opinion**

### MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

*1 Plaintiff Matthew Sexton (hereinafter, "plaintiff")
commenced this action on behalf of himself and others
similarly situated on December 9, 2008, seeking unpaid
minimum wages and overtime compensation from defendants
Franklin First Financial, Ltd., Frederick L. Assini, Keith
Dizeo, and Ellen Spaventa (collectively, "defendants"),
pursuant to the Fair Labor Standards Act of 1938, as amended,
("FLSA"), 29 U.S.C. § 201, et seq., as well as New York
Labor Law. [1] Plaintiff now moves, with respect to Counts
One and Two of the amended complaint, for conditional
certification as an FLSA collective action pursuant to 29
U.S.C. § 216(b) ("Section 216(b)"). Plaintiff also moves for
court authorized notice to all individuals who are similarly
situated in this potential collective action, and, to facilitate
such notice, the production by defendants of a computer-
readable data file containing the names, addresses, and
telephone numbers of certain of defendants' former and
current employees. For the reasons set forth below, plaintiff's
motion for conditional certification under Section 216(b)
of the FLSA, as well as court authorized notice and the
production by defendants of a data file of potential opt-in

plaintiff's contact information, is granted. However, the scope
of such notice shall be limited to only those individuals who
are "similarly situated" to the named plaintiff, as set forth in
this Memorandum and Order. The Court further orders that
the parties jointly submit a modified notice in accordance with
this Memorandum and Order for approval by the Court within
thirty (30) days of the date of this Order.

Also pending before the Court is defendants' motion for
partial summary judgment pursuant to Fed.R.Civ.P. 56(c)
dismissing the claims of certain opt-in plaintiffs, on the basis
that such claims are time-barred. Because the Court concludes
that the issue of equitable tolling cannot be resolved on a
motion for summary judgment prior to discovery, defendants'
motion is denied as premature at this stage of litigation
pursuant to Fed.R.Civ.P. 56(f), without prejudice to its
renewal at a later stage of the proceedings. [2]

## I. BACKGROUND

### A. Facts

Plaintiff was formerly employed as a loan officer by
defendants from June to October 2008 and worked at
defendants' office located in West Hempstead, New York.
(Amended Complaint ("Am.Compl.") ¶¶ 5–6; Plaintiff's Exh.
C ¶¶ 2–3.) Defendant Franklin First Financial, Ltd. ("Franklin
First") is a mortgage bank and brokerage firm that provides
mortgage banking services to consumers in New York State
and elsewhere. (Am.Compl.¶¶ 8, 13.) Defendant Frederick L.
Assini has been the President of Franklin First at all times
relevant to the allegations in the complaint. (Am.Compl.¶
9.) Defendants Keith Dizeo and Ellen Spaventa have, at all
times relevant, been the Vice President of Branch Operations
and the Human Resources Manager of Franklin First,
respectively. (Am.Compl.¶¶ 10–11.) All three individual
defendants are alleged to have exercised operational control
and control over significant business functions of Franklin
First, and to have determined employee salaries, made hiring
decisions, and acted on behalf of the company in devising,
directing, implementing, and supervising the wage and hour
practices and policies. (Am.Compl.¶¶ 9–11.)

*2 Plaintiff alleges that all loan officers employed
by defendants during the relevant period were
subjected to defendants' uniform, company-wide, and
centrally disseminated policies and procedures regarding

compensation. (Am.Compl.¶¶ 14, 16, 18.) In particular, per defendants' uniform company-wide policies, plaintiff and all similarly situated loan officers allegedly did not receive a weekly guaranteed salary of at least $455.00 and routinely did not receive minimum wages for hours worked, and they routinely worked in excess of forty (40) hours per week without overtime compensation, despite being required to arrive early and work late and frequently work on weekends. (Am. Compl. ¶¶ 19–22; Plaintiff's Exhs. D–L ¶¶ 6–9.) Furthermore, "[n]either [p]laintiff nor the similarly situated [l]oan [o]fficers were required to record their time worked and [d]efendants failed to maintain accurate time records[.]" (Am. Compl. ¶ 23; *see also* Plaintiff's Exhs. D–L ¶ 10.) Plaintiff also alleges that all loan officers had essentially the same job duties and had the primary duty to sell residential mortgage loans. (Am.Compl.¶¶ 15–16.) These employees' primary duty was to sell home loans to prospective customers on the telephone from defendants' offices in Syosset, West Hempstead, or Hauppauge, input the customers' information in a database, and close the deal. (Plaintiff's Exhs. D–L ¶¶ 3, 5.)

**B. Procedural History**

Plaintiff filed this action on December 9, 2008. On March 10, 2009, plaintiff submitted the instant motion for conditional certification as an FLSA collective action. On April 13, 2009, defendants filed their opposition papers, and plaintiff submitted a reply on April 22, 2009. Defendants filed their motion for partial summary judgment on April 23, 2009. Plaintiff filed its opposition to that motion on May 1, 2009, and defendants filed their reply on May 7, 2009.

By letter dated April 23, 2009, plaintiff requested a pre-motion conference in anticipation of filing a motion to amend the complaint to add two individual defendants, namely Keith Dizeo and Ellen Spaventa. Following a telephone conference with the Court held on May 4, 2009, counsel for the defendants informed the Court by letter dated May 8, 2009 that it would not oppose plaintiff's motion. On May 12, 2009, in light of defendants' position, as well as the liberal standard for granting leave to amend under Fed.R.Civ.P. 15(a) and the early stage of litigation in this case, the Court granted plaintiff leave to amend the complaint accordingly. The amended complaint was filed on May 12, 2009.

Oral argument was heard on the pending motions on June 15, 2009. The Court has fully considered the submissions of the parties.

**II. DISCUSSION**

**A. Conditional Certification**

**1. Legal Standard**

Section 216(b) of Title 29 provides, in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages .... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

**\*3** 29 U.S.C. § 216(b). Section 216(b) of the FLSA provides an employee with a private right of action to recover unpaid overtime compensation and/or minimum wages. *See id.; see also Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 101, 103 (S.D.N.Y.2003).* "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.' " *Parks v. Dick's Sporting Goods, Inc., No. 05 Civ. 6590(CJS), 2007 WL 913927, at \*3 (W.D.N.Y. Mar.23, 2007)* (quoting *Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y.2005)*).

To determine whether an action should be certified as an FLSA collective action, a two-step analysis is used. *Rubery v. Buth–Na–Bodhaige, Inc.*, 569 F.Supp.2d 334, 336 (W.D.N.Y.2008) ("Courts utilize a two-step process when analyzing motions to certify a collective action under the FLSA). The first step is to determine whether the proposed class members are "similarly situated." *Rubery,* 569 F.Supp.2d at 336; *see also Gjurovich,* 282 F.Supp.2d at 105 ("Once the [p]laintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff."). At this stage, "the evidentiary standard is lenient," *Rubery,* 569 F.Supp.2d at 336, and plaintiff must make a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Scholtisek,* 229 F.R.D. at 387. In making this showing, "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan" is required. *Id.* This first stage determination is "based on the pleadings, affidavits and declarations [.]" *Hens v. ClientLogic Operating Corp.,* No. 05 Civ. 381S, 2006 WL 2795620, at *3 (W.D.N.Y. Sept.26, 2006); *see also Hallissey v. Am. Online, Inc.,* No. 99 Civ. 3785(KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb.19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."). Importantly, "the determination that potential plaintiffs are similarly situated is merely a preliminary one." *Gjurovich,* 282 F.Supp.2d at 104 (internal quotation marks and citation omitted).

