UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BENJAMIN J. KOZIK, individually and on behalf
of all others similarly situated,

                         Plaintiff,

            v.

HAMILTON COLLEGE,

                      Defendant.

Civil Action No.:
6:12-CV-01870 (LEK/TWD)

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION**

BOND, SCHOENECK & KING, PLLC
Louis P. DiLorenzo (501344)
Louis Orbach (507815)
Clifford G. Tsan (515226)
One Lincoln Center
Syracuse, NY 13202
Telephone:  (315) 218-8000
Fax:  (315) 218-8100

*Attorneys for Defendant*

2182352.6

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ...........................................................................................1

ARGUMENT ..............................................................................................................5

I.   The Court Should Exercise Its Discretion to Deny Conditional Certification...........5

    A.  Plaintiff's "Modest" Burden on this Motion is Hardly Non-Existent .................5

    B.  Conditional Certification Should be Denied Because the Need for Individual Inquiries is Apparent .........................................................................9

        1.  The FLSA's Teaching Exemption May Apply to Some or All of the Proposed Members of the Class, and Examination of this Exemption Will Need to Be Made on an Individual Basis ......................10

        2.  The Record Also Demonstrates the Need for Individual Inquiries into Each Intern's Compensable Hours Versus Non-Compensable Hours, Were One or More Interns Held to Be Non-Exempt...................16

        3.  Individual Inquiries Would Also Be Required to Determine Damages, Were One or More Interns Held to Be Non-Exempt.............18

    C.  Plaintiff's Conclusory and Unsubstantiated Allegations of "Common Experiences" Among Interns Must Be Disregarded .......................................18

    D.  Plaintiff's Argument That all Interns Had "Game Management" Responsibilities Is Also Insufficient to Establish a Common Policy or Practice That Warrants Collective Certification...............................................20

    E.  The Fact That Interns Receive a College-Paid Meal Card, or an Option to Receive Either a College-Paid Meal Card or Additional Monetary Compensation, Likewise Does not Establish a Common Policy or Practice That Warrants Collective Action Certification ..................21

II.  The Court Should Not Impose The Substantial Burdens And Inefficiencies Of Conditional Certification On Hamilton College In These Circumstances.................................................................................................22

III.  Plaintiff Seeks To Conditionally Certify A Collective That Includes Time-Barred Putative Class Members.......................................................................23

IV.  Defendant Requests Leave To Comment On Any Notice....................................25

CONCLUSION..........................................................................................................25

2182352.6

## PRELIMINARY STATEMENT

Hamilton College respectfully submits this memorandum of law, and the accompanying declarations of Jonathan Hind, Sierra Achin, Sarah Arsenault, Benjamin Grimm, and Jeff Lonczak, in opposition to plaintiff Benjamin Kozik's motion before this Court, which he has styled as a "Motion for Conditional Collective Action Certification, Court Authorized Notice Pursuant to Section 216(b) of the FLSA, and Discovery of Names of Other Potential Plaintiffs." *See* Docket No. 23.

The record shows that the duties, hours, and pay of interns in Hamilton College's different varsity sports programs vary significantly. These differences present substantial individualized issues, including, but not limited to, whether the FLSA's teaching exemption applies to a particular intern, how much time spent by any given intern was actually compensable time, whether a particular intern ever "worked" over 40 hours a week, and whether, if the compensation received by any given intern was converted to an hourly wage, he or she effectively received minimum wage or greater for the hours "worked" in any given week. For each of these reasons, and the others discussed below, Plaintiff's motion should be denied.

## STATEMENT OF FACTS

Over the last three academic years, 41 different interns have participated in 17 different varsity sports programs at Hamilton College, including baseball, men's basketball, women's basketball, crew, cross-country, track and field, field hockey, football, men's hockey, women's hockey, men's lacrosse, women's lacrosse, women's soccer, softball, sports information, swimming, tennis, and volleyball. Hind Decl., ¶ 12. There is no common job description for these interns. Hind Decl., ¶ 13. Each varsity

program has a different head coach, and each head coach selects, supervises and directs his or her own interns.  Hind Decl., ¶ 13.

The intern declarations submitted to this Court show that interns' experiences vary greatly from sport to sport, head coach to head coach, and season to season.  For example, plaintiff Ben Kozik, in an apparent effort to avoid the FLSA's teaching exemption,[1] alleges that he spent just 20% of his time "providing instruction to student athletes" during football season.[2]  Kozik Decl., ¶ 9.  By contrast, former tennis intern Jeff Lonczak reports that his internship activities were almost exclusively devoted to the hands-on instruction of student-athletes.  Lonczak Decl., ¶ 8.  Former baseball intern Ben Grimm also reports that most of the time he spent on his internship during baseball season (65% to 75%) was spent instructing student-athletes.  Grimm Decl., ¶ 11.  Likewise, former swimming intern Sierra Achin reports that the majority of the time she spent on her internship during the season was spent instructing student-athletes, and she also taught Physical Education classes to Hamilton undergraduates both in and out of season.  Achin Decl., ¶¶ 5, 22 & 26.

The self-reported duties of these interns vary in other respects as well.  For example, Kozik alleges that he engaged in "intense recruiting efforts," including attendance at summer showcases and camps, and late-night calls to recruits.  Kozik Decl., ¶¶ 11, 32, & 36.  Other interns, however, spent little time recruiting.  For example,

---

[1] The FLSA teaching exemption is discussed at pp. 10-16, *infra*.

[2] Hamilton College takes issue with Kozik's low approximation of the time he spent teaching student-athletes, as well as with numerous other allegations Kozik makes about his personal experiences at Hamilton and his communications with Hamilton representatives.  The merits of Kozik's individual claims, however, are not the subject of this motion.  Accordingly, Hamilton will not address Kozik's various allegations regarding his personal experiences at the College point by point at this time.  The purpose of this motion is to determine whether this case should be certified for collective action, and the record (including Kozik's own very personalized allegations) shows that it should not be so certified.

Lonczak spent no more than four hours, total, calling recruits over the entire course of his internship, and attended just a single, one-day showcase event, which was held during one of the winter months when he did little, if anything, else in connection with his internship. Lonczak Decl., ¶¶ 16-17, 32. Achin reports that she only called about 10 recruits during her entire internship, that those calls only lasted about 20 to 45 minutes each, and that she made them all during the day, while she was on campus. She never did any travel for recruiting. Achin Decl., ¶ 23.