On the other hand, the second phase of the FLSA collective action inquiry typically occurs after the completion of discovery; at that point, the court makes a factual finding based on the developed record as to whether or not the class members are actually "similarly situated." "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Hens,* 2006 WL 2795620, at *4 (citation omitted). If the court determines at that time that the members are not similarly situated under the law, then "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." *Rubery,* 569 F.Supp.2d at 336. Also, "should the class description later be shown to require additional modifications, they can be made, as appropriate, during a second tier inquiry." *Id.* at 338; *see also Mendoza v. Casa de Cambio Delgado, Inc.,* No. 07

Civ. 2579(HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr.7, 2008) (stating that the "court has the power to alter or modify the class description if subsequent events suggest that it is appropriate to do so").

**\*4** Notably, "[c]ollective actions brought under the FLSA are different in various respects from class actions under Rule 23 of the Federal Rules of Civil Procedure." *Sherrill v. Sutherland Global Servs., Inc.,* 487 F.Supp.2d 344, 348 (W.D.N.Y.2007). Under the FLSA, potential plaintiffs are required to "opt-in" "to be bound by the judgment (and to benefit from it)." *Hoffman v. Sbarro, Inc.,* 982 F.Supp. 249, 260 (S.D.N.Y.1997). Each potential plaintiff must file his or her written consent in the court in which the suit is brought. *See id.* In relation to the class certification requirements, "a named plaintiff in a collective action need not demonstrate other facts—numerosity, commonality, typicality, and adequacy of representation—which are required to bring a class action." *Hens,* 2006 WL 2795620, at *3.

### 2. Application

Here, plaintiff has alleged that he and the potential opt-in plaintiffs, who worked at Franklin First's Syosset, Hauppauge, and West Hempstead offices in New York as loan officers, were subjected to a uniform policy and practice of being required to work in excess of forty (40) hours per week without receiving overtime or minimum pay, in violation of the FLSA. Specifically, plaintiff alleges that the defendants have a common policy or practice to deny minimum and overtime wages to its loan officers, who have similar job duties, by improperly classifying them as exempt employees, paying them primarily based only on commission, and failing to maintain accurate time records of hours worked by employees. The named plaintiff attests that, while employed by defendants, he worked with approximately thirty (30) other loan officers whom he observed on a daily basis and were similarly not paid overtime wages despite working over forty (40) hours per week. (Plaintiff's Exh. C ¶ 9.) The allegations in the complaint and plaintiff's affidavit are supported by the consent forms filed by twenty-three (23) additional loan officers alleging that they worked in excess of forty (40) hours per week and were denied overtime compensation (Plaintiff's Exh. A; docket entry [22] ), as well as the declarations of nine other loan officers attesting to defendants' common compensation practice. (*See* Plaintiff's Exhs. D–L.) According to plaintiff and opt-in plaintiffs, by

paying these employees on primarily a commission-only basis, with no guaranteed salary, loan officers generally were not paid anything unless they made a sale. (*Id.*) Although "a few loan officers did periodically receive a bi-weekly 'draw', this amount did not total at least $455 ... and therefore did not satisfy the salary basis test for an exemption as a matter of law." (Plaintiff's Memorandum of Law, at 3; *see also* Plaintiff's Exh. C ¶ 6.) Moreover, plaintiff claims that even assuming such draws totaled more than $455 per week, such "recoverable draws" do not meet the salary basis test, as they were deducted from any commissions earned. (Plaintiff's Memorandum of Law, at 3–4) (citing *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F.Supp.2d 1100, 1110 (S.D.Cal.2006)). Plaintiff and opt-in plaintiffs further allege that defendants uniformly administered and enforced their sales policies to all such loan officers through their training program, weekly meetings, supervision and encouragement of longer work hours, and production goals and quotas. (*See* Plaintiff's Exhs. C–L ¶¶ 4–9.) These employees also observed other loan officers who performed similar duties and were also not paid minimum wage or overtime compensation. (Plaintiff's Exhs. C–L ¶ 9.)

**\*5** Based on the pleadings and evidentiary showing made by plaintiff and opt-in plaintiffs, the Court finds that plaintiff has satisfied his burden at this initial stage of the FLSA collective action inquiry. In particular, the "similarly situated" requirement has been satisfied because plaintiff and opt-in plaintiffs have set forth a factual basis—more than "modest"—for having been subject to a common policy of being denied overtime and minimum pay by defendants. *See Hens,* 2006 WL 2795620, at \*3. They have made specific allegations about how they were paid for their work by defendants, and this practice is alleged to have been applied to all loan officers selling residential loans in the Syosset, Hauppauge, and West Hempstead offices of Franklin First. Because, at this stage, the burden on plaintiffs is a minimal one and only a "modest factual showing" need be made with respect to the issue of potential plaintiffs being "similarly situated," opt-in plaintiffs' "substantial allegations," *Scholtisek,* 229 F.R.D. at 387, regarding defendants' common failure to pay its loan officers minimum wages and overtime pay pursuant to the FLSA, are sufficient to overcome this burden. *See Patton v. Thompson Corp.,* 364 F.Supp.2d 263, 267 (E.D.N.Y.2005); *see also Lynch v. United Servs. Auto Ass'n,* 491 F.Supp.2d 357, 368 (S.D.N.Y.2007) (describing the burden as "very low" at the notice stage); *Trinidad v. Breakaway Courier Sys.,* No. 05 Civ. 4116(RWS), 2007 WL 103073, at \*2 (S.D.N.Y.

Jan.12, 2007) ("Plaintiffs need only provide some factual basis from which the court can determine if similarly situated plaintiffs exist.") (internal quotation marks and citations omitted). [3]

In this regard, the Court finds defendants' reliance on *Amendola v. Bristol–Myers Squibb Co.,* 558 F.Supp.2d 459 (S.D.N.Y.2008), *Castro v. Spice Place, Inc.,* No. 07 Civ. 4657, 2009 WL 229952 (S.D.N.Y. Jan.30, 2009), *Morales v. Plantworks, Inc.,* No. 05 Civ. 2349(DC), 2006 WL 278154 (S.D.N.Y. Feb.2, 2006), *Mendoza v. Casa De Cambio Delgado, Inc.,* No. 07 Civ. 2579(HB), 2008 WL 938584 (S.D.N.Y. Apr.7, 2008), *Myers v. The Hertz Corp.,* No. 02 Civ. 4325(BMC)(MLO), 2007 WL 2126264 (E.D.N.Y. July 24, 2007), *Diaz v. Electronics Boutique of America, Inc.,* No. 04 Civ. 840E, 2005 U.S. Dist. LEXIS 30382, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005), and *Iriarte v. Redwood Deli and Catering, Inc.,* No. 07 Civ. 5062(FB)(SMG), 2008 U.S. Dist. LEXIS 50072, 2008 WL 2622929 (E.D.N.Y. June 30, 2008), to be misplaced. First, *Iriarte* actually supports plaintiff's motion for conditional certification, since it granted the motion in that case and stated that "although plaintiff has not identified any other employees who seek to opt in, this is not fatal in light of defendant's failure to keep proper records, the allegations plaintiff makes in his affidavit about observing fellow employees working overtime without proper compensation, and the minimal burden required for certification as a collective action." 2008 U.S. Dist. LEXIS 50072, at \*8, 2008 WL 2622929. Other cases are inapposite because they involved analyses following substantial discovery. In *Amendola,* the court had already engaged in preliminary discovery, including the production by defendants of the names and addresses of 350 employees, more than 6,000 documents, and five witnesses for depositions. *See* 558 F.Supp.2d at 462. Similarly, in *Myers,* the plaintiffs had already survived summary judgment before moving for conditional certification. *See* 2007 WL 2126264, at \*1.