In addition to a variation in duties, there is also great variation in the hours self-reported by these interns. Kozik alleges that he worked 90 to 105 hours or more a week during football season. Kozik Decl., ¶¶ 31, 36. No other intern reports working nearly that much. Lonczak, for example, estimates that he spent no more than 10 to 30 hours a week on his internship during tennis season. Lonczak Decl., ¶¶ 10, 21. Indeed, Lonczak held a full-time job at the Manlius YMCA throughout his internship. Lonczak Decl., ¶¶ 4-7. And former soccer intern Sarah Arsenault estimates that she generally spent just 30 to 40 hours per week (or less) in-season. Arsenault Decl., ¶¶ 12, 25.

Kozik's alleged off-season hours also exceed those reported by other interns. Kozik alleges that he worked 50 to 75 hours a week during football's off-season. Kozik Decl., ¶¶ 39-40. Lonczak, on the other hand, estimates that he spent no more than 20 hours, total, on his internship during the tennis team's entire four month off-season. Lonczak Decl., ¶ 17. Grimm, like Lonczak, had another job, and spent very little time on his internship during baseball's off-season -- generally eight hours a week or less. Grimm Decl., ¶¶ 4-5. Arsenault estimates that she generally spent just 12 to 14 hours a week (and never more than 30) on her internship in soccer's off-season. Arsenault

2182352.6

Decl., ¶ 4.  Achin reports that she spent just 25 hours a week or so on her internship during swimming's off-season.  Achin Decl., ¶ 27.  And while Kozik does not mention taking breaks or vacations during his internship, Achin and Arsenault did.  Achin Decl., ¶ 30; Arsenault Decl., ¶ 5.

The record shows that there is also variation in how interns say they spent their time, raising the individualized issue of compensable time discussed at pages 16-18, *infra*.  Kozik's declaration, which suggests days of non-stop activity, differs greatly from what other interns report.  Other interns report that they spent a considerable amount of their time on campus working out, eating lunch, or just "relaxing" and "hanging out." Arsenault Decl., ¶¶ 5, 14 & 25; Achin Decl., ¶¶ 10, 28; Grimm Decl., ¶ 17.  And some interns went on team trips to places like Florida and Brazil, where all their expenses were paid and most of their time was their own.  Achin Decl., ¶ 11; Arsenault Decl., ¶ 23; Grimm Decl., ¶ 18; Lonczak Decl., ¶¶ 30-31.

There is also variation in how much different interns were paid.  For example, Grimm and Kozik received monthly salaries ranging between $1,000 and $1,100 (plus College-paid meal cards) during the academic years of their internship[3], while Arsenault's monthly salary increased from $1,000 to $1,240 between the two academic years of her internship (plus College-paid meal cards), and Achin received a monthly salary of $1,450, plus a College-paid meal card, plus an extra $1,120 for agreeing to coach the Hamilton College Masters Swim Club.  Hind Decl., ¶ 19; Achin Decl., ¶ 24. Some interns have received more.  Interns' monthly salaries during recent academic years have ranged from $1,000 to $1,990.  Hind Decl., ¶ 16.

---

[3] Kozik's allegation that he worked for no pay in June 2011 is demonstrably false.  Hind Decl., ¶ 21.

2182352.6

## ARGUMENT

### I.  The Court Should Exercise Its Discretion to Deny Conditional Certification

#### A.  Plaintiff's "Modest" Burden on this Motion is Hardly Non-Existent

The Supreme Court has authorized district courts to conditionally certify and send notice of a collective action only "in appropriate cases." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 n. 10 (2d Cir. 2010) (nothing in the FLSA requires court-authorized notice, but it "may be a useful case management tool for district courts to employ in appropriate cases"). In authorizing notice, "the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case" before conditionally certifying an action. *Mike v. Safeco Ins. Co. of America*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003).  "[M]indful of the potential burdens associated with defending an FLSA claim involving a large and broadly defined collective group of plaintiffs," Magistrate Judge Peebles has noted that caution should be taken to avoid "the potential for overreaching," with its resulting "loss of the efficiencies envisioned by the drafters of the FLSA." *Rudd v. T.L. Cannon Corp.*, 2011 U.S. Dist. LEXIS 21061, at *17 (N.D.N.Y. Jan. 4, 2011), *adopted by* 2011 U.S. Dist. LEXIS 20968 (N.D.N.Y. Mar. 3, 2011).

To succeed on his motion for conditional certification, Plaintiff must therefore make a factual showing that he and proposed recipients of opt-in notices are similarly situated. *Myers*, 624 F.3d at 555.  While the burden may be modest, "certification is not automatic," *Vasquez v. Vitamin Shoppe Indus.*, 2011 U.S. Dist. LEXIS 74376, at *9

5

(S.D.N.Y. July 11, 2011), as the significant number of cases denying conditional certification in this Circuit show.[4]

Plaintiff must make a factual showing "sufficient to demonstrate that he and potential plaintiffs together were victims of a common policy or plan that violated the law." *Vasquez*, 2011 U.S. Dist. LEXIS 74376, at *11-12 (citations omitted). Significantly, where, as here, few other putative class members have opted in or submitted declarations in support of the plaintiff's motion for conditional certification, courts have denied conditional certification. *See, e.g., Wright v. Lehigh Valley Hosp.*, 2010 WL 3363992, at *4-5 (E.D. Pa. Aug. 24, 2010) (denying conditional certification and finding that "[i]t is telling that despite having had ample time to recruit other registered nurses to support her claim, [plaintiff] remains unable to name a second person subjected to Defendants' FLSA violations" and "fails to name a single registered nurse – other than herself – willing to opt-in the proposed class").[5] Moreover, where "an