**\*6** In *Castro,* separate employers were sued by the plaintiffs, and the Court determined that there was no factual showing that a common policy was therefore at issue. *See* 2009 WL 229952, at \*3–\*4. Here, the putative class involves employees of only one company, and the Court finds sufficient allegations of a common pay policy. As for *Mendoza,* the court stated there that "[t]he principal defect in these affidavits for collective certification is that not one Plaintiff affidavit purports a factual nexus with other putative employees[.]" 2008 WL 938584, at \*2–\*3. In this

case, named plaintiff Sexton's affidavit does support a factual nexus with the opt-in plaintiffs, as they attest to the same job duties and alleged practice of being denied minimum and overtime compensation. *Morales* is also inapposite because, there, plaintiffs submitted no evidence from *other* putative class members. *See* 2006 WL 278154, at *2 ("The affidavit and exhibits, however, contain no reference to any Plantworks employee other than plaintiffs, and they make no allegations of a common policy or plan to deny plaintiffs overtime .... Here, plaintiffs have offered only a conclusory allegation in their complaint; they have offered nothing of evidentiary value."). In support of this motion for conditional certification of an FLSA collective action, plaintiff has submitted supporting affidavits from himself, as well as the affidavits of nine potential opt-in plaintiffs and the consent forms of twenty-three opt-in plaintiffs. Finally, *Diaz* involved two groups of plaintiffs, one that argued that they were exempt from the FLSA's requirements and the other that did not, and so the court concluded that no factual nexus existed between the two groups. *See* 2005 U.S. Dist. LEXIS 30382, at *12, 2005 WL 2654270. In contrast, all putative class members here claim to be non-exempt. Furthermore, this is not a case where "a detailed factual analysis of [a plaintiff's] daily activities and responsibilities," *id*. at *13, is required to make a determination of the plaintiff's exempt or nonexempt status, since the evidence sets forth that all "inside loan officers," as discussed in relation to "outside loan officers" *infra*, had similar duties. Tellingly, although defendants do argue that some issues will require individualized inquiry and should thus preclude certification, also discussed *infra*, they do not argue that the determination of exemption status will require such individualized examination. [4]

In addition, defendants' argument to the effect that "the documentary evidence submitted in opposition to the plaintiff's motion clearly demonstrates that the named plaintiff and opt in plaintiffs have intentionally submitted erroneous testimony to this Court[,]" (Defendants' Memorandum of Law, at 2), is an attack on the credibility of plaintiff and the opt-in plaintiffs that is not properly decided by the Court on this motion. Plaintiff and opt-in plaintiffs have submitted affidavits attesting to the conditions of their compensation and employment, and given such documentary evidence, the Court finds a sufficient factual basis for granting plaintiff's motion at this stage. *Compare Rubery*, 569 F.Supp.2d at 337 ("[P]laintiff has met her burden to demonstrate, by producing affidavits and time records from other Shop Managers which are indicative of a common policy or plan with respect to the duties

and supervisory responsibilities of Shop Managers.") *with Prizmic v. Armour, Inc*., No. 05 Civ. 2503(DLI)(MDG), 2006 WL 1662614, at *3 (E.D.N.Y. June 12, 2006) (denying conditional class certification where "[p]laintiff [had] not submitted *any* affidavit or documentation in support of the instant motion.") (emphasis supplied); *see generally Sobczak v. AWL Indus., Inc*., No. 07 Civ. 1226(BMC) (RER), 2007 WL 4934239, at *6 (E.D.N.Y. Oct. 22, 2007) (stating that courts regularly grant motions to facilitate notice in collective actions " 'based upon employee affidavits setting forth a defendant's plan or scheme' ") (quoting *Wraga v. Marble Lite, Inc*., No. 05 Civ. 5038, 2006 WL 2443554, *1 (E.D.N.Y. Aug. 22, 2006)). Moreover, defendants' submissions of time records of plaintiff's work in an attempt to show that he did not work any weekends or "even one hour of overtime" (Defendants' Exh. A), and was "paid for every hour that he worked" (Defendants' Exh. B), cannot simply be accepted by the Court at this stage, as defendants suggest, as dispositive proof that plaintiff "has purposely lied to this Court in an effort to establish a factual nexus between himself and other putative class members." (Defendants' Memorandum of Law, at 2.) In plaintiff's sworn declaration to the Court, plaintiff attests that he regularly worked in excess of forty (40) hours per week and worked evenings, early mornings, and weekends without being properly paid. (Plaintiff's Exh. C ¶¶ 6–8.) Such attestations, which are consistent with plaintiff's allegations in this case, are sufficient for the purposes of this motion, and the Court will refrain from making any credibility determinations. *See, e.g., Summa v. Hofstra Univ*., No. 07 Civ. 3307(DRH)(ARL), 2008 WL 3852160, at *5 (E.D.N.Y. Aug. 14, 2008) ("At the initial assessment stage, before discovery is completed, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations.").

**\*7** Similarly, defendants' argument that opt-in plaintiff Peter DeBartoli states falsely in his affidavit that he worked as an inside loan officer, when in fact he worked as an outside loan officer, and that his claims of working overtime are "clearly contradicted by documentary evidence" (Defendants' Memorandum of Law, at 5) is insufficient to defeat plaintiff's motion at this stage, where "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan [,]" *Scholtisek*, 229 F.R.D. at 387, must be established "based on the pleadings, affidavits and declarations." *Hens*, 2006 WL 2795620, at *3. Indeed, this motion for conditional certification is not the proper forum to litigate the merits

of plaintiff's claims. *See, e.g., Laroque v. Domino's Pizza, LLC,* 557 F.Supp.2d 346, 354 (E.D.N.Y.2008) ("The standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification."); *Lynch,* 491 F.Supp.2d at 368 ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Neary v. Metro. Property and Cas. Ins. Co.,* 517 F.Supp.2d 606, 622 (D.Conn.2007) ("Courts are not to evaluate the merits of potential plaintiffs' claims when determining whether a putative class meets the similarly situated standard."); *Hoffman v. Sbarro, Inc.,* 982 F.Supp. 249, 262 (S.D.N.Y.1997) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here."). *But see Amendola,* 558 F.Supp.2d at 467 ("Although district courts have held that the merits of a plaintiff's FLSA claim should not be evaluated in determining whether to authorize notice, these holdings may have derived from jurisprudence discouraging engagement with the merits that was developed in the context of Rule 23 class action certification. But the Second Circuit in *In re Initial Pub. Offering Sec. Litig.* ('In re IPO'), 471 F.3d 24 (2d Cir.2006), recently clarified that courts deciding whether to certify a class action must determine that each Rule 23 requirement has been met, and that 'the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue.' *Id.* at 41. This Court will, therefore, scrutinize the merits based on the record developed to date by the parties and to the extent necessary to address this motion for authorization of notice.") (additional citations omitted).[5]

Defendants make additional arguments that go to the merits of plaintiff's claims or constitute affirmative defenses thereto. For example, defendants state that opt-in plaintiffs Peter Antosiewicz and Aaron Beta signed a release stating that they were each paid in full for all commissions, salary, overtime, and benefits. (Defendants' Memorandum of Law, at 6, 9.) They also make the argument, as they did in connection with Sexton and DeBartoli, that the documentary evidence submitted by them shows that they never worked overtime. (Defendants' Memorandum of Law, at 6, 9.) Defendants make the same arguments with respect to opt-in plaintiffs William Telford and Gregory Psitos, stating that their sworn statements are contradicted by time records and that they also signed an Employee Settlement and Release Agreement discharging Franklin from any and all claims. (Defendants' Memorandum of Law, at 6–7.)