---

[4] *See Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 797, 801-03 (S.D.N.Y. 2012) (denying conditional nationwide certification when plaintiff failed to show a factual nexus between his own wage and hour claim and the claims of other employees across defendants' stores across the country); *Mike*, 274 F. Supp. 2d at 220-21 (denying conditional certification on the grounds that the "merits of [the plaintiff's] claim [would] turn upon evidence relating to [his] day-to-day tasks, and not upon any company policy… and stating that, as a result, the court would have to "engage in an hoc inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar to [the plaintiff's]); *Diaz v. Electronics Boutique of Am., Inc.*, 2005 U.S. Dist. LEXIS 30382, *13 (W.D.N.Y. Oct. 13, 2005) (denying conditional certification where determination of class members' job responsibilities would require a "detailed factual analysis of [each class member's] daily activities and responsibilities"); *Myers v. Hertz Corp.*, 2006 U.S. Dist LEXIS 100597, *13 (E.D.N.Y. May 18, 2006), *aff'd on other grounds*, 624 F.3d 537 (2d Cir. 2010) (denying conditional certification because liability as to each potential plaintiff would require the court to make a fact-intensive inquiry into each potential plaintiff's employment situation); *Levinson v. Primedia Inc.*, 2003 U.S. Dist. LEXIS 20010, *4-6 (S.D.N.Y. Nov. 6, 2003) (denying conditional certification where the plaintiffs alleged that they were not paid minimum wage or overtime, but provided no factual evidence other than the conjecture contained in the plaintiffs' affidavits that other employees were subject to the same pay policies); *Brickey v. Dolgencorp, Inc.*, 272 F.R.D. 344, 347-48 (W.D.N.Y. 2011) (denying conditional certification where company's minimum wage policy did not, on its face, violate the law merely because it might indirectly encourage the minimization of overtime); *Eng-Hatcher v. Sprint Nextel Corp.*, 2009 U.S. Dist. LEXIS 127262, *17 (S.D.N.Y. Nov. 13, 2009) (denying conditional certification because "plaintiff attempts to impute her own limited experience to a nationwide class").

[5] *See also Kronick v. Bebe Stores, Inc.*, 2008 WL 4546368, at *2-3 (D.N.J. Oct. 2, 2008) (denying conditional certification where motion was supported by just three declarations, finding them insufficient to

2182352.6

action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice," conditional certification is not appropriate. *Bramble v. Wal-Mart Stores, Inc.*, 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011) (internal quotations and citation omitted).[6]

Judicial concerns over inappropriate class litigation were at the forefront in two recent Supreme Court decisions, *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011)  and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).  In *Dukes*, the Court counseled that "commonality" requires a common question that will generate a common answer "apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551.  The Court also expressed disapproval of "trial by formula," a phrase that encompasses trial plans based upon sampling methodologies that prevent a defendant from litigating its statutory defenses to *individual* claims.  *Id.* at 2561.  And in *Comcast*, the Court found a class in an antitrust action to be improperly certified under Rule 23 because plaintiffs failed to establish a method for proving damages on a class-wide basis.  133 S. Ct. at 1434-35.

Although *Dukes* and *Comcast* concerned class actions under Federal Rule 23, those decisions focused on concepts of fairness and efficiency that were also at the

---

support conditional certification of nationwide collective action); *Dreyer v. Altchem Envtl. Servs., Inc.*, 2007 WL 7186177, at *4 (D.N.J. Sept. 25, 2007) (denying conditional certification where motion was supported by just three declarations that were "bereft of detail" regarding the experience of other employees); *Moore v. PNC Bank, N.A.*, 2013 U.S. Dist. LEXIS 74845, *16-18 (W.D. Pa. May 29, 2013) (agreeing with defendant that "the limited presence of other opt-ins and the absence of a declaration of other employees is telling," and holding that "the addition of a single other opt-in member [is] too thin a reed" for conditional certification).

[6] *See also Richardson v. Wells Fargo Bank, N.A.*, 2012 WL 334038, *2 (S.D. Tex. Feb. 2, 2012) (conditional certification should be denied where "the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice") (internal quotations and citation omitted); *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011) (plaintiff is required to show "a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees").

2182352.6

heart of the Court's earlier decision in *Hoffmann-LaRoche* which concerned collective actions. *See Hoffman-LaRoche*, 492 U.S. at 170. The Second Circuit has expressly noted that class certification under Rule 23 and "conditional certification" under Section 216(b) of the FLSA "are admittedly similar," *Myers*, 624 F.3d at 556, even if the district courts may apply a different burden of proof in assessing whether "certification" is appropriate. And in *Espenscheid v. DirectSat USA*, 705 F.3d 770 (7th Cir. 2013), Judge Posner, writing for the panel, expressly stated that "despite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23, there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences." 705 F.3d at 772 (citations omitted). Noting that simplification is favored in the law and that one of the intentions of both FLSA collective actions and Rule 23 class actions is to promote efficiency, the court concluded that "we can, with no distortion of our analysis, treat the entire set of suits before us as if it were a single class action." *Id.*

For all these reasons, and those further discussed below, a collective action should not be certified where, as here, highly individualized inquiries would be required for issues concerning both liability and damages.

2182352.6

## B. Conditional Certification Should be Denied Because the Need for Individual Inquiries is Apparent

Courts have repeatedly denied conditional certification where, as here, it appears that individual inquiries will be required.[7]  Here, Plaintiff's request should be denied because, as shown below, individualized inquiries would plainly be required to determine both liability and damages.