Defendants also submit documentation in an attempt to show that opt-in plaintiffs Nicholas Peligrinis, Charles Gianchetta, and Christan Siefert made similarly misleading claims. (Defendants' Memorandum of Law, at 7.) These arguments are all therefore rejected by the Court at this stage.[6] "At the very least, plaintiffs' detailed allegations and supporting affidavits successfully engage defendants' affidavits to the contrary for purposes of the present motion." *Hallissey,* 2008 WL 465112, at *2 (quoting *Krueger v. New York Telephone Co.,* Nos. 93 Civ. 0178(LMM), 93 Civ. 0179(LMM), 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993)). Even assuming that defendants' evidence could rebut plaintiff's claims, moreover, they would fail to rebut them in this case because plaintiff and opt-in plaintiffs specifically allege that defendants failed to keep *accurate* time records of the loan officers' hours. Plaintiff argues that defendants' evidence is limited and far from conclusively establishes that the time records of plaintiff and opt-in plaintiffs are accurate or complete, or that their pay records reflect anything but commission-based pay. (Plaintiff's Reply Memorandum of Law, at 5–6.) Finally, defendants' references to other matters pending before other courts, to the extent that such is intended to disprove an opt-in plaintiff's allegations or discredit them (namely, Bob Szwaja, Rohit Chetal, Gaurav Khanna, and Gary Hosking) (*see* Defendants' Memorandum of Law, at 3–4, 8), also fail to establish a proper basis for denying plaintiff's motion. Any estoppel claims, if relevant, go as well to defendants' affirmative defenses to the potential plaintiffs' claims.

**\*8** Finally, it is well settled that the existence of certain individual claims or defenses does not preclude the conditional certification of an FLSA collective action. Defendants make the point that "Franklin has a defense that is entirely individual to the lead plaintiff, Matthew Sexton." (Defendants' Memorandum of Law, at 11.) First, defendants' argument that Sexton signed time sheets demonstrating that he did not work overtime is not one that is unique to Sexton, as mentioned *supra* in connection with defendants' submissions of documentary evidence. Defendants make the same argument with respect to opt-in plaintiff William Telford, for example. (Defendants' Memorandum of Law, at 12–13.) The defenses that the time sheets signed by these various employees are accurate is actually one and the same defense, even if it applies to more than one employee. *See Torres v. Gristede's Operating Corp.,* No. 04 Civ. 3316(PAC), 2006 WL 2819730, at *11 (S.D.N.Y. Sept.29, 2006) ("Any defenses Defendants raise regarding the admitted company policy of docking

compensation for not working the designated hours in a workweek does not implicate individual plaintiffs because, here, the standard of proof and required evidence under FLSA is not an individualized inquiry but one based on policy, practice, and conduct.") (citation and internal quotations omitted); *see also Laroque,* 557 F.Supp.2d at 354 ("Domino's also argues that claims of 'off-the-clock' work and altered time sheets inherently are too individualized to be pursued collectively. The court disagrees. District courts in this circuit regularly grant certification under similar circumstances."). Even if these claims did require individualized inquiries, however, this would not necessarily defeat a motion for conditional certification of a collective action. *See, e.g., Neary,* 517 F.Supp.2d at 620 ("Defendant's argument that in determining whether its claim of applicability of the administrative exemption is valid, individualized inquiry is necessary, does not preclude certification at this first stage."); *Hallissey,* 2008 WL 465112, at *2 ("although there may be circumstances unique to each CL in this case, the fundamental allegation found in Plaintiffs' declarations and pleadings that CLs were denied minimum and overtime wages because of their classification by AOL as 'volunteers' in the CL program is common to all of the CLs."). Thus, the Court rejects defendants' argument on these grounds.

The same applies to defendants' assertion that the possible application of equitable tolling will result in a "highly fact-specific and detailed analysis for each individual opt in plaintiff[.]" (Defendants' Memorandum of Law, at 12.) Again, the Court disagrees with that statement to the extent that plaintiff alleges that equitable tolling is warranted because defendants failed to post proper notices of employees' rights. That is not an individualized inquiry, and defendants' own submissions of photographs of such alleged notices, in an effort to defeat *all* equitable tolling claims, belies their claim that the issue requires individualized inquiry.

*9 The Court also rejects the individualized inquiry objection as it relates to certain opt-in plaintiffs' alleged release agreements. The legal validity of such agreements are likely to apply across the board or fail as a matter of law, under the circumstances of this case. *See supra* note 6. In any event, even if these defenses are later determined to require an examination of individualized circumstances, the Court may nonetheless continue with the collective action if manageable, or decertify the class at a later stage, or bifurcate the trial, as necessary, to deal with such defenses. *See Torres,* 2006 WL 2819730, at *11.

In sum, and contrary to defendants' contention, plaintiffs have demonstrated a sufficient "factual nexus between [their] situation and the situation of other current and former employees, *Realite,* 7 F.Supp.2d at 308, who were potentially denied minimum and overtime wages. The pleadings and affidavits of the plaintiff and opt-in plaintiffs are sufficient at this stage of the litigation for conditional certification of a collective action pursuant to Section 216(b) of the FLSA. Because plaintiff has made the necessary showing, there is no need for the Court to, as defendants suggest, postpone decision on this motion pending discovery, especially in light of the fact that the statute of limitations on potential opt-in plaintiffs' claims continues to run until their consent forms are filed. *See* 29 U.S.C. § 256(a).

**B. Scope and Form of Notice**

Plaintiff further requests that the Court "authorize notice by U.S. first class mail to all similarly situated persons employed by [d]efendants, who are or were employed as loan officers or other similarly titled positions from December 9, 2005 to the present to inform them of their right to opt-in to this lawsuit." (Plaintiff's Memorandum of Law, at 13.) In other words, plaintiff seeks court authorization to circulate this proposed notice of pendency to putative collective action members, beginning three (3) years from the commencement of this lawsuit. It is estimated that there are "hundreds" of potential opt-in members. (Plaintiff's Memorandum of Law, at 10.) Defendants oppose the notice on the grounds that the notice should be limited "to inside sales loan officers only and that any list of employees disclosed in this action be limited to inside sales loan officers." (Defendants' Memorandum of Law, at 15.)