---

[7] *See, e.g., Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. LEXIS 17259, *34-43 (S.D. Tex. Mar. 12, 2007) (denying conditional certification because of variance of individual duties and exempt status); *Harris v. FFE Transp. Servs., Inc.*, 2006 U.S. Dist. LEXIS 51437, *13-14 (N.D. Tex. May 15, 2006) ("multiple courts in this circuit and elsewhere have refused to conditionally certify a class at the first stage of the analysis when the determination of whether certain employees were improperly classified as exempt would require a highly individualized inquiry"); *Reich v. Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009, 1013-14 (N.D. Ind. 2005) ("[m]any other courts, both in this circuit and others, have declined to find potential class members similarly situated where liability depended on an individual determination of each employee's duties"); *Pfohl v. Farmers Ins. Group*, 2004 U.S. Dist. LEXIS 6447, *27 (C.D. Cal. Mar. 1, 2004) ("The differing job duties and the individualized inquiry to determine whether these varying duties meet the administrative exemption preclude a collective action in this case."); *Clausman v. Nortel Networks, Inc.*, 2003 U.S. Dist. LEXIS 11501, at *10-12 (S.D. Ind. May 1, 2003) (whether each potential plaintiff can be classified as an "outside salesman" would require individualized determination, as "[e]ven those individuals with the same job title as [plaintiff] may or may not be exempt employees"); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004) (individualized questions as to executive exemption warranted denial of preliminary FLSA certification); *Tyler v. Payless Shoe Source, Inc.*, 2005 U.S. Dist. LEXIS 31682, at *19-20 (M.D. Ala. Nov. 23, 2005) (denying conditional certification where individual inquiries into each employee would be required); *Forney v. TTX Co.*, 2006 U.S. Dist. LEXIS 30092, at *8-9 (N.D. Ill. Apr. 17, 2006) (declining to grant conditional certification where "certification of a collective action would require determination on whether each potential claimant's qualifications satisfy the regulatory requirements [for a FLSA exemption]. This determination would be fact-intensive and individualized."); *Morisky v. Public Service Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) ("litigating this case as a collective action would be anything but efficient.  The exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee basis."); *Evancho v. Sanofi-Aventis*, 2007 U.S. Dist. LEXIS 93215, *9-13 (D.N.J. Dec. 19, 2007) (declining to grant conditional certification to a proposed collective of pharmaceutical representatives where the evidence submitted by the parties indicated that employee responsibilities may vary among plaintiffs and potential collective action members; "[p]otential collective action members … are not 'similarly situated' as to FLSA status when that status may differ depending on their job responsibilities and duties"); *Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010) (denying conditional certification under the "modest factual showing" standard because the proof to demonstrate whether the workers were employees or independent contractors could not be applied to the class as a whole, but would require individualized evidence); *Hinojos v. The Home Depot, Inc.*, 2006 WL 3712944, at *3 (D. Nev. Dec. 1, 2006) (specific employment conditions and circumstances resulted in denial of conditional certification); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (denying conditional certification where "individual inquiries" would "predominate" due to "different locations, managers, and factual situations"); *Brooks v. Bellsouth Telecomms., Inc.*, 164 F.R.D. 561, 569 (N.D. Ala. 1995) (denying conditional certification where different supervisors and departments rendered "specific circumstances of the former employees … notably diverse").

2182352.6

1.  **The FLSA's Teaching Exemption May Apply to Some or All of the Proposed Members of the Class, and Examination of this Exemption Will Need to Be Made on an Individual Basis**

Plaintiff alleges that the fact all interns were paid a "flat monthly rate" constitutes a common policy or practice.  *See* Pl. Mem. at p. 14.  However, the fact that a given group of employees were treated as exempt and paid on a salaried basis is not enough of a "common policy or practice" to warrant certification where, as here, duties, hours, and pay differed among members of the alleged group, and there is an exemption defense that the court will have to adjudicate on an individualized basis.  Courts have repeatedly held that "the mere classification of a group of employees – even a large or nationwide group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes."  *Vasquez*, 2011 U.S. Dist. LEXIS 74376, at *12, *quoting Bramble*, 2011 U.S. Dist. LEXIS 39457, at *4; *see also Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 322-23 (E.D.N.Y. 2012) (same); *Moore*, 2013 U.S. Dist. LEXIS 74845, at *15-16 (same).  As one court has explained:

> [Otherwise] in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality or quantity of evidence that had been produced in the form of declarations and supporting exhibits.  Such a rule would run counter to the long established law governing § 216(b) actions, which states that whether an employee has been properly exempted under the FLSA necessitates a fact-specific inquiry.

*Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010).

Defendant asserts that some or all of the putative class members are subject to the professional exemption under the FLSA, which exempts from its minimum wage and

2182352.6

overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).  The FLSA does not define the term "professional" for the purposes of the exemption but directs the Secretary of Labor to do so by regulation.  *Id.*  The Secretary's regulations have the force of law, *United States v. Nixon*, 418 U.S. 683, 695 (1974), and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute.  *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984).  The pertinent U.S. Department of Labor ("DOL") regulation provides that the term "employee employed in a bona fide professional capacity" under 29 U.S.C. § 213(a)(1) includes "any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed."  29 C.F.R. § 541.303.  Primary duty is defined as "the principal, main, major or most important duty that the employee performs," and this determination is "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700.

While employees must earn at least $455 per week to be classified under the learned professional exemption of 29 C.F.R. § 541.301, an individual who qualifies as a teacher is exempt regardless of their salary amount under the DOL regulation specifically applicable to teachers.  *See* 29 C.F.R. § 541.303(d); *Franklin v. Breton Int'l, Inc.*, 2006 U.S. Dist. LEXIS 88893, *12 (S.D.N.Y. Dec. 11, 2006) ("the minimum salary requirements for professionals under other regulations do not apply to Section 303 [29 C.F.R. § 541.303]").  Additionally, there is no specialized education or academic degree

11

2182352.6

requirement for the teacher exemption to apply.  29 C.F.R. § 541.303(c); *Franklin*, 2006 U.S. Dist. LEXIS, at *12 (fact that employees did not have a college degree or pursue a "prolonged course of specialized intellectual instruction" was irrelevant to the teacher exemption); *see also* DOL Opinion Letter, FLSA 2006-41 (Oct. 26, 2006) (unlike the learned professional exemption, there is no requirement that exempt teachers possess an advanced degree in a field of science or learning); DOL Opinion Letter, FLSA 2005-39 (Oct. 13, 2005) (same).

Moreover, on December 1, 2008, the Acting Administrator for the DOL issued an opinion letter addressing whether assistant athletic coaches at a college could qualify as exempt teachers under the FLSA.  *See* FLSA 2008-11.  Consistent with the text of 29 C.F.R. § 541.303, the Acting Administrator found that there was no minimum education or academic degree required for the teaching exemption and that the coaches would qualify if teaching was their primary duty.  *Id.*  Specifically, where a coach spends more than 50% of his or her time on teaching activities, such as instructing student-athletes, as several interns report they did (*see* Lonczak Decl., ¶ 8; Grimm Decl., ¶ 11; Achin Decl., ¶ 5), he or she qualifies as an exempt teacher under the FLSA.  *Id.*

Conditional certification of all Athletics Department interns is inappropriate because Defendant's teaching exemption defense must be adjudicated on an individual basis.  The applicable regulations provide that a determination of exempt status is to be made on the employee's day-to-day duties and often requires an individual analysis of each employee.  *See* 29 CFR §§ 541.2, 541.700.  "Determination of an employee's primary duty must be based on all of the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).