Even though Section 216(b) does not expressly provide a district court with the authority to order notice, "[t]he Second Circuit has recognized a district court's authority to order that notice be given to potential members of a plaintiff class in actions under this section (generally referred to as 'collective actions'), pursuant to the opt-in provisions of the FLSA." *Rubery,* 569 F.Supp.2d at 335 (internal citation omitted); *accord Scholtisek,* 229 F.R.D. at 387. Upon conditional certification of an FLSA collective action and notice thereof, class members are given the opportunity to "opt in." *Rubery,* 569 F.Supp.2d at 336. "Because a collective action requires written consent from the opt-in plaintiffs, 'it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice,' in order to ensure that the

drafting and distribution of the notice is 'timely, accurate and informative.' " *Id.* at 336 (quoting *Hofmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 171–72, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).

 **\*10** As a threshold matter, the time period beginning December 9, 2005 to the present is the appropriate timeframe for opt-in plaintiffs to have been employed by defendants. The FLSA has a maximum three year statute of limitations period for willful violations, which plaintiff alleges occurred in this case. *See* 29 U.S.C. § 255. Plaintiff filed the complaint in this action on December 9, 2008, so three years prior to commencement of the lawsuit is December 9, 2005. Because the claims of the potential opt-in plaintiffs are tolled on the date that their consent forms are filed, *see* 29 U.S.C. § 256, December 9, 2005 is the earliest possible date that a plaintiff in this case may have been last employed by defendants in order to have a timely claim under the FLSA. Defendants do not contend otherwise.

Second, although the Court finds that conditional certification is warranted in this case, it concludes that the scope of the notice should not be as broad as plaintiff has proposed. Here, the Court finds it prudent to limit the scope of the notice to only those employees as to whom there are allegations that they have been affected by defendants' policy of denying minimum wages and overtime pay. This is the key inquiry, and plaintiff and putative collective action members must set forth a modest factual showing that they were all similarly situated with *respect to being subject to the same policy* of being denied overtime and minimum compensation.

According to defendants, outside sales loan officers, as opposed to inside loan officers, "work in the field," "make their own hours and work on their own time." (Defendants' Memorandum of Law, at 15.) Plaintiff setsforth no facts or allegations disputing this and, as conceded at oral argument, plaintiff does not purport to represent outside loan officers in this lawsuit. Indeed, plaintiff has not submitted any affidavits from outside loan officers. The consent forms do not indicate whether any of the opt-in plaintiffs were or are outside loan officers, and plaintiff does not argue, in his moving papers or during oral argument, that any outside loan officers are subject to the same common policy or practice of pay. There is no indication that outside loan officers are, therefore, similarly situated to plaintiff. The critical showing is whether these employees were subject to the same pay policy or practice alleged to be in violation of the FLSA; whether or not inside and outside loan officers had similar job duties,

or whether or not they worked in different settings, is not determinative. *See Heagney v. European Am. Bank,* 122 F.R.D. 125, 127 (E.D.N.Y.1988) ("In order to be 'similarly situated,' the plaintiffs do not have to perform the same job in the same location as long as there is an [unlawful] policy common to all[.]"); *Realite,* 7 F.Supp.2d at 308 ("Instead, all that is required is "some identifiable factual nexus which binds the named [plaintiffs] and potential class members together as victims of a particular alleged discrimination."); *Chowdhury,* 2007 WL 2873929, at \*4 ("[D]efendants' attack on plaintiff's factual showing focuses mostly on irrelevant differences between plaintiff and opt-in plaintiffs. The proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated 'with respect to their allegations that the law has been violated [.]' ") (quoting *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y.2005)); *Hallissey,* 2008 WL 465112, at \*2 ("While dates of employment and hours worked are unique to each employee, it does not necessarily create dissimilarity under the FLSA. Nor does the fact that employees worked a variety of different jobs in a number of different departments at different locations preclude class treatment.") (internal citations omitted); *cf. Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819(GEL), 2006 WL 2853971, at \*6 (S.D.N.Y. Oct.5, 2006) ("On defendant's logic, no group of opt-in plaintiffs would ever be 'similarly situated' unless they were clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele."). Thus, while it is true that the difference in job title or description between inside and outside loan officers is not determinative, plaintiff also cannot simply rely on the broader job title of "loan officers" to include outside loan officers in the putative class, where he fails to make any factual showing that these outside loan officers were subject to the same denial of overtime or minimum wages.

 **\*11** Accordingly, the Court finds that notice to *all* loan officers employed by defendants is unnecessary. Because there is no factual basis for deeming plaintiff, with respect to defendants' alleged failure to pay minimum and overtime wages, "similarly situated" to both inside and outside sales loan officers, the notice shall only be sent to those inside sales loan officers who were employed by defendants within the appropriate time period. Again, even though plaintiff is certainly not required to show that he is identically situated to the potential opt-in plaintiffs, or that he possesses the same attributes as them with respect to their jobs, he is required to show that they are subject to the same common policy or plan by defendants. In this regard, the Court is not persuaded that plaintiff has made a sufficient attempt to show that all

loan officers employed by defendants are similarly situated to the named plaintiff and as such, the proposed notice should be modified accordingly. *Cf. Sherrill,* 487 F.Supp.2d at 350 ("Although it is true that a finding of 'similarly situated' does not require the plaintiffs to perform the same job in the same location as long as there is [an unlawful] policy common to all, plaintiffs have not demonstrated that the Sutherland policies and practices complained of affected hourly employees other than telemarketing agents.") (internal quotation marks and citation omitted).

As noted by defendants, these outside loan officers may be subject to an exemption under the FLSA for "any employee employed ... in the capacity of outside salesman." 29 U.S.C. § 213(a) (1); *see also* 29 C.F.R. § 541.500. This also weighs in favor of conservatively defining the class to exclude these individuals at this stage. Plaintiff responds that, "[w]hile Plaintiffs do not seek to represent loan officers who are ultimately shown to be subject [sic] this exemption, whether such persons actually exist cannot be determined at this early stage without the benefit of any discovery." (Plaintiff's Reply Memorandum of Law, at 9.) Because there is no allegation or even threshold factual showing warranting certification of this group of individuals, however, the proper course of action is for plaintiff to move for conditional certification of these outside loan officers if discovery reveals that they were in fact similarly situated to plaintiff. There is currently no basis for the Court to conditionally certify this group at this stage. Plaintiff's assertion that defendants may have misclassified certain inside loan officers as outside loan officers, in an effort to circumvent the requirements of the FLSA, lacks a factual basis—even modest—at this stage, and thus broader notice to all such possible individuals is not warranted. Such speculation by plaintiff seems to be based on the affidavit of one opt-in plaintiff, Peter DeBartoli, who claims that he was an inside loan officer while defendants claim that he was in fact an outside loan officer. (*See* Defendants' Exhs. D, X.) However, plaintiff has provided no affidavits from any inside loan officer saying he or she was purposely misclassified by defendants as an outside loan officer—including no such statement in the affidavit of Peter DeBartoli—or that these misclassified employees were subject to the same alleged violations of the FLSA. Simply put, one case of possible mislabeling is an insufficient factual basis to warrant broad notice to an entire class of employees who, as plaintiff concedes, are presumptively outside the protections of the FLSA. Thus, as discussed at oral argument, if discovery reveals mislabeling by defendants of certain inside loan officers as outside loan officers, then plaintiff may renew

his application to have the notice expanded to cover such individuals.