2182352.6

The DOL has explained that the applicability of a statutory exemption "depends not on occupational title, job classification, or position description, but rather an individual employee's duties . . ." FLSA 2006-43 (Nov. 27, 2006), *citing* 29 C.F.R. § 541.2. "Determining whether an employee is exempt is extremely individual and fact-intensive, requiring 'a detailed analysis of the time spent performing [pertinent] duties' and 'a careful factual analysis of the full range of the employee's job duties and responsibilities.'" *Diaz*, 2005 U.S. Dist. LEXIS 30382, at *8. "[C]ourts … decline[] to grant conditional certification where consideration of the propriety of an employer's application of an exemption to its employees would require an individualized or fact intensive analysis." *Bramble*, 2011 WL 1389510, at *6 (collecting cases).[8]

Here, intern responsibilities vary widely from sport to sport, head coach to head coach, and season to season.  There is no common job description for these interns. Each head coach selects, supervises and directs his or her own interns.  Hind Decl., ¶ 13.  Thus each individual intern's claim would require the Court to consider different facts and testimony to determine exemption status.

The DOL has clearly indicated that instructing student-athletes in a collegiate environment – *e.g.*, "teaching skills and skill development to student-athletes" – qualifies as teaching under the FLSA.  FLSA 2008-11.  In order to adjudicate the teaching exemption in this case, this Court would need to conduct a highly detailed factual inquiry

---

[8] *See also Romero v. H.B. Auto. Group, Inc.*, 2012 U.S. Dist. LEXIS 61151, *17-18 (S.D.N.Y. May 1, 2012) ("[T]he possible existence of exemptions may be relevant to an analysis of whether employees are similarly situated…"); *King v. West Corp.*, 2006 U.S. Dist. LEXIS 3926, *42-43 (D. Neb. Jan. 13, 2006) ("Determining whether employees are properly deemed 'exempt' under the FLSA requires 'an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria.'"); *Trinh v. JP Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 33016, *13 (S.D. Cal. April 22, 2008) (whether employees "are 'exempt' necessarily involves a fact-by-fact inquiry into the circumstances of each employee . . .").

2182352.6

for each intern, to determine whether, when, and to what extent the individual engaged

in the instruction of student-athletes in their sport, and whether teaching was their

"primary duty." *See id.* That would inevitably require the Court to engage in an

intensive sport-by-sport, year-by-year, and intern-by-intern examination of, *inter alia*,

practice schedules, *see* Achin Decl., ¶¶ 7-10, 11, Arsenault Decl., ¶ 15, Grimm Decl.,

¶¶ 12-14, 25, Lonczak Decl., ¶¶ 11, 22, 31; game schedules, *see* Achin Decl., ¶¶ 15-16,

19-20, Arsenault Decl., ¶ 22, Grimm Decl., ¶¶ 18-21, Lonczak Decl., ¶¶ 13-15, 23-28,

31; the type of instruction each intern provided, both on a team-wide basis, *see* Achin

Decl., ¶¶ 6, 12, 14, Arsenault Decl., ¶¶ 18, 20, Grimm Decl., ¶¶ 11, 15, 22-23, Lonczak

Decl., ¶¶ 11, 13, and with individual student-athletes, *see* Achin Decl., ¶ 20, Arsenault

Decl., ¶ 17, Grimm Decl., ¶ 13, Lonczak Decl., ¶ 12; the time spent by each intern

preparing to instruct student athletes, *see* Achin Decl., ¶ 13, Arsenault Decl., ¶¶ 16-17,

Grimm Decl., ¶ 16; and the time spent by each intern conducting post-instruction

assessments, *see* Achin Decl., ¶¶ 13, 18, Arsenault Decl., ¶ 20, Grimm Decl., ¶¶ 14, 16.

And each intern's experience might present other factors that are also pertinent to the

teaching exemption, such as the fact that some interns taught Physical Education

classes in addition to their coaching activities. *See* Achin Decl., ¶¶ 22, 26. As the

record shows, these matters cannot be determined on a "collective" basis.

   Where, as here, such individual inquiries will be required to determine the merits,

conditional certification should be denied. For instance, in *Babin v. Stantec, Inc.*, 2010

U.S. Dist. LEXIS 88009, at *10-11 (E.D. Pa., Aug. 25, 2010), the district court declined

to grant conditional certification under the modest factual showing standard to a

proposed class of "designers" alleged to have been misclassified as exempt. In support

14

of his motion, the plaintiff supplied notices from three potential opt-in plaintiffs,

declarations from two experts purportedly demonstrating that "all designers-regardless

of discipline, specialty, training or expertise-perform the same primary duties and

functions" and an admission from defendant's corporate designee that all designers

perform the same common duties. *Id.* at *9-10.  However, the court agreed with the

defendant and found that plaintiff was not representative of the proposed class and that

there were substantial differences among designers because:

> [w]hile designers may share certain general job functions-
> including preparing or reviewing project designs, drawings,
> calculations, and documentation-that alone is insufficient to
> establish that designers are similarly situated. Rather,
> determining whether an employee is properly classified as
> overtime-exempt . . . requires identifying the employee's
> "primary duty"-not just the employee's generalized job
> functions-and determining how much time the employee
> spends performing both exempt and non-exempt work.

*Id.* at *10-11.