**\*12** Defendants also oppose certain language in plaintiff's proposed notice. First, they argue that the notice period should be sixty (60) days, rather than ninety (90) days. (Defendants' Memorandum of Law, at 14.) Plaintiff has agreed to limit the period to sixty (60) days. (Plaintiff's Reply Memorandum of Law, at 9.) Defendants also request that the notice state that if potential plaintiffs opt in, they may be asked to appear for depositions, respond to written discovery, testify at trial, and pay costs to the defendants if they do not prevail, and further, that opt-in plaintiffs may join the lawsuit by counsel of their own choosing and that the written consent should be submitted directly to the Clerk of the Court. (Defendants' Memorandum of Law, at 14.) In addition, defendants ask that the language "[y]ou are 'similarly situated' to the Plaintiff in the lawsuit and, therefore, can join this lawsuit" should be modified to "[y]ou are potentially 'similarly situated' to the Plaintiff." (Defendants' Memorandum of Law, at 15.) In the section describing the lawsuit, defendants seek deletion of the words "greatly in excess," and in the introduction section, they seek an insertion of language stating that the defendants deny the plaintiff's allegations and any liability. (Defendants' Memorandum of Law, at 15.)

After reviewing the defendants' objections to the proposed notice, the Court finds that the following reasonable modifications should be incorporated into a revised proposed notice: (1) language stating that opt-in plaintiffs are free to be represented by counsel of their own choosing or by plaintiff's counsel, *see Rubery,* 569 F.Supp.2d at 338; (2) language stating that the consent forms shall be filed directly with the Clerk of the Court or, if the opt-in plaintiffs select plaintiff's counsel to represent them, the consent forms should be mailed to plaintiff's counsel by a date set by plaintiff's counsel within the sixty (60) day timeframe (for filing thereafter by plaintiff's counsel), *see, e.g., Guzman v. VLM, Inc.,* No. 07 Civ. 1126(JG)(RER), 2007 WL 2994278, at *9 (E.D.N.Y. Oct. 11, 2007) (citing *Garcia v. Elite Labor Serv., Ltd.,* No. 95 C 2341, 1996 WL 33500122, at *5 (N.D.Ill. July 11, 1996), which noted that a majority of courts direct parties to submit opt-in forms to clerk of court); (3) language inserted in the introduction section stating that defendants deny the allegations set forth in the complaint; (4) the words "potentially similarly situated" shall be substituted for "similarly situated," *see Sobczak,* 540 F.Supp.2d at 366; (5) language stating that opt-in plaintiffs *may* be called upon to testify, appear for depositions, and respond to discovery

requests, *see, e.g., Bah v. Shoe Mania, Inc.,* No. 08 Civ. 9380(LTS)(AJP), 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009); *Hallissey,* 2008 WL 465112, at *3; and (6) the word "greatly" in the phrase "greatly in excess," with respect to the allegations about working more than forty (40) hours per week, shall be deleted. However, defendants' request for language stating that opt-in plaintiffs may be responsible for costs to the defendants if they do not prevail is, in the Court's view, unnecessary and potentially confusing, and thus should not be included. *See Guzman,* 2007 WL 2994278, at *8 ("Given the remote possibility that such costs for absent class members would be other than de minimis, and the absence of any showing by defendants that counterclaims are likely to be meaningful in this case, I think such language is inappropriate. It may have an in terrorem effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree.").

*13 During oral argument, defendants made further objections to the proposed notice's form. First, they dispute the use of the phrase "class action" to describe the lawsuit in this context and any use of the word "class" to describe the opt-in plaintiffs. The Court agrees that the phrase "collective action" should be used to describe the lawsuit in its current form and/or the phrase "class action" should be deleted, including in the title of the notice and its introduction. As defendants suggest, the title may read, "Notice of Lawsuit with Opportunity to Join." *See, e.g., Sobczak,* 540 F.Supp.2d at 365. The use of the word "class" is also misleading to a layperson and should be stricken or substituted accordingly. *See Bah,* 2009 WL 1357223, at *4; *Guzman,* 2007 WL 2994278, at *8. Defendants also oppose the use of the word "compel" in Part II of the notice in describing the objective of the lawsuit. The Court views such language as non-prejudicial, however. The Court also views the language "as required by law" in Part II to be appropriate and non-prejudicial, since the entire sentence makes clear that it is discussing the allegations made by the notice. However, in the introduction section of the notice, such clarification is missing; accordingly, the first sentence of Part I should state something to the effect of: "A class action lawsuit has been filed against Franklin First for the alleged failure to pay overtime and/or minimum wages to loan officers as required by law."

In accordance with this Memorandum and Order, the parties shall submit a joint proposed notice to the Court for approval "in order to ensure that the drafting and distribution of the notice is timely, accurate and informative." *Rubery,* 569

F.Supp.2d at 336 (internal citation and quotation marks omitted); *see also Amendola,* 558 F.Supp.2d at 467 ("District courts may set the conditions under which a plaintiff gives notice to fellow employees of the existence of a collective action and the steps they must take if they wish to join the action."); *Iriarte,* 2008 U.S. Dist. LEXIS 50072, at *4, 2008 WL 2622929 ("Courts have broad discretion over whether to grant certification, what discovery to allow, and what form of notice to provide."); *Mendoza,* 2008 WL 938584, at *1 ("Courts have wide discretion here to grant certification, allow discovery, and regulate notice."). This joint proposed notice shall be submitted within thirty (30) days of the date of this Memorandum and Order.

## C. Production of Names, Telephone Numbers, and Addresses

Plaintiff also seeks relief "requir[ing][d]efendants to produce a computer-readable data file containing the names, addresses and telephone numbers of [ ] potential opt-in members so that notice may be issued[.]" (Plaintiffs' Memorandum of Law, at 13.) Courts often grant this kind of request in connection with a conditional certification of an FLSA collective action, and this Court concludes that such a request is appropriate in this case. *See, e.g., Hens,* 2006 WL 2795620, at *5 (stating that the name, last known mailing address, last known telephone number, work location, and dates of employment are "essential to identifying and notifying potential 'opt-in' plaintiffs, and should be disclosed"); *Sherrill,* 487 F.Supp.2d at 350 ("I agree that such information is essential to identifying prospective opt-in plaintiffs."); *Chowdhury,* 2007 WL 2873929, at *2 ("When a court certifies a collective action, it may require an employer to disclose the names and addresses of potential plaintiffs."); *Anglada,* 2007 WL 1552511, at *7 ("Courts within this Circuit routinely grant plaintiffs' motions to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action."); *Rubery,* 569 F.Supp.2d 334, 338 ("Counsel's request for contact information from those opting into the class is neither unusual nor inappropriate."). Providing such information is neither unduly burdensome or disruptive to defendants' business operations. *See Hallissey,* 2008 WL 465112, at *3 ("In selecting the manner of issuing the notice, this court must strike the appropriate balance in ensuring notification to the [opt-in plaintiffs] while minimizing disturbance to [defendant's] business.") (citation omitted). Defendants shall provide this information to plaintiffs within forty-five (45)

days of the date of this Memorandum and Order, provided that the notice submitted by the parties is approved by the Court.

### D. Partial Summary Judgment

**\*14** Defendants also move for partial summary judgment dismissing the claims of opt-in plaintiffs—namely, Bob Szwaja, Matthew Douglas, Steve Glauber, Eric Harris, Rohit Chetal, Paul Callender, Patrick Varano, and Richard Knudysz —on the basis that these claims are time-barred. As set forth below, defendants' motion is denied as premature, without prejudice to renewal at a later stage of the proceedings.