Another illustrative case, *Purdham v. Fairfax County Pub. Schs.*, 629 F. Supp. 2d

544 (E.D. Va. 2009), highlights the inherent difficulties of applying typical cases arising

under the FLSA involving corporate-wide and uniform polices to the unique context of

coaching athletics.  There, the district court found that conditional certification of a class

involving athletic coaches was not appropriate, based on the necessity of individualized

FLSA determinations for each putative class member.  *Id.* at 552.  The court expressly

found that "the number of hours that different coaches work varies widely between

sports and between coaches" and denied conditional certification.  *Id.* at 549-50.  The

court also agreed with the defendant school board that "conditional certification is not

appropriate [where] under FLSA statutes and related regulations, claims by coaches …

will have to be evaluated on an individual-by-individual basis." *Id.* at 550.  The same

result should obtain here.  There is no common job description for the 41 different

interns who have participated in 17 different varsity programs at Hamilton College over

the last three academic years, and the interns whose declarations have been submitted

to this Court report substantial differences in both duties and hours.  Therefore, detailed

evidence of each intern's experiences on an employee-by-employee basis would be

necessary, making mini-trials inevitable to adjudicate the claim of any intern who opted

in, and thus rendering conditional certification plainly inappropriate.

> **2.   The Record Also Demonstrates the Need for Individual
> Inquiries into Each Intern's Compensable Hours Versus
> Non-Compensable Hours, Were One or More Interns Held to
> Be Non-Exempt**

The FLSA defines "employ" to mean "to suffer or permit to work."  29 USC

§ 203(g); 29 CFR § 785.6.  Under the "suffer or permit" test, time spent on a "principal

activity" for the benefit of the employer, with the employer's actual or constructive

knowledge, is considered to be hours worked and is therefore compensable.  However,

a matter pursued strictly for the employee's own benefit is not compensable.  For

example, in *Blair v. Willis*, 420 F.3d 823, 829 (8th Cir. 2005), the court held that a

student performing chores at a boarding school did not engage in "work" because the

chores were more for the benefit of the student than for the school.

The FLSA regulations provide that "[p]eriods during which an employee is

completely relieved from duty and which are long enough to enable him to use time

effectively for his own purposes are not hours worked."  29 CFR § 785.16(a).  Thus,

courts have denied compensation for idle time in certain situations – for example, a

2182352.6

telephone dispatcher who only had to answer a small number of telephone calls for nonemergency ambulance care each night and who was allowed to pursue her own personal, social and business activities during evening hours (*Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1189-91 (5th Cir. 1989)), or truck drivers responsible for picking up and delivering the mail who were free to attend to personal matters and occupy their time as they desired during the waiting time between scheduled runs (*Gifford v. Chapman*, 6 WH Cases 806 (W.D. Okla. 1947)).

Here, several intern declarations demonstrate that for each of them, to varying degrees, not all of their hours and activities at the College were necessarily compensable – *e.g.*, lunch breaks, personal workouts, and time spent "relaxing" or "hanging out."  *See* Achin Decl., ¶ 10, 28; Arsenault Decl., ¶ 5, 14 & 25; Grimm Decl., ¶ 17.  Moreover, several of them went on College-paid trips to Florida or Brazil, where most of their time was their own.  Lonczak Decl., ¶ 30-31; Grimm Decl., ¶ 18; Achin Decl., ¶ 11; Arsenault Decl., ¶ 23.  This raises the issue of whether and which of each intern's activities within each day of their internships were legally compensable, which will clearly necessitate individualized inquiries.  It will also present the College with individualized defenses, further thwarting collective treatment:

> The individual job disparities among VSMs and DSMs also give rise to the individualized defenses West may raise in this case – including case-by-case examinations of whether the employees truly worked "off-the-clock" and at home as some allege, whether such work would fall within a de minimus exemption under the FLSA, whether the employee actually worked more than forty hours a week, or whether he or she accepted the benefits of scheduling flexibility (arriving late, taking comp time later, etc.) afforded by some managers to salaried employees. ***Disparate individual defenses heighten the individuality of claims, and requiring the defendant to raise these arguments in a***

17

2182352.6

> ***class action suit undermines its ability to mount a clear
> and coherent defense to the case and significantly
> complicates trial management.***  Because the jobs and job
> responsibilities prevent application of class-wide claims or
> defenses, litigating this case as a collective action would not
> be efficient.

*King*, 2006 U.S. Dist. LEXIS 3926 at *46-47 (emphasis added).

### 3. Individual Inquiries Would Also Be Required to Determine Damages, Were One or More Interns Held to Be Non-Exempt

The different salaries and different hours of different interns would certainly require individualized "damages" inquiries in this case, assuming, *arguendo*, that the Court were to find that a given intern should have been treated as a non-exempt employee and paid on an hourly basis at minimum wage ($7.25).  For example, Kozik alleges that his "effective hourly wage" was below minimum wage, and "as little as $2.60," based on his monthly salary and self-reported hours.  Kozik Decl., ¶ 37.  Using the same formula, Lonczak's "effective hourly wage" was $10.83 to $32.50 when tennis was in season, and $81.25 to $325 during most of the off-season – *i.e.*, 1.5 to 4.5 times greater than minimum wage in season, and 11 to 44.8 times greater than minimum wage off season.  *See* Lonczak Decl., ¶ 10, 17-18, 21; Hind Decl., ¶ 19.  Such individualized assessments of each intern's damages (or lack thereof) also counsels against collective certification.  *See* pp. 5-8, *supra*.

### C. Plaintiff's Conclusory and Unsubstantiated Allegations of "Common Experiences" Among Interns Must Be Disregarded

It is well-established that a plaintiff's conclusory and unsubstantiated allegations of "common experiences" among employees should be disregarded on a motion for conditional certification.  *Myers*, 624 F.3d at 555 (modest showing cannot be satisfied

18

2182352.6

simply by "unsupported assertions").[9]   Throughout his declaration, Kozik relies on vague

hearsay – alleged conversations with other interns – and conclusory allegations of other

interns' experiences to support his request for collective action certification.   One of the

interns that Kozik names specifically, Sierra Achin, puts it this way:

> I understand that Benjamin Kozik, the plaintiff in this case,
> seeks to pursue this case as a collective or class action on
> behalf of other interns, including myself.  I recall that
> Mr. Kozik was a football intern when I was at Hamilton, but I
> never had any contact with him as far as I can remember,
> except to see him in passing.  I cannot speak to Mr. Kozik's
> experience as an intern at Hamilton, and I do not believe he
> can speak to mine.  For one thing, I commuted from home
> and did not really interact with other interns enough to know
> what their daily schedules were like.  For another thing, each
> sport is unique; some seasons are longer than others, and
> different sports may offer different experiences as an intern.