### 1. Legal Standard

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Globecon Group, LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 170 (2d Cir.2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir.2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir.2004); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial." Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (emphasis in original). As the Supreme Court stated in *Anderson,* "[i]f the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996) (internal quotations omitted).

### 2. Application

**\*15** As a threshold matter, the Second Circuit has held that district courts should grant summary judgment only "[i]f *after discovery,* the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " *Berger v. United States,* 87 F.3d 60, 65 (2d Cir.1996) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (alteration in original and emphasis added). In particular, "[t]he nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989) (quoting *Anderson,* 477 U.S. at 250 n. 5). Consequently, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir.2000) (reversing district court's grant of summary judgment because plaintiff had not been able to conduct discovery).

Indeed, the Supreme Court has explained that in instances where a plaintiff has not had the opportunity to conduct discovery, Rule 56(f) of the Federal Rules of Civil Procedure "allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." *Celotex,* 477 U.S. at 326; see also Comm. *Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.,* 271 F.3d 374, 386 (2d Cir.2001) ("Fed.R.Civ.P.56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it

needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion.").

Rule 56(f) specifically states:

> Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). Further, the Second Circuit has outlined the procedure by which a party may obtain relief under Rule 56(f):

> [A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

*Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999) (quoting *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995)).

**\*16** Here, plaintiff's counsel has submitted an affidavit in compliance with Rule 56(f), specifically explaining the information plaintiff and opt-in plaintiffs seek through discovery. For instance, he states:

> 9. Because no discovery has been conducted on these issues and because of the short time since the Defendants submitted their motion, Plaintiffs are unable to present essential facts upon which to base their opposition to Defendants' motion. Specifically, Plaintiffs have been unable to depose the Defendants' representatives who submitted affidavits in support of their motion and have not obtained any discovery related to their motion.

> 10. Plaintiffs request that they be entitled to conduct discovery on the issues relating to the tolling of the statute of limitations, including being granted leave to depose the Defendants' representatives who submitted affidavits in support of their motion for partial summary judgment after receiving responses to Plaintiffs' discovery requests.

(Langeland Aff. ¶¶ 9–10.)

In light of the parties' submissions, the Court concludes that defendants' motion for partial summary judgment is premature at this juncture. The statute of limitations defense is a consideration of the merits, and there currently exists a genuine issue of material fact as to whether defendants' alleged concealment of plaintiff's rights, including their alleged failure to post the required Department of Labor notice, *see* 29 C.F.R. § 516.4, permits equitable tolling of the applicable statute of limitations. *See Yu G. Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 259 (S.D.N.Y.2008); *Ramirez v. CSJ & Co.*, No. 06 Civ. 13677(LAK), 2007 WL 1040363, at \*3 (S.D.N.Y. Apr.3, 2007).

In particular, defendants' submissions of a handful of photographs of the purported Department of Labor notices, coupled with three employee affidavits, is insufficient for the purposes of this motion prior to discovery. For example, plaintiff points out that these photographs were taken a few weeks ago and may have not been posted appropriately during the relevant time period. (Plaintiff's Reply Memorandum of Law, at 9.) Accordingly, given the disputes surrounding the submitted evidence, as well as the fact that discovery has yet to take place regarding this and related issues, the Court declines to grant defendants' motion at this stage.

Defendants further argue that neither the complaint nor the consent forms of these opt-in plaintiffs sets forth any claims or allegations that could be construed as raising the doctrine of equitable tolling of the statute of limitations. (*See* Defendants' Memorandum of Law in Support, at 1–2.) However, allegations made by plaintiffs beyond the pleadings is within the scope of this Court's consideration on a motion for summary judgment—a motion, that the Court adds, was brought by defendants so that documentary evidence could be considered on their behalf. *Cf. Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir.1997) ("Once [plaintiff] pled the applicability of the equitable tolling doctrine which went beyond the face of the pleadings, the district court should have treated the issue of equitable tolling in a manner consistent with Rule 56 for summary judgment."). Furthermore, even if

only the pleadings could be considered, the Second Circuit has explicitly "clarif[ied] that fraudulent concealment is not essential to equitable tolling[,]" *Valdez ex rel. Donely v. United States,* 518 F.3d 173, 182 (2d Cir.2008), and so plaintiff need not "plead each of [the elements of fraudulent concealment] with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure." *Nat'l Group for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.,* 420 F.Supp.2d 253, 265 (S.D.N.Y.2006); *see also Amendola,* 558 F.Supp.2d at 479 ("Although this remedy is regularly granted where defendants have engaged in fraudulent concealment, 'the application of the doctrine of equitable tolling is not limited to such cases,' and 'it does not assume a wrongful— or any—effort by the defendant to prevent the plaintiff from suing.' ") (quoting *Valdez ex rel. Donely,* 518 F.3d at 182– 83 (citation omitted)). In any event, plaintiff is not required to have alleged facts in the complaint that overcome defendants' affirmative defense based on the statute of limitations. *See U.S. Gypsum Co. v. Indiana Gas Co., Inc.,* 350 F.3d 623, 626 (7th Cir.2003) ("Complaints need not anticipate or attempt to defuse potential defenses .... As complaints need not do this, the omissions do not justify dismissal."); *In re South African Apartheid Litig.,* Nos. 02 MDL 1499(SAS), 02 Civ. 4712(SAS), 02 Civ. 6218(SAS), 03 Civ. 1024(SAS), 03 Civ. 4524(SAS), 617 F.Supp.2d 228, 2009 WL 960078, at *33 n. 368 (S.D.N.Y. Apr. 8, 2009) ("However, this assumes that equitable tolling must be pleaded in the same manner as an affirmative element of a claim. That assumption cannot be correct given that the statute of limitations defense remains an affirmative defense, which plaintiffs are not, by definition, required to defeat in the pleadings.").[7] Since the plaintiff ultimately has the burden of demonstrating the appropriateness of equitable tolling, *see Boos v. Runyon,* 201

F.3d 178, 185 (2d Cir.2000), however, if plaintiff fails to sustain his burden under the summary judgment standard following discovery, the Court may then decide the issue in defendants' favor as a matter of law.

 *17  In sum, after carefully reviewing both the complaint in this case and counsel for plaintiff's Rule 56(f) affidavit, and in light of plaintiff's inability to conduct any discovery to date, the Court concludes that defendants' motion for summary judgment is premature and denies it without prejudice to refiling at the close of discovery.

## III. CONCLUSION

For the reasons set forth above, plaintiffs' motion for conditional certification as an FLSA collective action, pursuant to Section 216(b) of the FLSA, and for court authorized notice and the production by defendants of certain employees' names, telephone numbers, and addresses, is granted.

Defendants' motion for partial summary judgment is also denied, without prejudice to renewal at a later stage of the proceedings.

The parties shall submit a joint revised proposed notice by July 16, 2009 that is consistent with the rulings on the language contained in this Memorandum and Order.

SO ORDERED.

Footnotes

1    Plaintiff filed this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure with respect to his claims under New York Labor Law, but no motion for Rule 23 class certification has yet been made by plaintiff at the time of this opinion.