Achin Decl., ¶ 32; *see also* Grimm Decl., ¶ 32.  For good reason, courts decline to infer

a common unlawful practice from a plaintiff's self-serving statements that other

employees had similar experiences.  *E.g.*, *Harriel v. Wal-Mart Stores, Inc.*, 2012 WL

2878078, at *5 (D.N.J. July 13, 2012).[10]

---

[9] *See also Levinson,* 2003 U.S. Dist. LEXIS 20010, at *4-6 (denying conditional certification where the plaintiffs provided no factual evidence other than the conjecture contained in their affidavits that other employees were subject to the same policies); *Bramble,* 2011 WL 1389510 at *6 (denying conditional certification where motion was based solely on plaintiffs' "own speculation"); *Flores v. Osaka Health Spa, Inc.,* 2006 U.S. Dist. LEXIS 11378, *8-9 (S.D.N.Y. Mar. 16, 2006) (denying conditional certification where plaintiff's evidence consisted of broad conclusory assertions of alleged "understanding" of hours worked by others); *Eng-Hatcher,* 2009 U.S. Dist. LEXIS 127262 at *11 ("reliance on limited anecdotal hearsay" insufficient); *Barfield v. N.Y. City Health & Hosps. Corp.,* 2005 U.S. Dist. LEXIS 28884, *3 (S.D.N.Y. Nov. 18, 2005) (denying conditional certification where the plaintiff alleged, based only on "limited anecdotal hearsay," that other nurses were not paid overtime); *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D. Tex. 1999) (allegations that "simply state that they believe other workers were discriminated against in similar ways . . . [do] not satisfy the movant's 216(b) burden."); *Harris v. FFE Transp. Servs.,* 2006 U.S. Dist. LEXIS 51437, at *19 (N.D. Tex. May 15, 2006) (same); *Vasquez,* 2011 U.S. Dist. LEXIS 74376, at *10 (same).

[10] Many cases cited by Plaintiff involve factual evidence that is missing here, such as multiple opt-ins, common, overarching company policies, and numerous supporting declarations.  Because the cases cited by Plaintiff involved either significantly more factual support and/or facts distinguishable to those before this court, these cases are unpersuasive and inapposite.  *See Malloy v. Richard Fleischman & Assocs.,* 2009 U.S. Dist. LEXIS 51790 (S.D.N.Y. June 3, 2009) (evidence indicated all employees subject

2182352.6

### D. Plaintiff's Argument That all Interns Had "Game Management" Responsibilities Is Also Insufficient to Establish a Common Policy or Practice That Warrants Collective Certification

Plaintiff contends that in the off-season, interns were scheduled for "game management responsibilities" by the Athletics Department based on a centrally-managed schedule. *See* Plaintiff's Brief, at p. 16. However, "game management" was something both head coaches *and* interns were asked to do, *see* Hind Decl., ¶ 22, it *only* occurred during an intern's off-season, *id.*, and it was not any intern's primary duty, *see* Lonczak Decl., ¶ 18; Achin Decl., ¶ 29; Grimm Decl., ¶ 7; Arsenault Decl., ¶ 11. For example, Lonczak estimates that he spent 10 to 12 hours, total, on game management during his entire internship. Lonczak Decl., ¶ 18. Kozik does not allege that "game management" was a primary duty even for him; in fact, he does not even bother to mention how many games he managed. *See* Kozik Decl., ¶ 10. One minor common duty among a diverse set of individuals does not establish that they are similarly situated. *See, e.g., Tahir v. Avis Budget Grp., Inc.*, 2011 WL 1327861, at *3-4 (D.N.J. Apr. 6, 2011) (denying conditional certification where plaintiff's allegations merely "set forth similarities among the putative class … only in a superficial manner, without addressing how [plaintiff] and other [class members] are similar with regard to the claim

---

to same common unlawful policy of providing comp time instead of FLSA overtime); *Fengler v. Crouse Health Found., Inc.,* 595 F. Supp. 2d 189 (N.D.N.Y. 2009) (policy of making automatic meal break deductions for all hourly patient care workers); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234 (N.D.N.Y. 2002) (authorizing notice to be sent to packing shed workers employed at a specific packing shed owned and/or operated by defendants where there was no contention shed workers engaged in varying duties); *Ruggles v. Wellpoint*, 591 F. Supp. 2d 150 (N.D.N.Y. 2008) (ten affidavits from people in varying positions stating they each had exact same primary duty); *Hoffman v. Sbarro*, 982 F. Supp. 249 (S.D.N.Y. 1997) (evidence of admitted company-wide policy requiring managers to reimburse defendant for cash shortages and other losses); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378 (E.D.N.Y. 2010) (three affidavits and various employment manuals setting forth similarity of policies, and (unlike here) exemption defense would not require analysis of individual work performed); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363 (S.D.N.Y. 2007) (class of individuals employed by defendant as poultry workers with minor differences in duties).

2182352.6

for relief"); *Neff v. U.S. Xpress, Inc.*, 2013 U.S. Dist. LEXIS 36914, *16 (S.D. Ohio

Mar. 18, 2013) ("The fact that there are similar job duties among these positions is not

sufficient to demonstrate that the employees are similarly situated.").

Moreover, even an examination of game management activities would require

individualized inquiries.  The number of game management assignments a given intern

may receive in a particular season varies.  Hind Decl., ¶ 26.  Among other things, it

depends on the number of available interns and the number of home games scheduled

that season.  *Id.*  Kozik provides little specific information about his game management

activities, but the declarations of Lonczak, Achin, Grimm, and Arsenault show a

variation in the nature, number and frequency of their game management activities,

even though it was not a primary activity for any of them.  *See* Lonczak Decl., ¶ 18;

Achin Decl., ¶ 29; Grimm Decl., ¶ 7; Arsenault Decl., ¶ 11.