2    Plaintiff requests a stay of defendants' motion pending discovery on the equitable tolling issue, and defendants request, in the alternative to their motion, a continuance of discovery; both requests are purportedly made pursuant to Fed.R.Civ.P. 56(f), even though Rule 56(f) is intended for the party opposing the motion. In any event, the Court has the discretion to also deny the motion pursuant to Fed.R.Civ.P. 56(f) and finds that a denial without prejudice is appropriate in this case, since discovery as a whole is at its early stages and is not only limited to the equitable tolling issue. After the close of discovery, defendants may move for summary judgment on the statute of limitations issue, in addition to any other grounds.

3    Defendants argue that the consent forms and/or affidavits of certain opt-in plaintiffs—namely, Bob Szwaj a, Richard Krudysz, Matthew Douglas, Steve Glauber, Eric Harris, Rohit Chetal, Paul Callender, and Patrick Varano—are time-barred and thus have no probative value. (Defendants' Memorandum of Law, at 3–5.) However, as discussed *infra,* there is an issue as to whether equitable tolling applies with respect to these employees' claims. In any event, even assuming *arguendo* that these claims are untimely, the Court finds that, even excluding the evidence proffered by these particular opt-in plaintiffs, there is sufficient evidence to warrant conditional certification in this case.

4    Even if they did, however, "whether the plaintiff or any putative plaintiffs are exempt or otherwise excluded from the FLSA is not a proper inquiry for the court on this motion. Such factual determinations will be addressed at the second stage of the certification process after the completion of discovery." *Summa v. Hofstra Univ.,* No. 07 Civ. 3307(DRH)(ARL), 2008 WL 3852160, at *5 (E.D.N.Y. Aug. 14, 2008).

5    The court in *Amendola* engaged in preliminary discovery and analyzed whether plaintiffs were likely to fall within certain exemptions under the FLSA. Here, no discovery has thus far taken place and even if the Court were to undertake some preliminary evaluation of the merits in assessing plaintiff's claims, it would find that there is insufficient evidence to conclude that plaintiff has failed to carry his burden for the purposes of this motion or that defendants have shown "either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation." *Id.* at 467. In further contrast to the situation in *Amendola,* defendants do not argue that plaintiff and opt-in plaintiffs fall within an exception to the requirements of the FLSA as a matter of law. They argue instead that plaintiff and opt-in plaintiffs' claims are factually without basis or subject to certain affirmative defenses.

6    In any event, the Supreme Court has held that employees cannot release their rights under the FLSA by private agreement, because such action contravenes a statutory right granted in the public interest. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) ("Neither petitioner nor respondent suggests that the right to the basic statutory minimum wage could be waived by any employee subject to the [Fair Labor Standards] Act. No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act."); *see also Bormann v. AT & T Commc'ns, Inc.,* 875 F.2d 399 (2d Cir.1989) ( "private waiver of claims under the [FLSA] has been precluded by such Supreme Court decisions as *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), and *D.A. Shulte, Inc. v. Gangi,* 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946).").

7    Defendants point to two cases in support of their position that plaintiff has the "burden to plead and prove the federal doctrine of equitable tolling." (Defendants' Memorandum of Law in Further Support, at 1) (citing *Dockery v. Tucker,* No. 97 Civ. 3584(ARR), 2006 U.S. Dist. LEXIS 97826, at *29, 2006 WL 5893295 (E.D.N.Y. Sept. 6, 2006) and *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.,* 530 F.Supp.2d 486, 529 (S.D.N.Y.2007)). However, *Dockery* is inapposite because it discusses the plaintiff's burden to plead and prove compliance with the administrative exhaustion requirement under the Federal Tort Claims Act, which is a jurisdictional requirement, unlike the statute of limitations applicable to this case. *See* 2006 U.S. Dist. LEXIS 97826, at *7 n. 16, 2006 WL 5893295. *World Wrestling Entertainment* is also distinguishable because there, in the context of civil RICO claims, the court addressed the applicability of fraudulent concealment. *See* 530 F.Supp.2d at 529. Again, as mentioned *supra,* the Second Circuit has clearly stated that equitable tolling is not limited to fraudulent concealment. *See Valdez,* 518 F.3d at 182.

---

**End of Document**                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.



**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

**FLSA2008-11**

December 1, 2008

Dear **Name***:

This is in response to your request for an opinion on whether certain Assistant Athletic Instructors (AAIs) at institutions of higher education qualify as teachers who are exempt from the minimum wage and overtime pay requirements of the Fair Labor Standards Act (FLSA).  We believe the AAIs you describe qualify for exemption as teachers under section 13(a)(1) of the FLSA and 29 C.F.R. § 541.303.[1]

According to the information you furnished, the AAIs teach proper skills and skill development to student-athletes and are required to have a bachelor's degree with a master's degree (or additional experience) preferred.  You indicated that their teaching responsibilities encompass at least 50% or more of their time and include instruction of physical health, team concepts, and safety.  The AAIs, who work under the supervision of a head coach, are responsible for designing instructions for individual student-athletes and for specific team needs, and thus have a great deal of independent discretion and judgment as to the manner and method of teaching.  Students receive academic credit for their participation in collegiate team sports.

Section 13(a)(1) of the FLSA exempts from the Act's minimum wage and overtime pay requirements any employee employed in a bona fide executive, administrative, or professional capacity.  The term "employee employed in a bona fide professional capacity" also includes "any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed."  29 C.F.R. § 541.303(a).

There is no minimum education or academic degree required under the regulations for the teacher exemption.  *See* Wage and Hour Opinion Letter FLSA2006-41 (Oct. 26, 2006); Wage and Hour Opinion Letter FLSA2005-39 (Oct. 13, 2005).  Athletic instructors whose primary duty is teaching in an educational establishment would qualify for the exemption whether or not they have a particular academic degree.  By contrast, athletic instructors whose primary duty is not related to teaching would not qualify for the teacher exemption.  Also, the regulations do not require that exempt teachers be paid on a salary basis.  *See* 29 C.F.R. § 541.303(d).  Having a primary duty of teaching generally

---

[1] Unless otherwise noted, any statutes, regulations, opinion letters, or other interpretive material cited in this letter can be found at www.wagehour.dol.gov.

involves, "by its very nature, exercising discretion and judgment."  Wage and Hour Division Fact Sheet #17D.

The AAI position description you sent us includes a number of duties that are not related to teaching, such as developing effective recruitment strategies, recruiting and following up on prospective students, researching and targeting high schools and athletic camps as sources for potential student-athletes, and visiting high schools and athletic camps to conduct student interviews.  As mentioned above, however, you stated that these AAIs spend more than 50% of their time on teaching activities.  This proportion is significant because "employees who spend more than 50% of their time performing exempt work will generally satisfy the primary duty requirement."  29 C.F.R. § 541.700(b).

Although not fully described in your letter, we believe the institutions of higher education you inquired about are colleges that would qualify as educational establishments for purposes of the teacher exemption.  An "educational establishment" is defined as "an elementary or secondary school system, an institution of higher learning or other educational institution."  29 C.F.R. 541.204(b).  Accordingly, based on your representation that the AAIs spend more than 50% of their time teaching in an educational establishment, we believe that they would qualify for exemption from the FLSA's minimum wage and overtime pay requirements.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, explicit or implied, that you have provided a full and fair description of all the facts and circumstances which would be pertinent to our consideration of the question presented.  Existence of any other factual or historical background not contained in your request might require a different conclusion from the one expressed herein.  You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein.  You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.

We trust that this letter is responsive to your inquiry.

Sincerely,


Alexander J. Passantino
Acting Administrator


**\* Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. § 552(b)(7).**