### E.   The Fact That Interns Receive a College-Paid Meal Card, or an Option to Receive Either a College-Paid Meal Card or Additional Monetary Compensation, Likewise Does not Establish a Common Policy or Practice That Warrants Collective Action Certification

The other "common policy" that Plaintiff identifies to support his request for

conditional certification is the fact that interns received a meal card or, in 2012, the

option of receiving either a meal card or additional monetary compensation.  Plaintiff's

Brief, at 15.  The argument is unavailing, because there is nothing unlawful about such

a practice.  The FLSA allows for the maintenance of collective actions only for

employees subject to the same "*unlawful* practice or policy."  *Fengler*, 595 F. Supp. 2d

at 193 (emphasis added); 29 U.S.C. § 216(b).  Accordingly, plaintiffs must show "they

were victims of a common policy or plan *that violated the law*."  *Brickey*, 272 F.R.D. at

2182352.6

347 (emphasis in original).  Plaintiff does not contend that the meal card practice is unlawful even if interns are non-exempt employees, let alone if they are exempt.  A lawful policy is legally insufficient grounds to grant conditional certification.  *Brickey*, 272 F.R.D. at 347-48.

Moreover, not only does the issuance of a meal card fail to support collective action certification, indeed it affirmatively supports denial of certification because it further shows differences in compensation among interns and also requires further individualized inquiry into potential damages, assuming liability were to be established. If liability were established, *i.e.*, if one or more interns were found to have been non-exempt, the FLSA permits an employer a credit for the "reasonable costs" of meals regularly furnished to employees.  29 CFR § 531.33.  Therefore, calculation of damages would necessarily require determining who received a meal plan and then for those individuals only, the reasonable cost of the meals furnished to determine whether it satisfied minimum wage for such employees.

## II.  The Court Should Not Impose The Substantial Burdens And Inefficiencies Of Conditional Certification On Hamilton College In These Circumstances

Although Plaintiff contends that conditional certification is effectively *pro forma*, the fact of the matter is that conditional certification and notice have significant consequences for employers, and decertification by the Court at some later date is too little and too late a corrective measure, because certification, even conditional, is a bell that cannot be unrung.  An unwarranted notice bearing the Court's imprimatur can have a lasting and detrimental effect on an employer's reputation, and on employer-employee relationships.  *Cf. Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir.

2182352.6

1997) (premature class notice was "surely causing serious and irreparable harm to [employer]'s reputation and to its relationship with its employees").

Furthermore, conditional certification inevitably drives up the cost of litigation; discovery costs alone can become tremendous. *See Boyd v. Alutiiq Global Solutions, LLC*, 2011 WL 3511085, at *6-7 (N.D. Ill. Aug. 8, 2011) ("The Seventh Circuit has observed that discovery demands upon conditional certification can impose a 'tremendous financial burden to the employer.'" (citation omitted)).  That is especially true in this case, where the claims Plaintiff seeks to "certify" are highly individualized and fact-intensive.  "It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated."  *Guillen*, 841 F. Supp. 2d at 803, *quoting Adair v. Wisconsin Bell, Inc.*, 2008 U.S. Dist. LEXIS 68942, at *9-10 (E.D. Wis. Sept. 11, 2008).

Thus, "[i]n order to 'avoid the stirring up of litigation through unwarranted solicitation' conditional certification should be denied where plaintiffs fail to satisfy their burden."  *Bramble*, 2011 WL 1389510 at *4 (collecting cases).  Defendant respectfully requests that the Court decline to impose the undue burden of conditional certification in this case, where one former football intern seeks to represent interns from many other sports with unquestionably different experiences.

### III. Plaintiff Seeks To Conditionally Certify A Collective That Includes Time-Barred Putative Class Members

Plaintiff argues that a three-year statute of limitations should apply to his claim. The FLSA generally provides for a statute of limitations of two years, however, and a

2182352.6

three-year statute of limitations applies only to willful violations.  29 U.S.C. § 255(a).  A

willful violation exists when an employer "knew or showed reckless disregard for the

matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland

Shoe Co.*, 486 U.S. 128, 133 (1988).  It is Plaintiff's burden to demonstrate that any

alleged FLSA violation was willful.  *Fitzgerald v. City of Troy*, 2012 U.S. Dist. LEXIS

173704, at *71 (N.D.N.Y. Dec. 7, 2012).  Here, Plaintiff merely asserts in conclusory

form that Defendant's alleged violations of the FLSA were willful, and he does not

provide any evidence sufficient to establish willfulness.  Accordingly, his request for

notice to all interns at Hamilton during the three years prior to December 20, 2012 is

improper.

　　　　Moreover, the December 20, 2012 commencement date of this action would not

be the appropriate starting point.  Courts routinely hold that "the notice period generally

should be measured from the date of the court's order granting the motion for

conditional certification, not from the date the complaint was filed."  *Ritz v. Mike Rory

Corp.*, 2013 U.S. Dist. LEXIS 61634, *8 (E.D.N.Y. Apr. 29, 2013); *Hernandez v.

Immortal Rise, Inc.*, 2012 U.S. Dist. LEXIS 136556, *20-21 (E.D.N.Y. Sept. 24, 2012);

*Romero v. Flaum Appetizing Corp.*, 2009 U.S. Dist. LEXIS 80498, *17 (S.D.N.Y. Aug.

17, 2009); *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008);

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355 (E.D.N.Y. 2008); *Lee v.

ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006).  "An FLSA collective action

is deemed commenced on the date of filing only for named party plaintiffs who have

simultaneously filed a consent.  The action commences for each putative plaintiff on the

date the individual opts into the suit by filing his or her own written consent."

*Hinterberger v. Catholic Health Sys.*, 2009 U.S. Dist. LEXIS 97944, *44 (W.D.N.Y. Oct. 20, 2009). Plaintiff's request thus appears to be an improper attempt to revive the claims of putative class members whose claims have otherwise become time-barred since December 20, 2012.

## IV. Defendant Requests Leave To Comment On Any Notice

Should Plaintiff's motion be granted, whether in whole or in part, Defendant respectfully requests leave to comment on any notice of collective action prior to its being so-ordered by the Court.

## <u>CONCLUSION</u>

For the foregoing reasons, Hamilton College respectfully requests that Plaintiff's motion be denied.

Dated: July 31, 2013

BOND, SCHOENECK & KING, PLLC

By:

Louis P. DiLorenzo (501344)
Louis Orbach (507815)
Clifford G. Tsan (515226)
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000
Fax: (315) 218-8100

*Attorneys for Defendant*

2182352.6